IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | | |
|---|---|---|
| Gordon Randy Steidl, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 05 C 2127 |
| | ) | Honorable Harold A. Baker |
| City of Paris, et al., | ) | Judge Presiding |
| | ) | |
| Defendants. | ) | |

## CURRENT ILLINOIS STATE POLICE OFFICIALS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS

"In his brief, [plaintiff] relies heavily on *Brady*, seeking to imply a duty on the defendants to come forward with exculpatory evidence even after his conviction and appeal. However, [plaintiff] has pointed to no constitutional duty to disclose potentially exculpatory evidence to a convicted criminal after the criminal proceedings have concluded and we decline to conclude that such a duty exists." *Gibson v. Superintendent of New Jersey Dep't of Law and Public Safety*, 411 F.3d 427, 444 (3rd Cir. 2005).

## I. INTRODUCTION

Plaintiff seeks to hold the Current ISP Officials,[1] who had no involvement in the initial murder investigation and prosecution of Plaintiff, liable for failing to re-open the murder investigation after the Plaintiff was tried, convicted and exhausted all of his state court appellate and post-conviction proceedings, and the sole alleged reason to re-open the murder investigation was the opinion of the Current ISP Officials' subordinate that the Plaintiff was innocent.

Plaintiff's claims against the Current ISP Officials contain curious and creative allegations,[2] but are insufficient to state a claim under any constitutional principle. It is undisputed that the Current ISP Officials played absolutely no part in the initial murder

---

[1] Jack Eckerty is a former Illinois State Police (ISP) official and is represented by separate counsel in this action.
[2] Indeed, many of the allegations are untrue as shown by the undisputed deposition and trial testimony in *Callahan v. Brueggemann*, 03 CV 2167, which this Court knows. But for purposes of this Rule 12(b)(6) motion to dismiss, the allegations must be accepted as true.

investigation or prosecution of Plaintiff.[3] Indeed, the Complaint admits that the Current ISP Officials only "later" became involved in the proceedings related to Plaintiff. (*See* ¶101) In fact, the Complaint specifically alleges that it was other defendants, not the Current ISP Officials, who "sought to frame the Plaintiff . . . for this crime." (¶18) According to the Complaint, the earliest that any of the Current ISP Officials allegedly took any action relating to Plaintiff's claims was in August of 2001.[4] By this time, all of the following had already occurred:

- Plaintiff had been arrested, tried and convicted;

- Plaintiff had filed a petition for post-judgment relief;

- Plaintiff had a four (4) day evidentiary hearing on his post-judgment petition;

- Plaintiff filed an appeal and brief with the Illinois Supreme Court seeking reversal of his conviction and the denial of his post-judgment petition, and argued this appeal before the Illinois Supreme Court;

- Plaintiff filed a post-conviction petition with the Circuit Court;

- Plaintiff appealed the Circuit Court's denial of the post-conviction petition with the Illinois Supreme Court, which reversed and ordered that an evidentiary hearing be held;

- Plaintiff had a nine (9) day evidentiary hearing on his post-conviction petition, which resulted in a re-sentencing of Plaintiff from the death penalty to life imprisonment;

---

[3] In certain portions in the Complaint, Plaintiff lumps all Defendants together. Generally, such lumping occurs after specific defendants are named and alleged to have committed certain acts. (*See, e.g.* ¶¶ 50, 51.) To the extent that such lumping of "Defendants" is intended to include the Current ISP Officials, those allegations are improper under Federal Rule of Civil Procedure 8, and this Court is not required to infer that the Current ISP Officials were involved in the murder investigation or prosecution of Plaintiff. *See Vicom v. Hardridge Merchant Service, Inc.*, 20 F.3d 771, 778 (7th Cir. 1994); *Calobrace v. American National Can Co.*, 1995 U.S. Dist. LEXIS 915, *6 - *7 (N.D. Ill. 1995) ("Lumping these defendants into an undifferentiated collective violates Rule 8(a) . . ."); *Markham v. White*, 1995 U.S. Dist. LEXIS 16656, *8 - *9 (N.D. Ill. 1995); *Pisz v. Schaumburg*, 1987 U.S. Dist. LEXIS 10148, *4 (N.D. Ill. 1987).

[4] The Complaint specifically alleges that Michale Callahan "continued his investigation" up to this date. (¶81.)

