**E-FILED**
Monday, 29 August, 2005  12:03:28 PM
Clerk, U.S. District Court, ILCD

## IN THE UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
## URBANA DIVISION

| | | |
|---|---|---|
| GORDON RANDY STEIDL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 05 CV 2127 |
| | ) | |
| CITY OF PARIS, Present and Former Paris Police | ) | Judge Harold A. Baker |
| Officials Chief Gene Ray and Detective James | ) | Magistrate Judge David G. Bernthal |
| Parrish; former Illinois State Trooper Jack Eckerty; | ) | |
| former Edgar County State's Attorney Michael | ) | |
| McFatridge; EDGAR COUNTY; and Illinois State | ) | |
| Police Officials Steven M. Fermon, Diane Carper, | ) | |
| Charles E. Brueggemann, Andre Parker, and | ) | |
| Kenneth Kaupus, | ) | |
| | ) | |
| Defendants. | ) | |

## JACK ECKERTY'S ANSWER TO PLAINTIFF'S COMPLAINT

NOW COMES Defendant, JACK ECKERTY, by and through his attorney, JAMES G.

SOTOS of HERVAS, SOTOS, CONDON & BERSANI, P.C., and in answer to Plaintiff's

Complaint states the following unto this Honorable Court.

## I. INTRODUCTION

1.     This is a civil rights action brought pursuant to 42 U.S.C. § 1983 et seq.; the

Judicial Code, 28 U.S.C. §§ 1331 and 1343 (a); the Constitution of the United States; and

supplemental jurisdiction, as codified in 28 U.S.C. § 1367(a).

**ANSWER:**     Defendant Eckerty admits that Plaintiff has brought this action pursuant to the
        manner stated but denies that Plaintiff is entitled to any relief in this matter.

2.     This Court has jurisdiction of the action pursuant to 28 U.S.C. § 1331.  Venue is

proper under 28 U.S.C. § 1391(b).  The parties reside, or, at the time the events took place,

formerly resided in this judicial district, and the events giving rise to the claims asserted herein occurred here as well.

**ANSWER:**    Defendant Eckerty admits that Plaintiff seeks to invoke the jurisdiction of the Court in the manner stated, that venue is proper, and that the parties reside, or, at the time the events allegedly took place, formerly resided in this judicial district. Defendant Eckerty denies the remaining averments in paragraph 2 of Plaintiff's Complaint to the extent they are directed at him.

## II. PARTIES

3.    Plaintiff Gordon Randy Steidl is a fifty-three year old man, and a resident of the United States.

**ANSWER:**    Defendant Eckerty admits the averments of paragraph 3 of Plaintiff's Complaint.

4.    Defendant Gene Ray was a duly appointed and sworn Chief of the Paris Police Department. He was a final policymaker for the City of Paris in police matters, including police investigations, was personally in charge of the Rhodes homicide investigation, and is sued in his individual capacity.

**ANSWER:**    Defendant Eckerty makes no answer to the averments of paragraph 4 of Plaintiff's Complaint as they are not directed at this Defendant.

5.    Defendant James Parrish was a duly appointed and sworn Paris Police detective who was the lead Paris police investigator in the Rhoads homicide investigation and is sued in his individual capacity.

**ANSWER:**    Defendant Eckerty makes no answer to the averments of paragraph 5 of Plaintiff's Complaint as they are not directed at this Defendant.

6.    Defendant Jack Eckerty was a duly appointed and sworn Illinois State police trooper who was the lead state police investigator in the Rhoads homicide investigation, and is sued in his individual capacity.

2

**ANSWER:**    Defendant Eckerty admits that he was a duly appointed and sworn Illinois State police trooper; was one of the police investigators assigned to the Rhoads homicide investigation; and is sued in his individual capacity.

7.    Defendant Michael McFatridge was the Edgar County State's Attorney, and is sued in his individual capacity.

**ANSWER:**    Defendant Eckerty makes no answer to the averments of paragraph 7 of Plaintiff's Complaint as they are not directed at this Defendant.

8.    Defendant City of Paris is an Illinois municipal corporation, as such is responsible for the policies, practices and customs of the Paris Police Department, and its Chief of Police, and was the employer of Defendants Ray and Parrish. The City of Paris is responsible for the acts of Defendants Ray and Parrish while acting within the scope of their employment.

**ANSWER:**    Defendant Eckerty makes no answer to the averments of paragraph 8 of Plaintiff's Complaint as they are not directed at this Defendant.

9.    Defendant Edgar County is a governmental entity within the State of Illinois, which consists in part of its Edgar County State's Attorney's Office (hereinafter referred to as SAO). Edgar County and the Edgar County State's Attorney's Office are necessary parties to this lawsuit.

**ANSWER:**    Defendant Eckerty makes no answer to the averments of paragraph 9 of Plaintiff's Complaint as they are not directed at this Defendant.

10.    Defendants Steven M. Fermon, Diane Carper, Charles E. Brueggemann, Andre Parker and Ken Kaupus were duly appointed and sworn command level Illinois State Police officials who supervised that agency's investigation of the Rhoads murders, and are sued in their individual capacities.

**ANSWER:**    Defendant Eckerty makes no answer to the averments of paragraph 10 of Plaintiff's Complaint as they are not directed at this Defendant.

3

11.     At all times relevant to this action, each of the named Defendants acted within the scope of his employment, and under the color of the laws, regulations, and customs of the State of Illinois.  Each Defendant's actions constituted "state action" as defined under federal law.

**ANSWER:**     Defendant Eckerty admits that he was acting within the scope of his employment and under color of the laws, regulations, and customs of the State of Illinois at the at all times relevant to this action.  Defendant Eckerty denies the remaining averments contained in paragraph 11 to the extent they are directed at him.

### III.  FACTS

12.     In May of 1986, Plaintiff Randy Steidl went to the local F.B.I. office and informed a special agent that he had information that Defendant McFatridge was involved in illegal gambling and narcotics.

**ANSWER:**     Defendant Eckerty is without knowledge or information sufficient to form a belief regarding the truth or falsity of the averments of paragraph 12 of Plaintiff's Complaint.

13.     In the early morning hours of July 6, 1986, Dyke and Karen Rhoads were stabbed to death in their home in Paris, Illinois, and their house set on fire.

**ANSWER:**     Defendant Eckerty admits the averments in paragraph 13 of Plaintiff's Complaint.

14.     Paris is a small Eastern Illinois town, which in 1990 had a population of 8,943. Paris is located in Edgar county, which had a 1990 population of 21,725.  According to the local newspaper, the Paris Beacon News, "no single event in the history of Paris - including a 1930s shootout between the police and booze running gangsters in front of the Hotel France - has so shocked and stirred this community as the Sunday morning discovery of Dykes and Karen Rhoads stabbed to death in their bedroom and their house set afire to hide the crime."

**ANSWER:**     Defendant Eckerty admits that Paris is a town located in Edgar County in eastern Illinois and that according to the U.S. Census Bureau, the estimated population of

4

Paris, Illinois in 1990 was 8,987 and the estimated population of Edgar County in 1990 was 19,595.   Defendant Eckerty is without knowledge or information sufficient to form a belief as to the truth or falsity of the remaining averments in paragraph 14.

15.    Defendants Ray, Parrish, Eckerty and McFatridge immediately opened an investigation, for which they were jointly responsible and in which they jointly participated, into these extremely high profile murders.

**ANSWER:**    To the extent that averments in paragraph 15 of Plaintiff's Complaint are directed at him, Defendant Eckerty admits that he participated in the investigation into the murders of Dyke and Karen Rhoads.

16.    Within days, Defendants Ray, Parrish, Eckerty and McFatridge were provided with a credible lead to John Doe, a prominent Paris businessman who had been Karen Rhoads' employer, and several of his employees.  This lead included a credible motive in support of these individuals' involvement in the crime, as well as suspicious post murder conduct by John Doe which included his presence at the scene of the crimes shortly after the investigators arrived, his suggestion of a motive for the crime, and his offering of a $25,000 reward in the bars of Paris only hours later, an offer which quickly spread by "word of mouth."

**ANSWER:**    Defendant Eckerty denies the averments contained in paragraph 16 to the extent they are directed at him.

17.    Several years before, Defendant Parrish worked for John Doe, and observed suspicious activities at one of Doe's businesses.

**ANSWER:**    Defendant Eckerty makes no answer to the averments in paragraph 17 of Plaintiff's Complaint as they are not directed at him.

18.    Despite recognizing the significance of the leads which established John Doe and several of his employees as suspects, Defendants Parrish, McFatridge, Ray and Eckerty did not

5

further pursue them, but instead sought to frame the Plaintiff and Herbert Whitlock for this crime.

**ANSWER:**    Defendant Eckerty denies the averments contained in paragraph 18 to the extent they are directed at him.

19.    On or about July 9, 1986, directly after John Doe offered Plaintiff the reward at a local bar, Defendants Eckerty and Parrish, at the direction and approval, and/or with the knowledge of, Defendants Ray and McFatridge, took Plaintiff into custody and questioned him about the crimes.

**ANSWER:**    Defendant Eckerty denies the averments contained in paragraph 19 to the extent they are directed at him.

20.    Plaintiff provided a truthful alibi, as did Whitlock, who was also questioned, to Defendants Ray, Parrish, Eckerty and McFatridge.  These alibis were verified by these Defendants and their agents, but the public "arrests" began a local rumor mill which falsely branded Plaintiff and Whitlock as suspects in the public eye.

**ANSWER:**    Defendant Eckerty denies the averments contained in paragraph 20 to the extent they are directed at him.

21.    On September 19, 20, and 21, 1986, Defendants Parrish, Ray, Eckerty and McFatridge interviewed Darrell Herrington, who they knew had five drunken-driving convictions and two convictions for passing bad checks, was considered the town drunk, and frequented the bars where the reward had been offered.

**ANSWER:**    Defendant Eckerty admits that on or about September 21, 1986, he interviewed Darrell Herrington with Defendants Parrish, Ray and McFatridge and that at that time he had general knowledge that Darrell Herrington was an excessive drinker. Defendant Eckerty denies that he had knowledge about the remaining averments in paragraph 21 at the time of the interview.

6

22.     Herrington first told Defendants Ray, Parrish, Eckerty and McFatridge that he was present at the scene of the Rhoads murders, and that two men, Jim and Ed, committed the crimes.

**ANSWER:**     Defendant Eckerty admits that Herrington first told Defendant Eckerty that he was present at the scene of the Rhoads murders. Defendant Eckerty denies the remaining averments contained in paragraph 22 of Plaintiff's Complaint to the extent they are directed at him.