- Plaintiff filed an appeal with the Illinois Appellate Court, Fourth District, contesting the denial of his post-conviction petition;

- Plaintiff briefed and argued his post-conviction petition before the Illinois Appellate Court, which affirmed the denial; and

- Plaintiff filed a petition for leave to appeal the Illinois Appellate Court's decision with the Illinois Supreme Court, which denied the petition.[5]

Against this backdrop, Plaintiff's three (3) federal claims against the Current ISP Officials find no support in the Constitution. Plaintiff has failed to establish that the Fourth, Fourteenth or Fifth Amendments provide him with the rights he claims, and even if such rights existed, they were certainly not clearly established at the time the Current ISP Officials acted. First, Plaintiff can state no claim against the Current ISP Officials under the Fourth Amendment because all of the alleged wrongdoing by them occurred after his conviction. *Torres v. McLaughlin*, 163 F.3d 169, 174-75 (3rd Cir. 1998); *Gonzalez v. Entress*, 133 F.3d 551, 554-55 (7th Cir. 1998); *Garcia v. Chicago*, 24 F.3d 966, 970 n. 6 (7th Cir. 1994). Second, Plaintiff can state no claim against the Current ISP Officials under the Fourteenth Amendment for allegedly violating his right to a fair trial or wrongfully convicting him. Again, at the time of the alleged wrongdoing, Plaintiff was already convicted, thereby possessing a presumption of guilt. *See U.S. v. Austin*, 614 F.Supp. 1208, 1212 n.13 (D. N.M. 1985); *Wilson v. Goodwyn*, 522 F.Supp. 1214, 1216 (E.D.N.C. 1981); *People v. McGuane*, 13 Ill.2d 520, 536 (1958). Further, the Current ISP Officials were not required to re-open an investigation based upon the opinion of one of their subordinates that Plaintiff was innocent. *See Baker v. McCollan*, 443 U.S. 137, 145-46 (1979) (no duty to "investigate independently every claim of innocence"); *see also Garcia*, 24 F.3d at 970 ("once

---

[5] These statements are taken from the allegations of the Complaint (*see, e.g.*, ¶¶50, 69, 70, 73-76) and findings in *Steidl v. Walls*, 267 F. Supp. 2d 919, 925-932 (C.D. Ill. 2003). This Court can take judicial notice of Plaintiff's state and federal criminal proceedings as stated in that opinion. *See Henson v. CSC Credit Services*, 29 F.3d 280, 284 (7th Cir. 1994) (court can take judicial notice of related court proceedings in ruling on a 12(b)(6) motion to dismiss).

3

police officers have discovered sufficient facts to establish probable cause, they have no constitutional obligation to conduct any further investigation in the hopes of uncovering potentially exculpatory evidence"). Third, Plaintiff can state no claim under the Fifth or Fourteenth Amendment under an "access to courts" theory because he had full access to the state courts, has failed to plead the underlying claim that he was deprived of bringing, and has brought all of his claims in this proceeding. *Christopher v. Harbury*, 536 U.S. 403, 415 (2002) (must plead underlying claim that was prevented from being brought); *Thompson v. Boggs*, 33 F.3d 847, 852-53 (7th Cir. 1994) (no access to court claim if underlying claims brought in pending suit); *Patterson v. Burge*, 328 F.Supp.2d 878, 897-98 (N.D. Ill. 2004). Accordingly, the Current ISP Officials' motion to dismiss should be granted.

## II. ALLEGATIONS OF COMPLAINT

**The Murders and Investigation**

On July 6, 1986, the Rhoadses were murdered. (¶13) Other defendants in this case (not the Current ISP Officials) opened an investigation into the murder of the Rhoadses. (¶15) According to the Complaint, credible evidence led to John Doe as the murderer, but instead of following those leads, these other defendants (not the Current ISP Officials) sought to frame Plaintiff for the murders. (¶¶16, 18) These other defendants questioned Plaintiff, who provided an alibi. (¶¶19, 20)

Over two months later, these other defendants (again, not the Current ISP Officials) interviewed a person named Herrington, who, as a result of these other defendants' suggestion, coercion and manipulation falsely implicated Plaintiff in the murders. (¶¶21-24) Later that month, these other defendants subjected Herrington to a polygraph examination which found that Herrington was not being truthful. (¶26) Thereafter, these other defendants continued to

manipulate Herrington and authored reports that included false material and excluded information favorable to Plaintiff. (¶¶28 - 30)

Several months after the murders, these other defendants (again, not the Current ISP Officials) interviewed an individual named Reinbolt, whom they coerced and manipulated into stating that she participated in the murders with Plaintiff. (¶¶31-33)