23.     Herrington also told these Defendants he had been drinking hard liquor nearly nonstop since noon on July 5, and that by the time the bars closed, he was stumbling drunk and lapsing into unconsciousness.

**ANSWER:**     Defendant Eckerty admits that Herrington told Defendant Eckerty he began drinking hard liquor sometime in the afternoon of July 5 and continued drinking throughout the evening until the bars closed. Defendant Eckerty denies the remaining averments in paragraph 23 of Plaintiff's Complaint to the extent they are directed at him.

24.     After three days of interrogation, during which Defendants subjected Herrington to suggestion, coercion, manipulation, and plied him with liquor and promises, Herrington falsely identified Plaintiff and Whitlock as the persons whom he had accompanied to the scene of the murders, and falsely asserted that he saw Plaintiff Steidl leaving the scene, bloody, with a knife in his hand.

**ANSWER:**     Defendant Eckerty denies the averments contained in paragraph 24 to the extent they are directed at him.

25.     On the basis of this coerced, manipulated, manufactured, and suggested false statement, Defendants Ray, Parrish, Eckerty and McFatridge then obtained, without probable cause, a warrant to electronically overhear conversations of the Plaintiff and Whitlock, and utilized Herrington as a wired informant in an unsuccessful attempt to entrap Steidl and Whitlock to make false inculpatory statements.

**ANSWER:**    Defendant Eckerty admits that he petitioned the court for an order authorizing the use of an electronic eavesdropping device for the purpose of overhearing and/or recording conversations between Darryl Herrington, a consenting party; Plaintiff; Herbert Whitlock; and unknown third parties, and that based on a finding of reasonable cause, Judge Ralph S. Pearman authorized the use of said eavesdropping device. Defendant Eckerty denies the remaining averments contained in paragraph 25 of Plaintiff's Complaint to the extent they are directed at him.

26.    Defendants Ray, Parrish, Eckerty and McFatridge then subjected Herrington to a polygraph examination on September 29, 1986. Concerning direct questions asked by the examiner about whether Herrington was truthful when he accused Steidl and Whitlock, the examiner found that Herrington engaged in "purposeful non-cooperation . . . (consistent with) not telling the truth" as to "one or more" of these questions.

**ANSWER:**    Defendant Eckerty denies that Defendants Ray, Parrish, Eckerty and McFatridge subjected Herrington to a polygraph examination. Herrington submitted to a polygraph examination on September 29, 1986 given by polygraph examiner, Mark Murphy. Mark Murphy issued a report dated October 15, 1986 that stated that Murphy was "precluded from rendering any opinion to his truthfulness to [the questions asked] " due to Herrington's "acts of purposeful noncooperation [] during his polygraph examination." and that "[i]t has been the experience of the examiner [] that when a subject purposefully distorts his polygraph records, he is usually not telling the truth to one or more of the issues under investigation." Murphy's report does not indicate that Herrington was asked direct questions by the examiner about "whether Herrington was truthful when he accused Steidl and Whitlock."

27.    Knowing that Herrington's coerced, manipulated, suggested and manufactured story was now exposed as completely false and incredible, and therefore bereft of probable cause, Defendants Ray, Parrish, Eckerty and McFatridge failed to follow the examiner's recommendation that Herrington be subjected to another polygraph examination, and decided at that time not to falsely charge Plaintiff and Whitlock with the murders.

**ANSWER:** Defendant Eckerty admits that Plaintiff and Whitlock were not charged with murder following the polygraph examination of Herrington on September 29, 1986 and that Herrington was not subjected to another polygraph examination. Defendant Eckerty denies the remaining averments contained in paragraph 27 of Plaintiff's Complaint to the extent they are directed at him.

28. Additionally, Defendants Parrish and Eckerty, with the knowledge and approval of Defendants Ray and McFatridge, reduced Herrington's coerced, manipulated, suggested and manufactured false and incredible story to official police reports, while suppressing from those reports the highly exculpatory evidence concerning "Jim and Ed," the lie detector test and its results, and that Herrington's story was false, incredible, and the product of coercion, fabrication, manipulation, suggestion, promises, financial rewards, and alcohol.

**ANSWER:** Defendant Eckerty denies the averments contained in paragraph 28 of Plaintiff's Complaint to the extent they are directed at him.

29. For the next several months, Defendants Parrish, Eckerty, Ray, and McFatridge continued to meet with Herrington and to use coercive, suggestive and manipulative tactics, promises, rewards, liquor and, on at least one occasion, hypnosis, in order to further manufacture and fabricate false evidence against Plaintiff and Whitlock.

**ANSWER:** Defendant Eckerty admits that Defendants met with and interviewed Herrington during the next several months. Defendant Eckerty denies the remaining averments contained in paragraph 29 of Plaintiff's Complaint to the extent they are directed at him.

30. Defendants Parrish and Eckerty, with the knowledge and approval of Defendants Ray and McFatridge, suppressed from their official reports this continued coercion, manipulation, suggestion, fabrication, promises and rewards, as well as the content of the statement taken under hypnosis.

**ANSWER:**    Defendant Eckerty denies the averments contained in paragraph 30 of Plaintiff's Complaint to the extent they are directed at him.

31.    On February 16, 1987, seven months after the yet unsolved murders, knowing that they had no credible evidence to charge Plaintiff and Whitlock, Defendants Parrish, Eckerty, Ray and McFatridge pursued another completely unstable individual, a known alcoholic and drug addict named Deborah Rienbolt, who was on felony probation and whom Parrish had previously pressured to be his informant.

**ANSWER:**    Defendant Eckerty denies the averments contained in paragraph 31 of Plaintiff's Complaint to the extent they are directed at him.

32.    Defendant Parrish accused Rienbolt of involvement in the murders, and, despite her denials, Defendants Parrish and Eckerty, under the supervision and with the participation and/or knowledge of Defendants Ray and McFatridge, interrogated Rienbolt about the crimes.

**ANSWER:**    Defendant Eckerty admits that Deborah Reinbolt was interviewed by Defendants Eckerty and Parrish on February 17, 1987. Defendant Eckerty denies the remaining averments contained in paragraph 32 of Plaintiff's Complaint to the extent they are directed at him.

33.    During the initial interrogation, Defendants Eckerty and Parrish, under the supervision and with the participation and/or knowledge of Defendants Ray and McFatridge, repeatedly coerced, manipulated and suggested to Rienbolt that she was present at the crime scene, and participated in the murders with Steidl and Whitlock, which were committed because Dyke Rhoads backed out of a drug deal.

**ANSWER:**    Defendant denies the averments contained in paragraph 33 of Plaintiff's Complaint to the extent they are directed at him.

34.    During this interrogation, Rienbolt falsely stated, as a direct result of the Defendants' coercion, suggestion, and manipulation, that a knife which Rienbolt had previously

10

produced, and which in fact belonged to her husband and had no involvement in the murders,

belonged to Whitlock, and that he had given it to her shortly after the crime, with blood on it.

**ANSWER:**    Defendant Eckerty admits that during the interview of Rienbolt on February 17, 1987, Rienbolt turned a knife over to Defendant Parrish that she advised had been given to her by Whitlock a couple of days after the murders that had at that time what appeared to be blood on the outside handle and portions of the blade. Defendant Eckerty denies the remaining averments contained in paragraph 34 of Plaintiff's Complaint to the extent they are directed at him.

35.    Although Defendants knew that Rienbolt had gone to work and later consumed

vast quantities of drugs and alcohol the night before the murders, they created, through coercion,

suggestion, and manipulation, a false statement that Rienboldt saw Plaintiff, Whitlock and

Herrington together the night before the murders; that Whitlock had made threats to harm Dyke

and Karen Rhoads; that later that night, she saw Plaintiff's car near the scene of the crime and

saw Whitlock come around the corner of the victims house; that the next morning Whitlock came

by her house, she saw blood on his neck, and Whitlock said he would pay her to remain quiet;

and that Whitlock subsequently made additional admissions to her.

**ANSWER:**    Defendant Eckerty denies the averments contained in paragraph 35 of Plaintiff's Complaint to the extent they are directed at him.

36.    Despite their failure to coerce and manipulate Rienbolt into falsely stating that she

witnessed Steidl and/or Whitlock commit the murders and arson, Defendants Parrish, Eckerty,

Ray and McFatridge, on February 19, 1987, obtained arrest warrants for Plaintiff and Whitlock

for the murders of Karen and Dyke Rhoads and for arson, and, on that basis, caused to be

arrested and/or did arrest Plaintiff and Whitlock.

**ANSWER:**    Defendant Eckerty admits that on February 19, 1987, arrest warrants were obtained for Plaintiff and Whitlock for the murders of Karen and Dyke Rhoads.

11

Defendant Eckerty denies the remaining averments contained in paragraph 36 of Plaintiff's Complaint to the extent they are directed at him.

37.    These arrest warrants and the resultant arrests were based on the knowingly false statements of Herrington and Rienbolt which the Defendants had coerced, fabricated, manipulated, and suggested, and were without probable cause.  When questioned at the jail, both Plaintiff and Whitlock denied involvement in the crimes.

**ANSWER:**    Defendant Eckerty admits that both Plaintiff and Whitlock denied involvement in the murders of Karen and Dyke Rhoads when questioned at the jail on February 19, 1987.  Defendant Eckerty denies the remaining averments contained in paragraph 37 of Plaintiff's Complaint to the extent they are directed at him.

38.    Additionally, Defendants Parrish and Eckerty, with the knowledge and approval of Defendants Ray and McFatridge, reduced Rienbolt's coerced, manipulated, suggested and manufactured story to official police reports, while suppressing from those reports the highly exculpatory information that these statements were false and incredible, contrary to physical and other evidence, and based on fabrication, coercion, suggestion, threats, promises, alcohol and drugs.

**ANSWER:**    Defendant Eckerty denies the averments contained in paragraph 38 of Plaintiff's Complaint to the extent they are directed at him.

39.    On the basis of these coerced, manipulated, manufactured, and suggested false statements, Defendants Ray, Parrish, Eckerty and McFatridge also obtained, without probable cause, a warrant to electronically overhear conversations of the Plaintiff and Whitlock, and utilized Rienbolt as a wired informant in an unsuccessful attempt to entrap Steidl and Whitlock to make false inculpatory statements.

**ANSWER:**    Defendant Eckerty admits that he petitioned the court for an order authorizing the use of an electronic eavesdropping device for the purpose of overhearing  and/or

12

recording conversations between Debra Rienbolt, a consenting party; Plaintiff; Herbert Whitlock; and unknown third parties, and that based on a finding of reasonable cause, Judge Richard Scott authorized the use of said eavesdropping device. Defendant Eckerty denies the remaining averments contained in paragraph 39 of Plaintiff's Complaint to the extent they are directed at him.