These other defendants obtained an arrest warrant for Plaintiff for the murders. (¶36) Due to these other defendants' actions, Plaintiff was charged with and indicted for the murders. (¶42) The Complaint alleges that these other defendants suppressed all exculpatory evidence from the grand jury. (¶43) They also continued to coerce and manipulate Reinbolt until she made further false statements incriminating Plaintiff. (¶44)

**Plaintiff's Convictions**

According to the Complaint, Plaintiff was tried and convicted of murder and arson, and on June 16, 1987, sentenced to death "on the basis of the false evidence fabricated, coerced, suggested, and manipulated by Defendants Parrish, Eckerty, Ray and McFatridge." (¶50) The Complaint is devoid of any allegations that the Current ISP Officials were involved in any manner whatsoever with the investigation and prosecution of Plaintiff.

**Plaintiff's Post-Trial Proceedings**

After his trial, conviction and sentencing, Plaintiff filed a notice of appeal and a post-judgment petition. (¶53) During these post-trial proceedings, these other defendants continued to suppress the fact that "*they* had coerced, suggested and manipulated the case and incredible evidence upon which Plaintiff . . . [was] wrongfully convicted." (¶54 (emphasis added)) At the four day evidentiary hearing on the petition for post-judgment relief, Plaintiff presented, among other things, affidavits signed by Reinbolt contradicting her trial testimony and a court-reported statement by Herrington contradicting his trial testimony. (¶65; *Steidl*, 267 F.Supp.2d at 926.)

5

The Circuit Court denied the post-judgment petition. *Id.* According to the Complaint, the Circuit Court denied this petition because of the actions of other defendants. (¶67)

On January 24, 1991, the Illinois Supreme Court affirmed Plaintiff's conviction and death sentence and affirmed the denial of the petition for post-judgment relief. (¶69; *Steidl*, 267 F.Supp.2d at 926.)

On April 3, 1992, Plaintiff filed a petition for post-conviction relief, which he amended three years later on June 22, 1995. (*Steidl*, 267 F.Supp.2d at 926.) On October 25, 1995, this petition was denied without an evidentiary hearing. (*Id.*) The Complaint alleges that the petition was denied "as a direct result of the false testimony, statements and repudiations of recantations which were coerced, suggested, fabricated, manipulated, and bought and paid for by" the other defendants. (¶70)

The Illinois Supreme Court reversed the denial of the petition for post-conviction relief and ordered an evidentiary hearing. (¶73; *Steidl*, 267 F.Supp.2d at 926-27.)

Following the reversal, the Circuit Court held a nine (9) day evidentiary hearing on the petition. (*Id.*) At this evidentiary hearing, Plaintiff presented numerous witnesses to support his claim that he received ineffective assistance of counsel. Plaintiff presented testimony relating to the alleged murder weapon and Reinbolt's testimony, among other things. (*Steidl*, 267 F.Supp.2d at 927-31.) According to the Complaint, other defendants (not the Current ISP Officials) continued to withhold and suppress exculpatory evidence, and at least one of the other defendants falsely testified at this hearing. (¶74)

The Circuit Court denied the post-conviction petition's request for a new trial, but granted Plaintiff a new sentencing hearing. Plaintiff was re-sentenced to life imprisonment. (¶76; *Steidl*, 267 F.Supp.2d at 931.)

Plaintiff then appealed the denial, which was eventually heard by the Illinois Appellate Court, Fourth District, which affirmed the denial. (*Id.*) Plaintiff then filed a petition for leave to appeal with the Illinois Supreme Court, which was denied on April 4, 2001. (*Id.*)

**Illinois State Police Involvement**

In mid-April 2000, ISP Lt. Callahan was assigned to review the Rhoadses murders in response to a request by Plaintiff's counsel. (¶77) After Callahan's review, he reached the conclusion that Plaintiff had not been proven guilty beyond a reasonable doubt. (¶78) Callahan documented this conclusion in a memorandum.

Callahan "continued his investigation" and wrote further memoranda, including one in August of 2001, which was after Plaintiff's state court proceedings had been exhausted. (¶81) In Callahan's memoranda, he stated his conclusion that there was exculpatory evidence for Plaintiff, and that this evidence was known by the other defendants but suppressed from Plaintiff. (¶81) Callahan also wrote about John Doe's alleged involvement with the murders.