40.    On the basis of these coerced, manipulated, manufactured, and suggested false statements, Defendants Ray, Parrish, Eckerty and McFatridge also obtained, without probable cause, a warrant to seize hair, saliva, and blood from the persons of the Plaintiff and Whitlock; however, these searches did not lead to any inculpatory evidence against them.

**ANSWER:**    Defendant Eckerty admits that a warrant was obtained from a judge, who after a finding of probable cause, ordered the seizure of hair, saliva and blood from the persons of the Plaintiff and Whitlock. Defendant Eckerty denies the remaining averments contained in paragraph 40 of Plaintiff's Complaint to the extent they are directed at him.

41.    As part of their concerted effort to manufacture further false inculpatory evidence against Plaintiff, Defendants planted a completely unreliable jailhouse "snitch" in a cell next to the Plaintiff, and, as a direct result of their promises of an extremely lenient sentence and other rewards, manipulation, and suggestion, this jailhouse "snitch" provided knowingly false and incredible inculpatory statements which he falsely attributed to Plaintiff.

**ANSWER:**    Defendant Eckerty denies the averments contained in paragraph 41 of Plaintiff's Complaint to the extent they are directed at him.

42.    On the basis of Rienbolt and Herrington's false statements which had been coerced, manipulated, manufactured, and suggested by Defendants Parrish, Eckerty, Ray and McFatridge, Plaintiff and Whitlock were subsequently charged by information with murder and arson; then, on March 10, 1987, Plaintiff and Whitlock were indicted for these crimes by the

13

Edgar County Grand Jury after Defendant Parrish presented these statements to the grand jury in false and perjured testimony.

**ANSWER:**    Defendant Eckerty admits that Plaintiff and Whitlock were charged by information with arson and murder and then, on March 10, 1987 were indicted for these crimes by the Edgar County Grand Jury. Defendant Eckerty denies the remaining averments contained in paragraph 42 of Plaintiff's Complaint to the extent they are directed at him.

43.    Defendants Parish, Ray and Eckerty specifically suppressed from the Grand Jury all the exculpatory evidence which demonstrated that these statements were false, coerced, manipulated, manufactured and suggested; that the Plaintiff and Whitlock were innocent, and that the Defendants had identified other likely suspects unrelated to Plaintiff and Whitlock.

**ANSWER:**    Defendant Eckerty denies the averments contained in paragraph 43 of Plaintiff's Complaint to the extent they are directed at him.

44.    Defendants Parrish, Eckerty, McFatridge, and Ray continued to use coercion, manipulation, and suggestion on Deborah Rienbolt, using, *inter alia*, threats of physical force, threats of prosecution, promises of leniency, money, and drug treatment, until Rienbolt, who was under the influence of alcohol and drugs, relented under their pressure and made further fabrications concerning the murders, to wit:

a.    On March 29, 1987, Defendant Parrish, under the supervision and with the participation and/or knowledge of Defendants McFatridge, Eckerty and Ray, interrogated Rienbolt and compelled her to falsely state that the night of the murders, Whitlock made statements to her that he, Plaintiff, and Herrington were going to the Rhoads house to deal with Dyke concerning drugs, that she gave the knife to Whitlock, that she was present at the scene of the crimes, heard

14

screaming, saw the bodies, and later got the knife back from Whitlock with blood

on it;

**ANSWER:**   Defendant Eckerty denies the averments contained in paragraph 44(a) of
Plaintiff's Complaint to the extent they are directed at him.

b.    In early April 1987, Defendants Parrish and Eckerty, under the supervision

and with the participation and/or knowledge of Defendants McFatridge

and Ray, again interrogated Rienbolt on several occasions and compelled

her to falsely state that she was present at the crime and held Karen

Rhoads while Plaintiff and Whitlock stabbed her and Dyke Rhoads, and

that Plaintiff and Whitlock later paid her money not to talk.

**ANSWER:**   Defendant Eckerty denies the averments contained in paragraph 44(b) of
Plaintiff's Complaint to the extent they are directed at him.

45.    In March and April of 1987, Defendants Eckerty and Parish, with the participation

and/or knowledge and approval of Defendants McFatridge and Ray, similarly coerced,

manipulated and suggested false statements from other witnesses, including Curtis Smith and

Carol Robinson, which purportedly corroborated portions of Rienbolt's testimony, knowing such

testimony to be false.

**ANSWER:**   Defendant Eckerty denies the averments contained in paragraph 45 of Plaintiff's
Complaint to the extent they are directed at him.

46.    Additionally, Defendants Parrish and Eckerty, with the knowledge and approval

of Defendants Ray and McFatridge, reduced these coerced, manipulated, suggested and

manufactured false stories and statements of Rienboldt, Smith, and Robinson to official police

reports, while suppressing from those reports, the highly exculpatory information that these

15

statements were false and incredible, contrary to physical and other evidence, and based on fabrication, coercion, suggestion, threats and promises.

**ANSWER:**    Defendant Eckerty denies the averments contained in paragraph 46 of Plaintiff's Complaint to the extent they are directed at him.

47.    Defendant McFatridge made numerous false pre-trial public statements to the media concerning the Plaintiff, Whitlock, and the evidence against them, which statements were widely reported in the press.

**ANSWER:**    Defendant Eckerty makes no answer to the averments of paragraph 47 of Plaintiff's Complaint as they are not directed at this Defendant.

48.    In order to insure that Rienboldt would continue to tell her false story at Whitlock and Plaintiff's trials, the Defendants first forced her into a drug treatment center, then placed her under house arrest and coerced and enticed her into pleading guilty to the charge of concealing a homicidal death, in exchange for a lenient sentence, relocation expenses, and other rewards.  As part of this coercive agreement, the Defendants obtained Rienbolt's signature on a six page statement of "facts" which recited her prior coerced, suggested, fabricated, manipulated, false and incredible statements about the crime.  This "agreement" further provided that she could be charged with, and tried for, additional crimes if she did not testify consistently with her statement, and the Defendants made it clear to her that these additional crimes included murder, with a sentence of death.

**ANSWER:**    Defendant Eckerty denies the averments contained in paragraph 48 of Plaintiff's Complaint to the extent they are directed at him.

49.    Whitlock was tried in May of 1987 and convicted on the basis of the evidence which was manufactured, coerced and suggested by Defendants Parrish, Eckerty, Ray and

16

McFatridge.  This evidence and the guilty verdict was widely reported in the media, and together with McFatridge's false public statements, prejudiced the judge and jury against Plaintiff.

**ANSWER:**  Defendant Eckerty admits that Whitlock was tried and convicted of the murder of Karen Rhoads in May of 1987 and that Whitlock's verdict was reported in the media.  Defendant Eckerty denies the remaining averments contained in paragraph 49 to the extent they are directed at him.

50.    Subsequent to Whitlock's conviction, in June of 1987, Plaintiff was tried and convicted of murder and arson, and on June 16, 1987, sentenced to death on the basis of the false evidence fabricated, coerced, suggested, and manipulated by Defendants Parrish, Eckerty, Ray and McFatridge.

**ANSWER:**  Defendant Eckerty admits that Plaintiff was tried and convicted of the murders of Karen and Dyke Rhoads in June of 1987 and was subsequently sentenced to death.  Defendant Eckerty denies the remaining averments contained in paragraph 50 to the extent they are directed at him.

51.    The Defendants suppressed from the Plaintiff and his lawyers, the Judge who presided over his case, and the jury that convicted him all of the highly exculpatory evidence set forth above, as well as evidence of other potential suspects, and promises of leniency and payments that the Defendants made to Deborah Rienbolt.

**ANSWER:**  Defendant Eckerty denies the averments contained in paragraph 51 of Plaintiff's complaint to the extent they are directed at him.

52.    Despite their exhaustive attempts to do so, the Defendants neither developed nor presented at trial any physical evidence - - such as hair samples, fingerprints, bloodstains, footwear patterns or other scientific evidence - - which linked Plaintiff or Whitlock to the crime scene.

17

**ANSWER:**    Defendant Eckerty admits that despite an intensive investigation, no physical evidence, such as hair samples, fingerprints, bloodstains, footwear patterns or other scientific evidence was located linking Plaintiff or Whitlock to the crime.

53.    Directly after his conviction and sentencing, Plaintiff filed a notice of appeal, and a post conviction petition, challenging his conviction. The Attorney General's Office represented the State in these post trial proceedings.

**ANSWER:**    Defendant Eckerty admits that after his conviction and sentencing, Plaintiff filed a notice of appeal and a post-judgment petition pursuant to section 2-1401 of the Code of Civil Procedure challenging his conviction. The Attorney General's Office represented the State in Plaintiff's appeal of his conviction, sentence, and the denial of his section 2-1401 post-judgment petition. The Attorney General's Office also represented the State during proceedings in regard to the subsequent filing by Plaintiff of a post-conviction petition, including the appeal of the dismissal thereof and in response to the Plaintiff's petition for writ of habeas corpus.

54.    After the trial, and during the post-trial proceedings, Defendants Parrish, Eckerty, Ray, and McFatridge, continued to suppress the fact that they had coerced, suggested, manipulated and manufactured the false and incredible evidence upon which Plaintiff and Whitlock were wrongfully convicted for crimes they did not commit, and that they were, and continued to be, more likely suspects.

**ANSWER:**    Defendant Eckerty denies the averments contained in paragraph 54 of Plaintiff's Complaint to the extent they are directed at him.

55.    Shortly after Plaintiff's conviction and sentencing, in August of 1987, Darrell Herrington and his wife told Defendants Parrish, Ray and other Paris police officers that Herrington had lied in his testimony at trial; that he saw John Doe at the bottom of the stairs at the crime scene just after the murders and before he saw Plaintiff and Whitlock; that Plaintiff and Whitlock had walked in after the crime, rather than having committed it; that John Doe said "you

18

didn't see me," and later offered him $25,000 in cash, $25,000 in property, and a job with the promise he would not have to work, to keep his mouth shut; and that John Doe was shipping narcotics in bags of dog food produced by one of his companies.

    **ANSWER:**    Defendant Eckerty makes no answer to the averments of paragraph 55 of Plaintiff's Complaint as they are not directed at this Defendant.

56.    Defendants Ray and Parrish recorded these highly exculpatory statements in notes and a police report which they suppressed, with the knowledge and/or at the direction and with the approval, of Defendant McFatridge, from the Plaintiff and Whitlock, their lawyers, and the Courts who were considering his appeal and post-conviction proceedings. These notes and report remained suppressed until 1998 when Plaintiff's investigator discovered them in a police storage garage.

**ANSWER:**    Defendant Eckerty makes no answer to the averments of paragraph 56 of Plaintiff's Complaint as they are not directed at this Defendant.