Callahan also informed Defendants Carper and Parker that John Doe had made contributions to Republican office holders. (¶83)

According to the Complaint, despite the "evidence and investigative findings" provided by Callahan, the Current ISP Officials blocked a "full" investigation of the Rhoadses case and John Doe because it was "too politically sensitive." (¶84) Besides conclusory boilerplate allegations, the sole allegation against Defendant Kaupus is that he allegedly "launched an effort to discredit Callahan's evidence, findings and recommendations." (¶84)

The Complaint alleges that because of the Current ISP Officials' obstruction into the re-investigation into the Rhoadses murders and John Doe, the development of further evidence exculpatory for Plaintiff was thwarted. (¶85) Of course, at this time, all Plaintiff's state court

7

proceedings were exhausted, and by October 5, 2001, he had filed a federal petition for writ of habeas corpus. (¶94)

According to the Complaint, in January of 2003, a representative of the Governor's Office called Callahan regarding Plaintiff's request to be pardoned. Thereafter, at a meeting, Callahan "articulated his opinion" that Plaintiff was innocent. (¶91)

The Complaint alleges that the Current ISP Officials opposed Callahan and "took the position that he should not be permitted to inform the Governor's representative that Plaintiff [was] innocent . . . and as a direct result, Callahan was ordered to offer no opinion and supply no exculpatory evidence to the Governor or his representative." (¶92) According to the Complaint, as a consequence, the Governor declined to make a determination on Plaintiff's request for a pardon before leaving office. (¶93)

### III. ARGUMENT

Plaintiff has failed to assert a violation of a Fourth, Fourteenth or Fifth Amendment right under the allegations of the Complaint. And even if this Court were to find any such rights to exist, they were not clearly established at the time the Current ISP Officials allegedly acted.

When courts are asked to determine whether defendants are entitled to qualified immunity, they must engage in a two-step analysis. The first step is to determine, by taking the allegations in the light most favorable to the party asserting the injury, whether the allegations demonstrate that the official's conduct violated a constitutional right; and if so, then the second step is to determine whether the right was clearly established in light of the specific context of the case, not as a broad, general proposition. *Sauicer v. Katz*, 533 U.S. 194, 201 (2001). The U.S. Supreme Court has recently reinforced its previous holdings that the second step of the analysis cannot be made at a high level of generality. Instead, courts must look to the particularized facts in the context of the case presented to the public officials at the time they

8

acted. *Brosseau v. Haugen*, 125 S.Ct. 596, 599-600 (2004). Once a defendant raises qualified immunity as a defense, the burden is on the plaintiff to come forward with a closely analogous case establishing that the right was clearly established. *Gregorian v. Lund*, 54 F.3d 410, 413 (7th Cir. 1995); *Rice v. Burns*, 999 F.2d 1172, 1174 (7th Cir. 1993); *see also Saucier*, 533 U.S. at 209 ("neither respondent nor the Court of Appeals has identified any case demonstrating a clearly established rule prohibiting the officer from acting as he did").

  A.  **Plaintiff's Fourth Amendment Claim Fails.**

Count I of Plaintiff's Complaint alleges a violation of the Fourth Amendment by the Current ISP Officials for false imprisonment. However, no Fourth Amendment rights are implicated by any of the allegations made against the Current ISP Officials, and even if such rights were implicated, then the Current ISP Officials would be entitled to qualified immunity.

The Fourth Amendment is limited in temporal scope. It simply does not apply to alleged violations occurring during post-conviction proceedings. *Donahue v. Gavin*, 280 F.3d 371, 380 (3rd Cir. 2002) ("post-conviction incarceration is not a seizure within the meaning of the Fourth Amendment and, therefore, post-conviction incarceration cannot constitute a Fourth Amendment violation"). The Seventh Circuit has made it clear that there is no "continuing seizure" under the Fourth Amendment. *Washington v. Summerville*, 127 F.3d 552, 560 n.3 (7th Cir. 1997); *see also Gonzales v. Entress*, 133 F.3d 551, 554 (7th Cir. 1998) ("[I]t seriously misunderstands the fourth amendment to treat a conviction based on improperly obtained evidence as an independent violation of the fourth amendment. The *conviction* is not an unreasonable search and seizure." (emphasis in original)). Instead, as soon as a *Gerstein* hearing is held, the Fourth Amendment's protections are no longer applicable. *Garcia v. Chicago*, 24 F.3d 966, 970 n.6 (7th Cir. 1994); *Wilkins v. May*, 872 F.2d 190, 193 (7th Cir. 1989) (seizure ends after *Gerstein* hearing).