57.    In November of 1988, Herrington gave a statement to Plaintiff's lawyers in which he stated that his trial testimony had been suggested, manufactured, coerced and procured with alcohol and other promises by Defendants Parrish, Ray, Eckerty and McFatridge, that it was false and incomplete in important respects, that he did not see Plaintiff with a knife, and that he "wouldn't be surprised" if Plaintiff was not involved in the murders.

**ANSWER:**    Defendant Eckerty is without knowledge or information sufficient to form a belief as to the truth or falsity of the averments of paragraph 57 of Plaintiff's Complaint.

58.    The Defendants became aware of Herrington's recantation shortly thereafter, and in response, Defendants Parrish and McFatridge further coerced Harrington, intervened with the Secretary of State to get Herrington's drivers' license restored, despite five DUI convictions, and

waived payment of fines related to the convictions, in order to obtain his false repudiation of his recantation.

**ANSWER:**    Defendant Eckerty denies the averments in paragraph 58 of Plaintiff's Complaint to the extent they are directed at him.

59.    During 1988 and 1989, McFatridge and Parrish stayed in contact with Rienbolt, who had been sentenced to prison for concealment of a homicidal death, making further promises and accommodations in order to keep her from recanting her testimony and exposing how they had obtained false testimony from her through coercion, manipulation, promises, and suggestion.

**ANSWER:**    Defendant Eckerty makes no answer to the averments of paragraph 59 of Plaintiff's Complaint as they are not directed at this Defendant.

60.    In June of 1988, McFatridge, together with Rienbolt, authored a false letter to the editor, signed by Rienbolt, and obtained its publication in the local Paris newspaper in which she painted herself to be a courageous witness who had come forward against her own interests to give truthful eyewitness testimony which resulted in the conviction of Plaintiff and Whitlock. This letter was designed to further prejudice Plaintiff's and Whitlock's appeal and post trial proceedings, create public sympathy for Rienbolt, and to further the Defendants' suppression of the truth about their frame up of the Plaintiff and Whitlock.

**ANSWER:**    Defendant Eckerty makes no answer to the averments of paragraph 60 of Plaintiff's Complaint as they are not directed at this Defendant.

61.    Later in 1988, Rienbolt, while in prison, and acting as an informant for a Federal Marshal who was looking for a federal fugitive named James "Jim" Slifer, informed him that Slifer had ordered and was present for the Rhoads murders.

**ANSWER:**    Defendant Eckerty is without knowledge or information sufficient to form a belief as to the truth or falsity of the averments of paragraph 61 of Plaintiff's Complaint.

20

62.    Rienbolt became the subject of a Federal investigation for allegedly making false statements to federal authorities, and in January of 1989, McFatridge intervened with the U.S. attorney on her behalf.

**ANSWER:**    Defendant Eckerty is without knowledge or information sufficient to form a belief as to the truth or falsity of the averments of paragraph 62 of Plaintiff's Complaint.

63.    In January of 1989, Rienbolt told Steidl's appellate lawyer that Plaintiff "did not take part in the killings of Dyke and Karen Rhoads and was not present when the murders took place," that James Slifer "was personally present in the Rhoads bedroom at the time of the murders," that Cheryl Costa "had some involvement with Slifer and the murders," and that Darrell Herrington was not present at the scene of the murders.  Additionally, she signed an affidavit which stated that she knew "Randy Steidl did not stab either Dyke or Karen Rhoads," and that she "repeatedly told the police and the prosecutor that Randy Steidl did not stab either Dyke or Karen Rhoads but the police and the prosecutor ignored my statements."

**ANSWER:**    Defendant Eckerty admits that Rienbolt signed an affidavit for Plaintiff's appellate lawyer.  Defendant Eckerty denies the remaining averments of paragraph 63 of Plaintiff's Complaint to the extent they are directed at him.

64.    Later in January of 1989, Defendants McFatridge and Parrish, upon learning of her recantations which implicated them and their fellow Defendants, used further coercion, threats and promises to obtain Rienbolt's false repudiation of these statements; in April of 1989 Defendant McFatridge attempted to get the Federal Marshal to sign a false and incomplete affidavit which stated that "at no time did Deborah I. Rienbolt indicate that James Slifer or anyone else was also present at the murder scene of Dyke and Karen Rhoads," while omitting that Rienbolt had said that Slifer had ordered the murders.

21

**ANSWER:**     Defendant Eckerty makes no answer to the averments of paragraph 64 of Plaintiff's Complaint as they are not directed at this Defendant.

65.     In February of 1989, Plaintiff filed a post conviction petition which raised, *inter alia*, the false testimony of Herrington and Rienbolt, and their recantations.

**ANSWER:**     Defendant Eckerty admits that in February of 1989, Plaintiff filed a post-judgment petition pursuant to section 2-1401 of the Code of Civil Procedure which alleged that Herrington and Rienbolt falsely testified at Plaintiff's criminal trial and further alleged that Herrington and Rienbolt had recanted their trial testimony.

66.     In response to this filing, Defendant McFatridge, continuing his false publicity campaign, again made false and prejudicial public statements in response to Plaintiff's evidence, discrediting the recantations, and again falsely claiming that "one fact will never change - - - that Herbert R. Whitlock and Gordon R. Steidl are responsible for the deaths of Dyke and Karen Rhoads."

**ANSWER:**     Defendant Eckerty makes no answer to the averments of paragraph 64 of Plaintiff's Complaint as they are not directed at this Defendant.

67.     On the basis of Herrington and Rienboldt's original false, manufactured and coerced testimony and their repudiations of their recantations, all of which were coerced, suggested, fabricated and manipulated by Defendants Parrish, Ray, McFatridge and Eckerty; the Defendants' continued suppression of highly exculpatory evidence which demonstrated that this testimony was false, coerced, fabricated, suggested and manipulated, that Plaintiff and Whitlock were innocent of the crimes, and that other persons were more likely suspects; Parrish and Eckerty's false and perjurious testimony at the hearing; and the continued highly prejudicial atmosphere engendered by this false evidence and Defendant McFatridge's publicity campaign, the trial Judge denied Plaintiff's post conviction petition on March 20, 1990.

22

**ANSWER:**     Defendant Eckerty admits that the trial judge denied Plaintiff's section 2-1401 post-judgment petition on March 20, 1990.  Defendant Eckerty denies the remaining averments contained in paragraph 67 of Plaintiff's Complaint to the extent they are directed at him.

68.     In late 1990 or early 1991, Defendant McFatridge stepped down as State's Attorney of Edgar County.

**ANSWER:**     Defendant Eckerty admits the averments contained in paragraph 68 of Plaintiff's Complaint.

69.     On January 24, 1991, the Illinois Supreme Court, relying on the same coerced, suggested, fabricated and manipulated evidence, and unaware of the highly exculpatory evidence which had been suppressed, affirmed the Plaintiff's conviction and death sentence and the denial of his post conviction petition.

**ANSWER:**     Defendant Eckerty admits that on January 24, 1991, the Illinois Supreme Court affirmed Plaintiff's conviction and death sentence and denial of his section 2-1401 post-judgment petition.  Defendant Eckerty denies the remaining averments contained in paragraph 69 of Plaintiff's Complaint.

70.     In 1992, Plaintiff filed a post conviction petition, which was amended in 1995, and this petition was denied without an evidentiary hearing on October 25, 1995.  This denial was a direct result of all of the false testimony, statements and repudiations of recantations which were coerced, suggested, fabricated, manipulated, and bought and paid for by Defendants Parrish, Ray, McFatridge and Eckerty; by the Defendants' continued suppression of highly exculpatory evidence which demonstrated that this testimony was false, coerced, fabricated, suggested and manipulated, that Plaintiff and Whitlock were innocent of the crimes, and that there were other suspects who were more likely involved in the crimes; and the continued highly prejudicial atmosphere engendered by this false evidence and Defendant McFatridge's publicity campaign.

23

**ANSWER:**     Defendant Eckerty admits that Plaintiff filed a post-conviction petition in 1992 which was amended in 1995 and that said amended post-conviction petition was dismissed without an evidentiary hearing on October 25, 1995. Defendant Eckerty denies the remaining averments in paragraph 70 of Plaintiff's Complaint to the extent they are directed at him.

71.     In February of 1996, Rienbolt gave a sworn court reported and videotaped statement to Plaintiff's lawyers in which she swore that her prior statements and testimony were false. She further swore she had not been present at the scene of the murders, that the knife she provided had not been the murder weapon, and that she had no knowledge of Plaintiff having been involved in the crime. She also averred that Defendants Parrish, Eckerty, Ray and McFatridge coerced, manipulated and suggested her statements and trial testimony which falsely inculpated Plaintiff and Whitlock.

**ANSWER:**     Defendant Eckerty admits that Rienbolt gave a court reported and video-taped statement in February of 1996, during which she testified that she was not at the Rhoads' house the night they were killed; that to her knowledge the knife she provided had not been used to kill Dyke and Karen Rhoads; and that she had no knowledge of petitioner being involved in the crime. Defendant Eckerty is without knowledge or information sufficient to form a belief regarding the truth or falsity of the remaining averments in paragraph 71 of Plaintiff's Complaint.

72.     Less than a week after her 1996 recantation, Rienbolt, at the behest of Defendants Parrish, McFatridge and Eckerty, retracted her recantation of the previous week.

**ANSWER:**     Defendant Eckerty admits that Rienbolt retracted her February 1996 statement. Defendant Eckerty denies the remaining averments in paragraph 72 of Plaintiff's Complaint to the extent they are directed at him.

73.     The Illinois Supreme Court reversed the dismissal of Plaintiff's amended post conviction petition on September 18, 1997, holding that Plaintiff was entitled to an evidentiary hearing, *inter alia*, on the basis of newly discovered evidence.

24

**ANSWER:**     Defendant Eckerty admits that the Illinois Supreme Court reversed the dismissal of Plaintiff's amended post-conviction petition on September 18, 1997 and remanded the case for an evidentiary hearing.  Defendant Eckerty denies the averred basis for the reversal and remand.

74.     In 1998, the trial court conducted a post conviction evidentiary hearing at which the false evidence which was coerced, fabricated, manipulated and suggested by the Defendants was again introduced in support of denial of relief.  Defendant McFatridge gave false and perjured testimony at this hearing, in which he denied any misconduct by himself or any other of the Defendants, and Defendants McFatridge, Parrish, Ray and Eckerty continued to withhold and suppress from this hearing all of the exculpatory evidence of which they were aware.

**ANSWER:**     Defendant Eckerty admits that the trial court conducted a post-conviction evidentiary hearing in 1998.  Defendant Eckerty denies the remaining averments in paragraph 74 of Plaintiff's Complaint to the extent they are directed at him.