Here, the claims against the Current ISP Officials all relate to actions they allegedly took following Plaintiff's conviction. Indeed, their alleged actions took place after Plaintiff's appellate and post-conviction remedies were exhausted. All the allegations relating to the Current ISP Officials involve circumstances occurring years after Plaintiff's *Gerstein* hearing. There is simply no Fourth Amendment violation under these circumstances.

Even if this Court were to find that the Current ISP Officials somehow violated the Fourth Amendment, then they would nevertheless be entitled to qualified immunity because such a right is not clearly established. *See Torres v. McLaughlin*, 163 F.3d 169, 174 (3rd Cir. 1998) ("Neither we nor the Supreme Court has indicated that the Fourth Amendment should be expanded to include post-conviction incarceration. Indeed, the Framers of the Constitution drafted the Fourth Amendment to quell pre-trial deprivations of liberty. * * * We note that at least four courts of appeal have refused to apply the Fourth Amendment beyond initial arrests.") In fact, as recently as 2003, the Seventh Circuit found that a similar, but slightly different, issue was still unresolved in this Circuit when it stated: "When a defendant is arrested and jailed on the basis of probable cause to believe that he has committed a crime, and only later does police fraud enter the picture with the effect of perpetuating the seizure without good cause, there is a question not as yet authoritatively resolved whether the Fourth Amendment has been violated." *Gauger v. Hendle*, 349 F.3d 354, 359 (7th Cir. 2003).

Qualified immunity is particularly applicable because the right must be viewed in context of the allegations of this case. *Brosseau*, 125 S.Ct. at 599-600. There is simply no case that holds that the Fourth Amendment is violated by individuals who had no involvement with an initial murder investigation because they refused to re-open the investigation based upon the opinion of a subordinate that the person convicted for the crime is innocent.

B.  **Plaintiff's Fourteenth Amendment Due Process Clause Claim Fails.**

Count II of Plaintiff's Complaint alleges a violation of the Fourteenth Amendment by the Current ISP Officials "for deprivation of right to fair trial and for wrongful conviction." The Current ISP Officials do not dispute that the Fourteenth Amendment provides a claim when police officers who were involved in a criminal investigation deliberately withhold exculpatory evidence, thereby preventing a person from receiving a fair trial. *See Newsome v. McCabe*, 256 F.3d 747, 752 (7th Cir. 2001). But importantly, those are not the allegations against the Current ISP Officials.

The Complaint's allegations against the Current ISP Officials fail to state a claim under the Fourteenth Amendment. In *Newsome* and similar cases finding Fourteenth Amendment violations, the defendants were all intimately involved in the initial investigation and prosecution of the plaintiff and knowingly withheld evidence that they knew, based upon their involvement in or knowledge of the investigation, was exculpatory to the plaintiff, which ultimately deprived the plaintiff of a right to a fair trial. *See, e.g., Jones v. Chicago*, 856 F.2d 985 (7th Cir. 1988). But here, none of the Current ISP Officials were involved in the investigation or prosecution of Plaintiff. Indeed, according to the Complaint, they only became aware of Plaintiff's claims of innocence after Plaintiff had been tried and convicted and had exhausted his state appellate and post-conviction remedies. At this time, Plaintiff was presumed guilty of the murders. *See U.S. v. Austin*, 614 F.Supp. 1208, 1212 n.13 (D. N.M. 1985); *Wilson v. Goodwyn*, 522 F.Supp. 1214, 1216 (E.D.N.C. 1981); *People v. McGuane*, 13 Ill.2d 520, 536 (1958). And no duty under the Fourteenth Amendment exists to investigate claims of innocence following trial, conviction, appeal and post-conviction proceedings. *See Baker v. McCollan*, 443 U.S. 137, 145-46 (1979) (no duty to "investigate independently every claim of innocence"). In fact, only two months ago, the Third Circuit held that no such constitutional duty exists. *Gibson v. Superintendent of New*

11

*Jersey Dep't of Law and Public Safety*, 411 F.3d 427, 444 (3rd Cir. 2005) ("However, [plaintiff] has pointed to no constitutional duty to disclose potentially exculpatory evidence to a convicted criminal after the criminal proceedings have concluded and we decline to conclude that such a duty exists.").