75.     On December 11, 1998, the trial court again denied Plaintiff post conviction relief on his conviction.  This denial was based on the false, manufactured, coerced, and suggested evidence detailed above, McFatridge's false and perjured testimony, and the continued suppression of exculpatory evidence.  The court did grant Plaintiff a new sentencing hearing.

**ANSWER:**     Defendant Eckerty admits that on December 11, 1998, the trial court denied Petitioner's request for a new trial, but did grant Plaintiff a new sentencing hearing.  Defendant Eckerty denies the remaining averments in paragraph 75 of Plaintiff's Complaint to the extent they are directed at him.

76.     The state declined to pursue the death penalty, and on February 18, 1999, Plaintiff was resentenced to natural life imprisonment.  The Illinois Appellate Court affirmed denial of this post conviction petition on December 5, 2000, and the Illinois Supreme Court denied leave to appeal on April 4, 2001.

**ANSWER:**    Defendant Eckerty admits the averments contained in paragraph 76 of Plaintiff's Complaint.

77.    In mid-April of 2000, Illinois State Police (ISP) Lieutenant Michale Callahan, who was District 10 Investigations Commander, was assigned to review the Rhoads murders in response to a letter from Plaintiff's attorney documenting newly discovered evidence.

**ANSWER:**    Defendant Eckerty admits that in or about mid-April, Illinois State Police Lieutenant Michale Callahan who was District 10 Investigations Commander, was assigned to review the Rhoads murders in response to a letter from Plaintiff's attorney. Defendant Eckerty is without knowledge or information sufficient to form a belief regarding the truth or falsity of the remaining averments in paragraph 77 of Plaintiff's Complaint.

78.    In a memorandum to ISP Captain John Strohl, dated May 17, 2000, which was circulated up the ISP chain of command to Defendants Diane Carper and Andre Parker, and later to Defendant Steven Fermon, Callahan documented a wealth of evidence gathered during his review which supported his conclusion that Plaintiff and Whitlock "had not been proven guilty beyond a reasonable doubt," and that John Doe "was at one time and should still be the focus of the investigation."

**ANSWER:**    Defendant Eckerty is without knowledge or information sufficient to form a belief regarding the truth or falsity of the averments in paragraph 78 of Plaintiff's Complaint.

79.    Among the facts, findings and conclusions included in this memorandum of May 17, 2000, were thirty-eight separate contradictions and material falsehoods found in Rienbolt and Herrington's testimony, including the following:

 * Defendants Parrish and McFatridge had witness Carol Robinson lie on the stand as to whether she saw Herrington and Plaintiff together on July 5th;
 * Herrington's time line did not fit with the crime;

26

&ast; A polygraph examiner found purposeful non cooperation of Herrington, and the examiner's recommendation that Herrington be re-examined was ignored by the Defendants;

&ast; Rienbolt's testimony that she skipped work on the night of July 5th and was with Plaintiff and Whitlock was refuted by numerous witnesses;

&ast; Rienbolt's testimony that a broken lamp was used in the homicides was refuted by the testimony of the fire examiners;

&ast; Rienbolt later recanted her testimony that she was present at the murders and that Plaintiff was involved;

&ast; Rienbolt lied about the knife;

&ast; Rienbolt admitted that Parrish led her into her false testimony.

**ANSWER:** Defendant Eckerty is without knowledge or information sufficient to form a belief regarding the truth or falsity of the averments in paragraph 79 of Plaintiff's Complaint.

80. In this May 17, 2000 memorandum, Callahan further set forth evidence which supported the determination that John Doe and several of his employees were, and continued to be, suspects in the Rhoads murders; in other related homicides, and in organized crime and narcotics trafficking, as well as Defendant Parrish' s connection to John Doe. Much of this highly exculpatory evidence was known to Defendants Parrish, Eckerty, Ray and McFatridge, was suppressed from Plaintiff and Whitlock by them, and included:

&ast; Karen Rhoads worked as Paris businessman John Doe's secretary and he frequently visited her apartment;

&ast; John Doe was a suspect in two prior homicides including the murder of a former secretary;

&ast; Karen Rhoads said that she had seen Doe and an employee load a large sum of cash and a machine gun in Doe's car and head for Chicago;

&ast; Karen Rhoads had told Doe the Friday prior to the murders that she was quitting her job, he forbade her from doing so, and a big argument ensued;

&ast; Two of Doe [sic] employees, who were known as his "right hand men," were implicated in the Rhoads murders;

&ast; Doe was the first on the scene after the crimes were discovered, and he offered police investigators detailed scenarios as to how the murders might have occurred;

&ast; Doe offered a $25,000 reward in the bars for information on the murders and Herrington later stated that Doe offered him $25,000 and a job to keep his mouth shut;

27

\*      Herrington also told Parish and Ray that Doe was at the scene of the murders at the time they occurred;

\*      Parish worked for Doe prior to the murders, observed what appeared to be illicit drug activities, and suspected him of being involved in drug distribution;

\*      Doe was a suspect in the Rhoads murders, and later stated that he knew he was a suspect because he "had his sources."

**ANSWER:**      Defendant Eckerty denies that he was aware of and suppressed any "highly exculpatory evidence" from Plaintiff and Whitlock. Defendant Eckerty is without knowledge or information sufficient to form a belief regarding the truth or falsity of the remaining averments in paragraph 80 of Plaintiff's Complaint.

81.      Lt. Callahan continued his investigation, and in July of 2000 and August of 2001, he wrote further memos to his superiors, which were also disseminated to Defendants Carper and Parker, and later to Defendant Fermon. In these memos he further articulated a wealth of evidence exculpatory to Plaintiff and Whitlock which he had developed during his investigation of the Rhoads murders, about Defendants McFatridge, Eckerty, Parrish and their investigation of the murders, and John Doe's alleged involvement as a suspect in the murders, in narcotics trafficking, and other organized criminal activity. Much of this evidence was known to Defendants Parrish, Eckerty, Ray and McFatridge, and was suppressed from Plaintiff and Whitlock. These memos included the following exculpatory evidence and investigative findings and conclusions:

\*      a number of John Doe's employees, including those named as suspects in the Rhoads murders, allegedly made drug runs for John Doe;

\*      John Doe was a target in a narcotics investigation;

\*      the FBI was looking at John Doe for narcotics, money laundering, corruption, ties to organized crime, and in connection with several unsolved homicides;

\*      a former Paris official said that Defendant McFatridge was "in the Mafia's pocket" and that his law school loans "were paid off by organized crime figures;"

\*      Defendants Eckerty and Parrish both admitted that John Doe was one of the main suspects in the Rhoads murders before Herrington and Rienbolt's statements were obtained;

28

\*     Callahan concluded that the Rhoads investigation was "not only incomplete, but that important leads were not followed up on;"

\*     negative information or evidence leaning to the innocence of Plaintiff and Whitlock was not disclosed because, as Eckerty admitted to Callahan, "McFatridge did not want any negative reports;"

\*     "besides the obvious weaknesses in the case and poor investigative efforts, there remains questions of corruption and payoffs orchestrating the convictions of Steidl and Whitlock;"

\*     the Assistant Attorney General litigating Plaintiff's case admitted that if they lost the pending appeal, they wouldn't try him again because they would not be able to get a conviction in a second trial;

\*     other Edgar County Police Chiefs told Callahan that "they used the town drunk and a lying bitch to railroad those boys," and that "we all know [John Doe] was behind it but hell, he owns half the town."

\*     Herrington told the Rhoads family a year after the trial that he was sorry, that what happened that night did not happen the way he testified in Court, and that when he dies, there is a letter in a safe deposit box which will tell them what really happened;

\*     Herrington now does all of John Doe's drywalling, and is an affluent businessman with a fleet of cars;

\*     one of the suspects in the Rhoads murders stated that he had pictures of Defendant McFatridge doing cocaine with another John Doe employee;

\*     an admitted drug trafficker told Callahan that "the State's Attorney and the investigators" were "paid off" in the Rhoads case, and that Plaintiff and Whitlock were innocent;

\*     Karen Rhoads told a witness that she had seen John Doe and his right hand man loading a large sum of money and a machine gun into John Doe's car and head to Chicago; that she questioned why there was such a large cash flow through John Doe's business when it was accounts only; that two weeks before she was murdered, she told her mother that she had seen something at work she wished she didn't see, that she had no idea that John Doe was mixed up in something like this, that there was a part of the business that only John Doe and his right hand man were allowed to see, and that she had to "get out of there;" and two other witnesses overheard a very upset Karen Rhoads tell someone the Friday before her murder that she had quit working for John Doe, that she told John Doe that if he tried to stop her she would "open her mouth," and that John Doe said she could not quit;

\*     a gas station attendant informed the Parrish/Eckerty investigation that a tall blonde man with a pony tail bought 21 gallons of gas in seven 3 gallon containers the night of the murders;

\*     after the 48 Hours show on th Rhoads murders was aired, a John Doe associate and suspect in the murders stated that John Doe "orchestrated the murders;"

\* John Doe and his right hand man were offering the $25,000 reward for information concerning the Rhoads murders before it was known that they were murdered.

**ANSWER:** Defendant Eckerty denies that he was aware of and suppressed any exculpatory evidence from Plaintiff and Whitlock. Defendant Eckerty is without knowledge or information sufficient to form a belief regarding the truth or falsity of the remaining averments in paragraph 81 of Plaintiff's Complaint.

82. Lt. Callahan also documented that Eckerty, other law enforcement agents, and Eckerty's wife contacted Callahan to state that Eckerty was a good cop and that Callahan should not ruin his reputation. Eckerty also offered to sell Callahan a houseboat at his cost.

**ANSWER:** Defendant Eckerty denies that he offered to sell Callahan a houseboat at his cost. Defendant Eckerty is without knowledge or information sufficient to form a belief regarding the truth or falsity of the remaining averments in paragraph 82 of Plaintiff's Complaint.

83. Additional evidence demonstrated that John Doe had contributed large sums of money to high ranking Republican office holders and Callahan made this fact known to Defendants Carper, and Parker.

**ANSWER:** Defendant Eckerty is without knowledge or information sufficient to form a belief regarding the truth or falsity of the averments contained in paragraph 83 of Plaintiff's Complaint.

84. Despite all the evidence and investigative findings tendered by Lt. Callahan, Defendant Fermon, Carper, Brueggemann, and Parker blocked a full investigation of the Rhoads case, because it was 'too politically sensitive," limited the John Doe investigation to intelligence gathering, ordered Callahan to focus on assignments other than the Rhoads murders and John Doe, transferred Callahan from his investigative post, and, with Defendant Kaupus, launched an effort to discredit Callahan's evidence, findings and recommendations.