Even if this Court were to somehow find that such a right existed, then that right would not be clearly established when the Current ISP Officials allegedly acted. Keeping in mind the Supreme Court's recent reaffirmation that district courts must consider issues of qualified immunity under the particularized facts, this Court cannot simply apply general principles of due process in their general context. *Brosseau*, 125 S.Ct. at 599-600. Accordingly, the issue here is whether it was clearly established that the Fourteenth Amendment requires law enforcement officials who were not involved in a criminal investigation to re-open the investigation of a person who has been tried and convicted and had his appellate and post-conviction remedies denied and the sole reason for re-opening the investigation is the opinion of a subordinate that the person is innocent. No case shows that this right is clearly established. And the right becomes even more attenuated under Plaintiff's theory that his Fourteenth Amendment right to a fair trial was violated because the subordinate was allegedly told not to speak with the Governor's office about his opinion. There no case shows that this right is clearly established.

### C. Plaintiff's Fifth and Fourteenth Amendment Access to Courts Claim Fails.

Count III of Plaintiff's Complaint alleges an access to courts claim. The purpose of recognizing an access to courts claim is to provide some effective vindication for a separate and distinct right to seek judicial relief for some wrong; but the right is ancillary to the underlying claim. *Christopher v. Harbury*, 536 U.S. 403, 415 (2002). The *Christopher* Court held that the underlying cause of action that was lost is an element that must be described in the complaint, and the complaint must identify a remedy that may be awarded as recompense but not otherwise

12

available in some suit that may yet be brought. *Id.* Simply put, a plaintiff must plead the underlying cause of action he allegedly lost and the remedy he now seeks for losing that cause of action, which is distinct from the remedy sought by the access to courts claim. Plaintiff has failed to plead any conceivable underlying claim that was lost as a result of the Current ISP Officials' alleged actions or a remedy that he now seeks because of that lost cause of action. For example, Plaintiff does not allege that he had a cause of action that is now barred by a statute of limitations or that he has a specific cause of action against somebody but cannot now bring it because the evidence was destroyed.

Two cases directly on point show that Plaintiff's access to courts claim must be dismissed. *See Patterson v. Burge*, 328 F.Supp.2d 878, 897-98 (N.D. Ill. 2004); *Orange v. Burge*, 2005 U.S. Dist. LEXIS 7234, *29 - *31 (N.D. Ill. 2005). In *Patterson*, the plaintiff alleged that he was wrongfully convicted and that exculpatory evidence was withheld from him. The plaintiff in *Patterson*, just like Plaintiff here, alleged that he was harmed by the delay in pursuing his claims. In dismissing the claim, the court rejected this argument, stating that "When the claim is right of access, justice delayed is not the equivalent of justice denied." *Id.* at 898. The court in *Orange* agreed and similarly dismissed an access to courts claim nearly identical to Plaintiff's claim made here. *Orange*, 2005 U.S. Dist. LEXIS 7234 at *29 - *31.

Even if this Court were to find that Plaintiff possessed a Fifth or Fourteenth Amendment right to access the courts, that right was not clearly established under the allegations. As recently as 1999, the Seventh Circuit found that public officials were entitled to qualified immunity for an access to courts claim when the defendants' actions merely made it more difficult for the plaintiffs to pursue their cause of action. *Harrell v. Cook*, 169 F.3d 428, 433 (7th Cir. 1999). Here, Plaintiff has not even alleged that the Current ISP Officials made it more difficult to litigate in the state courts. Plaintiff had access to the state courts and he took full advantage of

13

that access, litigating up and down the state court system – all of which was accomplished before the Current ISP Officials allegedly committed any wrongdoing. And again, there exists no analogous case holding that the Current ISP Officials' alleged actions violated Plaintiff's rights. This is particularly true with regard to the allegations relating to seeking a pardon from the Governor. It is not clearly established that seeking a gubernatorial pardon is equivalent to seeking access to courts.

### D.    The Supplemental State Law Claims Should Be Dismissed.

Finally, because all three (3) federal claims against the Current ISP Officials should be dismissed, this Court should also dismiss the supplemental state law claims for lack of jurisdiction. *See Contrares v. Suncast Corp.*, 237 F.3d 756, 766 (7th Cir. 2001) (once federal claims dismissed district court should decline jurisdiction over supplemental state law claims).

### IV. CONCLUSION

For all of these reasons, the Current ISP Officials request that this Court grant their motion to dismiss based on qualified immunity.

Respectfully submitted,

Current ISP Officials

s/ Iain D. Johnston

Iain D. Johnston
Bar Number: 6204667
Attorney for Defendants
Brueggemann, Fermon,
Carper, Parker and Kaupus
Holland & Knight LLP
131 S. Dearborn 30th Floor
Chicago, IL  60603
Telephone: (312) 263-3600
Fax: (312) 578-6666
E-mail: iain.johnston@hklaw.com

# 3143831_v1