**ANSWER:**     Defendant Eckerty makes no answer to the averments contained in paragraph 84 of Plaintiff's Complaint as they are not directed at this Defendant.

85.     Because of this obstruction by Defendants Fermon, Carper, Brueggemann, Kaupus and Parker, the investigation into the Rhoads murders and John Doe and his associates' role therein, and the development of further evidence exculpatory to Plaintiff and Whitlock which would have resulted therefrom, was thwarted.

**ANSWER:**     Defendant Eckerty makes no answer to the averments contained in paragraph 85 of Plaintiff's Complaint as they are not directed at this Defendant.

86.     Additionally, these same Defendants, by their above described obstruction, suppressed from the Plaintiff and Whitlock, as well as from the courts which were considering their cases, this wealth of exculpatory evidence which, together with the evidence previously and continuously suppressed by Defendants Eckerty, Parrish, Ray and McFatridge, would have resulted in their exoneration and release.

**ANSWER:**     Defendant Eckerty denies the averments contained in paragraph 86 of Plaintiff's Complaint to the extent they are directed at this Defendant.

87.     In late 2002, Plaintiff filed a petition for executive clemency with the Governor of the State of Illinois in which he asked for a pardon on the basis of innocence.

**ANSWER:**     Defendant Eckerty admits the averments contained in paragraph 87 of Plaintiff's Complaint.

88.     Defendant McFatridge launched a public campaign opposing the freeing of Plaintiff by pardon, clemency, or collateral relief.  In so doing, he again made false public statements which prejudiced Plaintiff and his legitimate claims of innocence, for a new trial, and for release, which he was seeking in post conviction, habeas, and clemency and pardon proceedings.

**ANSWER:**     Defendant Eckerty makes no answer to the averments contained in paragraph 88 of Plaintiff's Complaint as they are not directed at this Defendant.

89.     In early January, 2003, a representative of the Governor called Callahan, informing him that the Governor was prepared to pardon Plaintiff and Whitlock if Callahan represented to him that, based on his investigation, they were innocent.

**ANSWER:**     Defendant Eckerty is without knowledge or information sufficient to form a belief regarding the truth or falsity of the averments in paragraph 89 of Plaintiff's Complaint.

90.     Callahan, who could not provide any information or opinions without first receiving approval from the Defendants who were his superiors in the chain of command, immediately sought such approval.

**ANSWER:**     Defendant Eckerty is without knowledge or information sufficient to form a belief regarding the truth or falsity of the averments in paragraph 90 of Plaintiff's Complaint.

91.     Callahan provided a detailed briefing at a lengthy meeting attended by Defendants Fermon, Carper, Brueggemann, and others, where he presented all the evidence and findings set forth above, and articulated his opinion, supported by all this evidence, that Plaintiff and Whitlock had not only not been proven guilty beyond a reasonable doubt, but that they were innocent, and that the jury never heard the truth.  Callahan also told these Defendants that there was no credible evidence against Plaintiff and Whitlock, that the two so-called eye witnesses had been completely discredited, that he strongly suspected wrongdoing by McFatridge, Eckerty and Parrish, and that John doe should continue to be the focus of the investigation.

**ANSWER:**     Defendant Eckerty is without knowledge or information sufficient to form a belief regarding the truth or falsity of the averments in paragraph 91 of Plaintiff's Complaint.

92.     At the briefing, Defendants Fermon, Carper, and Brueggemann opposed Callahan's evidence and took the position that he should not be permitted to inform the Governor's representative that Plaintiff and Whitlock were innocent; as a direct result, Callahan was ordered to offer no opinion and supply no exculpatory evidence to the Governor or his representative.

**ANSWER:**    Defendant Eckerty is without knowledge or information sufficient to form a belief regarding the truth or falsity of the averments in paragraph 92 of Plaintiff's Complaint.

93.     As a direct result of this obstruction and suppression by Defendants Fermon, Carper, and Brueggemann, as well as the previous and continuing suppression by Defendants Fermon, Carper, Brueggemann, Parker, Parrish, Eckerty, Ray and McFatridge, and McFatridge's campaign to defeat the granting of the innocence pardons, the Governor declined to make a determination on Plaintiff and Whitlock's request before leaving office, and their requests remain pending to this date.

**ANSWER:**    Defendant Eckerty admits that former Governor Ryan did not grant Plaintiff and Whitlock pardons based on innocence before leaving office.  Defendant Eckerty denies the remaining averments in paragraph 93 of Plaintiff's Complaint to the extent that they are directed at him.

94.     On June 17, 2003, the Federal District Court granted Plaintiff's petition for writ of habeas corpus, which had been filed on October 5, 2001, vacating Plaintiff's conviction and allowing the state 120 days to release or retry him, and finding that "acquittal was reasonably probable if the jury had heard all of the evidence".

**ANSWER:**    Defendant Eckerty admits the averments contained in paragraph 94 of Plaintiff's Complaint.

33

95.    On March 25, 2004, Attorney General Lisa Madigan announced she would not appeal this order, stating that after carefully reviewing the evidence, her office found that information favoring the defense was never disclosed, and that Plaintiff was thus entitled to a new trial.

**ANSWER:**    Defendant Eckerty admits the averments contained in paragraph 95 of Plaintiff's Complaint.

96.    In a last ditch effort to influence the prosecutors to continue to hold Plaintiff in custody and retry him, Defendant McFatridge made additional false public statements, including one to the Paris Beacon News in which he attacked Attorney General Lisa Madigan for her decision not to appeal the District Court's decision, recited again the false evidence which he and his co-Defendants had manufactured and coerced, falsely denied that he and his co-Defendants suppressed exculpatory evidence, and falsely claimed that Plaintiff was guilty of the brutal murders.

**ANSWER:**    Defendant Eckerty makes no answer to the averments in paragraph 96 of Plaintiff's Complaint as they are not directed at this Defendant.

97.    In part as a result of McFatridge's public statements, Plaintiff was continued in custody until May 28, 2004, when the circuit court granted the motion of the Office of the State Appellate Prosecutor, appointed by the court to prosecute Plaintiff, to nolle prosse the charges against Plaintiff.

**ANSWER:**    Defendant Eckerty admits that Plaintiff remained in custody until May 28, 2004 when the circuit court granted the motion of the Office of the State Appellate Prosecutor to nolle prosse the charges against Plaintiff.  Defendant Eckerty denies the remaining averments in paragraph 97 of Plaintiff's Complaint to the extent they are directed at him.

34

98.    On May 28, 2004, Plaintiff was released from Danville Correctional Center, after serving seventeen years in prison, twelve of them on Death Row, for two murders the Defendants knew he did not commit.

**ANSWER:**    Defendant Eckerty admits that Plaintiff was released from Danville Correctional Center on May 28, 2004 after having been incarcerated for seventeen years. Defendant Eckerty denies the remaining averments contained in paragraph 98 of Plaintiff's Complaint to the extent they are directed at him.

99.    Herb Whitlock continues to actively challenge his conviction, from behind bars, as he serves his sentence of life without the possibility of parole.

**ANSWER:**    Defendant Eckerty admits the averments contained in paragraph 99 of Plaintiff's Complaint.

100.    As a direct result of the egregious misconduct of the Defendants in obtaining and continuing Plaintiff's malicious prosecution, wrongful conviction and false imprisonment, Plaintiff has suffered, and continues to suffer, extreme physical and mental pain and suffering, and serious and continuing psychological damage.  He was forced to spend much of his adult life in cruel and inhumane conditions, falsely branded as a murderer, estranged from his children, daily contemplating his own execution, and the subject of physical attack.

**ANSWER:**    Defendant Eckerty denies the averments contained in paragraph 100 of Plaintiff's Complaint to the extent they are directed at him.

101.    Defendants Parrish, Eckerty, Ray, and McFatridge, later joined by Carper, Brueggerman, Fermon, Parker and Kaupus, acting jointly and with other unused persons, including Paris businessman John Doe, Deborah Rienbolt, Darrell Herrington, and other police and prosecutorial investigative, supervisory, and command personnel, together and under color of law, reached an understanding, engaged in a course of conduct, engaged in a joint action, and

otherwise conspired among and between themselves to deprive Plaintiff of his constitutional

rights, and did deprive Plaintiff of said rights, including his rights to be free from unreasonable

arrest and seizure, from wrongful confinement and imprisonment, and his rights to access to the

Courts and to a fair and impartial trial, as protected by the First, Fourth, Fifth, Sixth, Eighth, and

Fourteenth Amendments to the United States Constitution.

**ANSWER:**    Defendant Eckerty denies the averments contained in paragraph 101 of Plaintiff's
Complaint to the extent they are directed at him.

102.    In furtherance of this conspiracy or conspiracies, the Defendants, together with

their co-conspirators, each committed one or more of overt acts set forth above, including, but

not limited to, the wrongful arrest, imprisonment, charging and prosecution and frame-up of

Plaintiff and Herb Whitlock; the fabrication, manipulation, alteration, suggestion, and coercion

of false and totally unreliable inculpatory evidence against Plaintiff and Whitlock; the failure to

expose and/or stop the malicious prosecution, false imprisonment, and wrongful conviction of

Plaintiff and Whitlock; the repeated deception of prosecuting attorneys who represented the state

in post trial proceedings, judges, juries, and the Governor by *inter alia*, making knowing

misstatements and the presentation of this knowingly coerced, fabricated, suggested, false and

incredible evidence to prosecutors and judges; the giving of false testimony and the filing of false

and incomplete statements and reports; the suppression and destruction of favorable, exculpatory

evidence; the failure to come forward with a truthful account of the events; the payment of

money and other rewards to witnesses in order to obtain false testimony against Plaintiff and

Whitlock; the obstruction of an investigation which was uncovering further exculpatory and

exonerating evidence; the failure to investigate reliable leads that John Doe and his associates

were suspects in the crime; the making of false public statements in order to influence prosecuting attorneys, judges, juries and the Governor and his staff in Plaintiff and Whitlock's cases, and the other acts set forth above.

**ANSWER:** Defendant Eckerty denies the averments contained in paragraph 102 of Plaintiff's Complaint to the extent they are directed at him.

103. Said conspiracy or conspiracies, joint actions and overt acts continue to this date, have caused and continue to cause Plaintiff's constitutional rights to be violated and the injuries, pain, suffering, fear, mental anguish, detention, imprisonment, humiliation, defamation of character and reputation, and loss of freedom and companionship, as set forth more fully above and below.

**ANSWER:** Defendant Eckerty denies the averments contained in paragraph 103 of Plaintiff's Complaint to the extent they are directed at him.

## COUNT I
### (42 U.S.C. § 1983 Claim for False Imprisonment)

104. Plaintiff re-alleges paragraphs 1 through 103 of Plaintiff's Complaint.

**ANSWER:** See Defendant Eckerty's answers to paragraphs 1 through 103 above.

105. The actions of Defendants Gene Ray, James Parrish, Jack Eckerty, and Michael McFatridge, individually, jointly, and in conspiracy with each other and with certain other named and unnamed private individuals and law enforcement agents, in falsely arresting and imprisoning Plaintiff, and of these same defendants, together with Defendants Steven Fermon, Diane Carper, Charles Brueggemann, Andre Parker and Kenneth Kaupus, individually, jointly, and in conspiracy with each other and with certain other named and unnamed private individuals and law enforcement agents, inc continuing said imprisonment for seventeen years, without

probable cause, violated Plaintiff's Fourth and Fourteenth Amendment rights to be free from

unreasonable seizures.

**ANSWER:**    Defendant Eckerty denies the allegations set forth in paragraph 105 of Plaintiff's
Complaint to the extent they are directed at him.

106.    The actions of the Defendants in falsely arresting and imprisoning Plaintiff,

continuing said false imprisonment, and covering up their own misconduct were a direct and

proximate cause of Plaintiff's injuries and damages as more fully set forth above.

**ANSWER:**    Defendant Eckerty denies the allegations set forth in paragraph 106 of Plaintiff's
Complaint to the extent they are directed at him.

WHEREFORE, Defendant Eckerty denies that Plaintiff is entitled to any judgment

whatsoever against him, and prays this Honorable Court will enter judgment in his favor and

allow for the costs of defending this lawsuit.

## COUNT II
### (42 U.S.C. § 1983 Claim for Deprivation of Right to Fair Trial
### and for Wrongful Conviction)

107.    Plaintiff re-alleges paragraphs 1 through 106.

**ANSWER:**    See Defendant Eckerty's answers to paragraphs 1 through 106 of Plaintiff's
Complaint.

108.    Defendants Gene Ray, James Parrish, Jack Eckerty, and Michael McFatridge,

individually, jointly, and in conspiracy with each other and with certain other named and

unnamed private individuals and law enforcement agents, caused the wrongful charging,

prosecution, and conviction of Plaintiff, and these same Defendants, together with Defendants

Steven Fermon, Diane Carper, Andre Parker, Kenneth Kaupus and Charles Brueggemann,

individually, jointly, and in conspiracy with each other and with certain other named and

38

unnamed private individuals and law enforcement agents, caused the continuation of said

wrongful conviction, by coercing, constructing and/or fabricating the false and totally unreliable

statements, testimony and other evidence which formed the basis for Plaintiff's charging,

prosecution and conviction; by withholding from Plaintiff's defense attorneys, and the judges,

juries, post trial prosecutors, and the Governor and his staff, who were involved in Plaintiff's

criminal proceedings, the highly exculpatory and exonerating evidence that these statements,

testimony and other evidence were false, totally unreliable, fabricated, manipulated, suggested

and coerced; by suppressing from these same persons additional highly exculpatory and

exonerating evidence and documents which further exonerated the Plaintiff and his co-defendant,

including evidence of other more likely suspects; by writing false reports and giving and

tendering false testimony and statements at the grand jury, at trial, and at post-conviction and

habeas corpus proceedings; by improperly influencing the judges, juries and executive bodies and

officials hearing and considering Plaintiff's case, and the past trial prosecutors who continued his

prosecution, *inter alia*, by making false public statements, by obstructing investigations which

would have led to discovery of further exculpatory evidence, and by the additional wrongdoing

set forth above, thereby unconstitutionally depriving Plaintiff of his liberty and violating his right

to a fair and impartial trial and not to be wrongfully convicted, as guaranteed by the Fourteenth

Amendment to the U.S. Constitution.

**ANSWER:**     Defendant Eckerty denies the allegations contained in paragraph 108 of Plaintiff's Complaint to the extent they are directed at him.

109.     The actions of Defendants Gene Ray, James Parrish, Jack Eckerty, Michael

McFatridge, Steven Fermon, Diane Carper, Andre Parker, Kenneth Kaupus and Charles

Brueggemann, in depriving Plaintiff of his right to a fair trial and not to be wrongfully convicted

were a direct and proximate cause of the injuries to Plaintiff which are set forth above.

**ANSWER:**    Defendant Eckerty denies the allegations contained in paragraph 109 of Plaintiff's
Complaint to the extent they are directed at him.

WHEREFORE, Defendant Eckerty denies that Plaintiff is entitled to any judgment

whatsoever against him, and prays this Honorable Court will enter judgment in his favor and

allow for the costs of defending this lawsuit.

## COUNT III
### (42 U.S.C. § 1983 Due Process Claim for Deprivation of Access to Courts)

See Defendants' Motion to Dismiss Count III of Plaintiff's Complaint.

## COUNT IV

### (42 U.S.C. § 1983 *Monell* Policy Claim Against City of Paris)

Defendant Eckerty makes no answer to the averments of County IV of Plaintiff's

Complaint as Count IV is not directed at this Defendant.

## COUNT V
### (State Law Claim for False Imprisonment)

118.    Plaintiff realleges paragraphs 1 through 117.

**ANSWER:**    See Defendant Eckerty's answers to paragraphs 1 through 117 of Plaintiff's
Complaint.

119.    The imprisonment of Plaintiff, without probable cause, by Defendants Ray,

Parrish, Eckerty and McFatridge, individually, jointly, and in conspiracy with each other and

with certain other named and unnamed private individuals and law enforcement agents, and its

continuation by these Defendants, together with Defendants Fermon, Carper, Parker, Kaupus and

Brueggemann, individually, jointly, and in conspiracy with each other and with certain other

named and unnamed private individuals and law enforcement agents, constituted the tort of false

arrest and imprisonment under Illinois law.

**ANSWER:**     Defendant Eckerty denies the allegations contained in paragraph 119 of Plaintiff's
Complaint to the extent they are directed at him.

120.     Defendants' actions in arresting and imprisoning Plaintiff were willful and

wanton.

**ANSWER:**     Defendant Eckerty denies the allegations contained in paragraph 120 of Plaintiff's
Complaint to the extent they are directed at him.

WHEREFORE, Defendant Eckerty denies that Plaintiff is entitled to any judgment

whatsoever against him, and prays this Honorable Court will enter judgment in his favor and

allow for the costs of defending this lawsuit.

### COUNT VI
### (State Law Claim for Malicious Prosecution)

121.     Plaintiff re-alleges paragraphs 1 through 120, and with specific particularity,

paragraph 108.

**ANSWER:**     See Defendant Eckerty's answers to paragraphs 1 through 120 of Plaintiff's
Complaint.

122.     Defendants Gene Ray, James Parrish, Jack Eckerty, and Michael McFatridge,

individually, jointly, and in conspiracy with each other and with certain other named and

unnamed private individuals and law enforcement agents, initiated a malicious prosecution

without probable cause against Plaintiff, and these same Defendants, together with Defendants

Steven Fermon, Diane Carper, Andre Parker, Kenneth Kaupus and Charles Brueggemann,

individually, jointly, and in conspiracy with each other and with certain other named and

unnamed private individuals and law enforcement agents, continued said prosecution, again

without probable cause. Said prosecution was ultimately terminated in Plaintiff's favor. The Defendants' actions were done in a willful and wanton manner, and directly and proximately caused the injury and damage to Plaintiff as set forth above.

**ANSWER:**    Defendant Eckerty denies the allegations contained in paragraph 122 of Plaintiff's Complaint to the extent they are directed at him.

WHEREFORE, Defendant Eckerty denies that Plaintiff is entitled to any judgment whatsoever against him, and prays this Honorable Court will enter judgment in his favor and allow for the costs of defending this lawsuit.

## COUNT VII
### (State Law Claim for Intentional Infliction of Emotional Distress)

123.    Plaintiff re-alleges paragraphs 1 through 103 and 118 through 122.

**ANSWER:**    See Defendant Eckerty's answers to paragraphs 1 through 103 and 118 through 122 of Plaintiff's Complaint.

124.    Defendants Gene Ray, James Parrish, Jack Eckerty, Gene Ray, and Michael McFatridge, individually, jointly, and in conspiracy, with each other and with certain other named and unnamed private individuals and law enforcement agents, engaged in extreme and outrageous conduct by, *inter alia*, constructing, coercing, manipulating, fabricating, suggesting and altering the evidence against Plaintiff, by procuring his prosecution, conviction, death sentence, and imprisonment for heinous crimes he did not commit, and by making false and defamatory public statements. Additionally, these same Defendants, together with Defendants Steven Fermon, Diane Carper, Andre Parker, Kenneth Kaupus and Charles Brueggemann, individually, jointly, and in conspiracy with each other and with certain other named and unnamed private individuals and law enforcement agents, engaged in additional extreme and

42

outrageous conduct by suppressing additional exculpatory evidence, by continuing Plaintiff's

wrongful conviction and false imprisonment, by refusing to properly investigate, and by

otherwise abusing Plaintiff.

**ANSWER:**     Defendant Eckerty denies the allegations contained in paragraph 124 of Plaintiff's
Complaint to the extent they are directed at him.

125.    Defendants Gene Ray, James Parrish, Jack Eckerty, Michael McFatridge, Steven

Fermon, Diane Carper, Andre Parker, Kenneth Kaupus and Charles Brueggemann intended, by

subjecting Plaintiff to such humiliating, degrading conduct, to inflict severe emotional distress on

Plaintiff, and knew that their conduct would cause Plaintiff and his family severe emotional

distress.

**ANSWER:**     Defendant Eckerty denies the allegations contained in paragraph 125 of Plaintiff's
Complaint to the extent they are directed at him.

126.    As a direct and proximate result of Defendants' outrageous conduct, Plaintiff was

injured, and has experienced, and continues to experience, severe emotional distress, including

fear of execution, nightmares, sleep disruption, symptoms of post traumatic stress disorder,

anxiety, depression, and difficulty in focusing or concentrating.

**ANSWER:**     Defendant Eckerty denies the allegations contained in paragraph 126 of Plaintiff's
Complaint to the extent they are directed at him.

WHEREFORE, Defendant Eckerty denies that Plaintiff is entitled to any judgment

whatsoever against him, and prays this Honorable Court will enter judgment in his favor and

allow for the costs of defending this lawsuit.

## COUNT VIII
### (State Claim for Conspiracy)

127.    Plaintiff re-alleges paragraphs 1 through 103 and 118 through 126.

43

**ANSWER:**     See Defendant Eckerty's answers to paragraphs 1 through 103 and 118 through 126 of Plaintiff's Complaint.

128.    Defendants Gene Ray, James Parrish, Jack Eckerty, Michael McFatridge, Steven Fermon, Diane Carper, Andre Parker, Kenneth Kaupus and Charles Brueggemann, with other unsued co-conspirators, including John Doe, Deborah Rienbolt and Darrell Herrington, and other police and prosecutorial investigative, supervisory, and command personnel, together reached an understanding, engaged in a course of conduct, and otherwise jointly acted and/or conspired among and between themselves to falsely imprison and/or to continue said imprisonment, to maliciously prosecute and/or continue said prosecution, and to intentionally inflict severe emotional distress on Plaintiff.

**ANSWER:**     Defendant Eckerty denies the allegations contained in paragraph 128 of Plaintiff's Complaint to the extent they are directed at him.

129.    In furtherance of this conspiracy or conspiracies, the Defendants named above, together with their unsued co-conspirators, committed the overt acts set forth in the Facts above, including, but not limited to, those summarized in paragraph 102.

**ANSWER:**     Defendant Eckerty denies the allegations contained in paragraph 129 of Plaintiff's Complaint to the extent they are directed at him.

130.    Said conspirac(ies) and overt acts were and are continuing in nature, and were and are a proximate cause of Plaintiff's tortuous injuries under state law, as set forth above.

**ANSWER:**     Defendant Eckerty denies the allegations contained in paragraph 130 of Plaintiff's Complaint to the extent they are directed at him.

131.    Defendants' and their co-conspirators' overt acts, as set forth above, which were committed jointly and/or while conspiring together to falsely imprison, maliciously prosecute,

44

and intentionally inflict emotional distress on the Plaintiff, constitute the tort of conspiracy as set forth above.

**ANSWER:**    Defendant Eckerty denies the allegations contained in paragraph 131 of Plaintiff's Complaint to the extent they are directed at him.

WHEREFORE, Defendant Eckerty denies that Plaintiff is entitled to any judgment whatsoever against him, and prays this Honorable Court will enter judgment in his favor and allow for the costs of defending this lawsuit.

## COUNT IX
### (State Law Respondeat Superior Claim)

Defendant Eckerty makes no answer to the averments of County IX of Plaintiff's Complaint as Count IX is not directed at this Defendant.

## COUNT X

### (745 ILCS 10/9-102 and Common Law Claims Against the City of Paris)

Defendant Eckerty makes no answer to the averments of County X of Plaintiff's Complaint as Count X is not directed at this Defendant.

## COUNT XI
### (Edgar County and its SAO)

Defendant Eckerty makes no answer to the averments of County XI of Plaintiff's Complaint as Count XI is not directed at this Defendant.

45

WHEREFORE, Defendant ECKERTY denies that Plaintiff is entitled to any judgment whatsoever against him and prays this Honorable Court will enter judgment in his favor and allow for the costs of defending this lawsuit.

S/JAMES G. SOTOS
James G. Sotos, Bar Number 06191975
Attorney for Defendant Jack Eckerty
HERVAS, SOTOS, CONDON & BERSANI, P.C.
333 Pierce Road, Suite 195
Itasca, IL 60143-3156
Phone:  630-773-4774
Fax:  630-773-4851
jsotos@hscblaw.com

**FIRST AFFIRMATIVE DEFENSE**

_____NOW COMES Defendant JACK ECKERTY, by and through his attorney, JAMES G. SOTOS of HERVAS, SOTOS, CONDON & BERSANI, P.C., and, for his first affirmative defense to Plaintiff's complaint, states as follows:

Defendant ECKERTY did not violate clearly established constitutional rights of which a reasonable person would have known, thus entitling him to qualified immunity.

WHEREFORE, Defendant ECKERTY denies that the Plaintiff is entitled to any judgment whatsoever against him, and prays this Honorable Court will enter judgment in his favor and allow for the costs of defending this lawsuit.

S/JAMES G. SOTOS
James G. Sotos, Bar Number 06191975
Attorney for Defendant Jack Eckerty
HERVAS, SOTOS, CONDON & BERSANI, P.C.
333 Pierce Road, Suite 195
Itasca, IL 60143-3156
Phone:  630-773-4774
Fax:  630-773-4851
jsotos@hscblaw.com

## SECOND AFFIRMATIVE DEFENSE

NOW COMES Defendant JACK ECKERTY, by and through his attorney, JAMES G.

SOTOS of HERVAS, SOTOS, CONDON & BERSANI, P.C., and, for his second affirmative

defense to Plaintiff's complaint, states as follows:

With respect to Plaintiff's State Law Claims, Defendant Eckerty is immune from liability

for the conduct alleged in Plaintiff's Complaint based on the various provisions of the Illinois

Tort Immunity Act, including but not limited to, §§ 2-201 and 2-202.

WHEREFORE, Defendant ECKERTY denies that the Plaintiff is entitled to any

judgment whatsoever against him, and prays this Honorable Court will enter judgment in his

favor and allow for the costs of defending this lawsuit.

S/JAMES G. SOTOS
James G. Sotos, Bar Number 06191975
Attorney for Defendant Jack Eckerty
HERVAS, SOTOS, CONDON & BERSANI, P.C.
333 Pierce Road, Suite 195
Itasca, IL 60143-3156
Phone: 630-773-4774
Fax: 630-773-4851
jsotos@hscblaw.com

## THIRD AFFIRMATIVE DEFENSE

NOW COMES Defendant JACK ECKERTY, by and through his attorney, JAMES G.

SOTOS of HERVAS, SOTOS, CONDON & BERSANI, P.C., and, for his third affirmative

defense to Plaintiff's complaint, states as follows:

Plaintiff's claims against Defendant are barred in whole or in part by the applicable

statute of limitations.

WHEREFORE, Defendant ECKERTY denies that the Plaintiff is entitled to any judgment whatsoever against him, and prays this Honorable Court will enter judgment in his favor and allow for the costs of defending this lawsuit.

S/JAMES G. SOTOS
James G. Sotos, Bar Number 06191975
Attorney for Defendant Jack Eckerty
HERVAS, SOTOS, CONDON & BERSANI, P.C.
333 Pierce Road, Suite 195
Itasca, IL 60143-3156
Phone:  630-773-4774
Fax:  630-773-4851
jsotos@hscblaw.com

**FOURTH AFFIRMATIVE DEFENSE**

_____NOW COMES Defendant JACK ECKERTY, by and through his attorney, JAMES G. SOTOS of HERVAS, SOTOS, CONDON & BERSANI, P.C., and, for his fourth affirmative defense to Plaintiff's complaint, states as follows:

Count VI of Plaintiff's Complaint alleging a claim for malicious prosecution against Defendant Eckerty is barred because probable cause existed for Plaintiff's arrest.

WHEREFORE, Defendant ECKERTY denies that the Plaintiff is entitled to any judgment whatsoever against him, and prays this Honorable Court will enter judgment in his favor and allow for the costs of defending this lawsuit.

S/JAMES G. SOTOS
James G. Sotos, Bar Number 06191975
Attorney for Defendant Jack Eckerty
HERVAS, SOTOS, CONDON & BERSANI, P.C.
333 Pierce Road, Suite 195
Itasca, IL 60143-3156
Phone:  630-773-4774
Fax:  630-773-4851
jsotos@hscblaw.com

## DEFENDANT JACK ECKERTY'S JURY DEMAND

Defendant, Jack Eckerty, hereby demands a trial by jury pursuant to Federal Rule of Civil

Procedure 38(b) on all issues so triable.

S/JAMES G. SOTOS
James G. Sotos, Bar Number 06191975
Attorney for Defendant Jack Eckerty
HERVAS, SOTOS, CONDON & BERSANI, P.C.
333 Pierce Road, Suite 195
Itasca, IL 60143-3156
Phone:  630-773-4774
Fax:  630-773-4851
jsotos@hscblaw.com

**IN THE UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF ILLINOIS**
**URBANA DIVISION**

| | | |
|---|---|---|
| GORDON RANDY STEIDL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 05 CV 2127 |
| | ) | |
| CITY OF PARIS, Present and Former Paris Police | ) | Judge Harold A. Baker |
| Officials Chief Gene Ray and Detective James | ) | Magistrate Judge David G. Bernthal |
| Parrish; former Illinois State Trooper Jack Eckerty; | ) | |
| former Edgar County State's Attorney Michael | ) | |
| McFatridge; EDGAR COUNTY; and Illinois State | ) | |
| Police Officials Steven M. Fermon, Diane Carper, | ) | |
| Charles E. Brueggemann, Andre Parker, and | ) | |
| Kenneth Kaupus, | ) | |
| | ) | |
| Defendants. | ) | |

## CERTIFICATE OF SERVICE

I hereby certify that on August 29, 2005, I filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Michael Bruce Metnick
Metnick, Cherry, Frazier, and Sabin, L.L.P.
Suite 200 Myers Building
One West Old State Capitol Plaza
P.O. Box 12140
Springfield, IL 62791-2140
metnick@springfieldlawfirm.com

Alan J. Brinkmeier
Merlo, Kanofsky, Brinkmeier & Gregg
208 South LaSalle Street, Suite 950
Chicago, IL 60604
ajb@merlolaw.com

Thomas G. DiCianni
Ancel, Glink, Diamond, Bush, DiCianni & Rolek, P.C.
140 S. Dearborn St., Suite 600
Chicago, IL 60603
tdicianni@ancelglink.com

Jan Susler
People's Law Office
1180 N. Milwaukee Ave.
Chicago, IL 60622
jsusler@aol.com

Karen L. McNaught
Illinois Attorney General
500 S. Second Street
Springfield, IL 62706
kmcnaught@atg.state.il.us

Iain D. Johnston
Holland & Knight, LLP
131 South Dearborn Street, 30th Floor
Chicago, IL 60603
iain.johnston@hklaw.com

and I hereby certify that I have mailed by United States Postal Service the document to the following non CM/ECF system participant:

G. Flint Taylor
People's Law Office
1180 N. Milwaukee Ave.
Chicago, IL  60622

Mark F. Wolfe
Michael P. Latz
Bollinger, Ruberry & Garvey
500 West Randolph Street, Suite 2300
Chicago, IL 60661-2511

Terry A. Ekl
Patrick L. Provenzale
Vincent C. Mancini
Connolly, Ekl & Williams, P.C.
115 West 55th Street, Suite 400
Clarendon Hills, IL 60514

S/JAMES G. SOTOS
James G. Sotos, Bar Number 06191975
Attorney for Defendant Jack Eckerty
HERVAS, SOTOS, CONDON & BERSANI, P.C.
333 Pierce Road, Suite 195
Itasca, IL 60143-3156
Phone:  630-773-4774
Fax:  630-773-4851
jsotos@hscblaw.com