**E-FILED**
Friday, 14 April, 2006 02:08:20 PM
Clerk, U.S. District Court, ILCD

## IN THE UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
## URBANA DIVISION

| | |
|---|---|
| GORDON RANDY STEIDL,<br><br>        Plaintiff,<br><br>vs.<br><br>CITY OF PARIS, former Edgar County<br>State's Attorney Michael McFatridge;<br>Edgar County, et al<br>        Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)   Case No. 2:05-CV-2127<br>)   Honorable Harold A. Baker |

## DEFENDANT EDGAR COUNTY'S
## ANSWER and AFFIRMATIVE DEFENSES

## I. INTRODUCTION

1.    This is a civil rights action brought pursuant to 42 U.S.C. § 1983 at seq.; the Judicial Code, 28 U.S.C. §§ 1331 and 1343(a); the Construction of the United States; and supplemental jurisdiction, as codified in 28 U.S.C. §1367(A).

**ANSWER:**    Defendant Edgar County admits that Plaintiff has brought this action pursuant to the manner stated but denies that Plaintiff is entitled to any relief.

2.    This court has jurisdiction of the action pursuant to 28 U.S.C. § 1331. Venue is proper under 28 U.S.C. § 139(b). The parties reside, or, at the time the events took place, formerly resided in this judicial district, and the events giving rise to the claims asserted herein occurred here as well.

**ANSWER:**    Defendant Edgar County admits that Plaintiff seeks to invoke the jurisdiction of the Court in the manner stated, that venue is proper, and that the parties reside, or at the time the events allegedly took place, formerly resided in this judicial district. Defendant denies that many of the events took place as alleged by Plaintiff.

## II. PARTIES

3.    Plaintiff Gordon Randy Steidl is a fifty-three year old man, and a resident of the United States.

**ANSWER:**    Defendant Edgar County Admits.

4.    Defendant Gene Ray was a duly appointed and sworn Chief of the Paris Police Department. He was a final policymaker for the City of Paris in police matters, including police investigations, was personally in charge of the Rhodes homicide investigation, and is sued in his individual capacity.

**ANSWER:**    Paragraph #4 is not directed towards this Defendant, and Defendant Edgar County has insufficient information, therefore Defendant Edgar County denies the allegation.

5.    Defendant James Parrish was a duly appointed and sworn Paris police detective who was the lead Paris Police investigator in the Rhodes homicide investigation and is sued in his individual capacity.

**ANSWER:**    Paragraph #5 is not directed towards this Defendant, and Defendant Edgar County has insufficient information, therefore Defendant Edgar County denies the allegation.

6.    Defendant Jack Eckerty was a duly appointed and sworn Illinois State Police trooper who was the lead state police investigator in the Rhodes homicide investigation, and is sued in his individual capacity.

**ANSWER:**    Paragraph #6 is not directed towards this Defendant, and Defendant Edgar County has insufficient information, therefore Defendant Edgar County denies the allegation.

7.    Defendant Michael McFatridge was the Edgar County State's Attorney, and is sued in his individual capacity.

**ANSWER:**    Defendant Edgar County admits that Michael McFatridge was the Edgar County States Attorney.

8.    Defendant City of Paris is an Illinois municipal corporation, such is responsible for the policies, practices and customs of the Paris Police Department, and its Chief of Police, and was the employer of Defendants Ray and Parrish. The City of Paris is responsible for the acts of Defendants Ray and Parrish while acting within the scope of their employment.

**ANSWER:**    Defendant Edgar County admits that the City of Paris is an Illinois municipal corporation  and employed Defendants Ray and Parrish.  Defendant lacks sufficient knowledge to admit or deny the remaining allegations; therefore, denies the same.

9.    Defendant Edgar County is a governmental entity within the State of Illinois, which consists in part of its Edgar County State's Attorney['s Office (hereinafter referred to as SAO). Edgar County and Edgar County State's Attorney's Office are necessary parties to this lawsuit.

**ANSWER:**    Defendant Edgar County admits that Edgar County is a governmental entity within the State of Illinois, which consists in part of its Edgar County's State's Attorney's Office.  Defendant neither admits nor denies the allegation that "Edgar County and the Edgar County State's Attorney's Office are necessary parties" as this constitutes a legal conclusion.

10.    Defendants Steven M. Fermon, Diane Carper, Charles E. Brueggemann, Andre parker and Ken Kaupus were duly appointed and sworn command level Illinois State Police Officials who supervised that agency's investigation of the Rhoads murders, and are sued in their individual capacities.

**ANSWER:**    Paragraph #10 is not directed towards this Defendant, and Defendant Edgar County has insufficient information, therefore Defendant Edgar County denies the allegation.

11.    At all times relevant to this action, each of the named Defendants acted within the scope of his employment, and under the color of the laws, regulations, and customs of the State of Illinois.  Each Defendant's action constituted "state action" as defined under federal law.

**ANSWER:**    Defendant Edgar County has insufficient information, therefore Defendant Edgar County neither admits nor denies the allegation.  Defendant denies the allegation that  "Each defendant's action constituted state action" as this constitutes a legal conclusion.

### III. FACTS

12.    In May of 1986, Plaintiff Randy Steidl went to the local F.B.I. office and informed a special agent that he had information that Defendant McFatridge was involved in illegal gambling and narcotics.

**ANSWER:**    Defendant Edgar County lacks sufficient knowledge to admit or deny this allegation but denies any knowledge that McFatridge was involved in illegal activity of any kind.

13.    In the early morning hours of July 6, 1986, Dyke and Karen Rhoads were stabbed to death in their home in Paris, Illinois, and their house set on fire.

**ANSWER:**    Admit.

14.    Paris is a small Eastern Illinois town, which in 1990 had a population of 8,943.  Paris is located in Edgar County, which had a 1990 population of 21,725.  According to the local newspaper, the Paris Beacon News, "no single event in the history of Paris – including a 1930s shootout between the police and booze running gangsters in front of the Hotel France – has so shocked and stirred this community as the Sunday

4

morning discovery of Dykes and Karen Rhoads stabbed to death in their bedroom and

their house set afire to hide the crime."

**ANSWER:**   Defendant Edgar County admits that Paris is a town located in Edgar County in eastern Illinois and that the estimated population of Paris in 1990 was approximately 9,000 and the estimated population of Edgar County in 1990 was approximately 20,000.  Defendant lacks sufficient knowledge to admit or deny the remaining allegations; therefore, denies the same.

15.    Defendants Ray, Parrish, Eckerty and McFatridge immediately opened an

investigation, for which they were jointly responsible and in which they jointly

participated, into these extremely high profile murders.

**ANSWER:**   Paragraph #15 is not directed towards this Defendant, and Defendant Edgar County has insufficient information, therefore Defendant Edgar County denies the allegation.

16.    Within days, Defendants Ray, Parrish, Eckerty and McFatridge were

provided with a credible lead to John Doe, a prominent Paris businessman who had been

Karen Rhoads' employer, and several of his employees.  This lead included a credible

motive in support of these individuals' involvement in the crime, as well as suspicious

post murder conduct by John Doe which included in presence at the scene of the crime

shortly after the investigators arrived, his suggestion of a motive for the crime, and his

offering of a $25,000 reward in the bars of Paris only hours later, an offer which quickly

spread by "word of mouth."

**ANSWER:**   Paragraph #16 is not directed towards this Defendant, and Defendant Edgar County has insufficient information, therefore Defendant Edgar County denies the allegation.

17.    Several years before, Defendant Parrish worked for John Doe, and

observed suspicious activities at one of Doe's businesses.

**ANSWER:**   Paragraph #17 is not directed towards this Defendant, and Defendant

Edgar County has insufficient information, therefore Defendant Edgar County denies the allegation.

18.    Despite recognizing the significance of the leads which established John Doe and several of his employees as suspects, Defendant Parrish, McFatridge, Ray and Eckerty did not further pursue them, but instead sought to frame the Plaintiff and Herbert Whitlock for this crime.

**ANSWER:**    Paragraph #18 is not directed towards this Defendant, and Defendant Edgar County has insufficient information, therefore Defendant Edgar County denies the allegation.

19.    On or about July 9, 1986, directly after John Doe offered Plaintiff the reward at a local bar, Defendants Eckerty and Parrish, at the direction and approval , and/ort with the knowledge of, Defendants Ray and McFatridge, took Plaintiff into custody and questioned him about the crimes.

**ANSWER:**    Paragraph #18 is not directed towards this Defendant, and Defendant Edgar County has insufficient information,  therefore Defendant Edgar County denies the allegation.

20.    Plaintiff provided a truthful alibi, as did Whitlock, who was also questioned, into Defendants Ray, Parish, Eckerty and McFatridge, These alibis were verified by these Defendants and their agents, but the public "arrests" began a local rumor mill which falsely branded Plaintiff and Whitlock as suspects in the public eye.

**ANSWER:**    Paragraph #20 is not directed towards this Defendant, and Defendant Edgar County has insufficient information,  therefore Defendant Edgar County denies the allegation.

21.    On September 19, 20 and 21, 1986, Defendants Parrish, Ray, Eckerty and McFatridge interviewed Darrell Herrington, who they knew had five drunken-driving

convictions and two convictions for passing bad checks, was considered the town drunk, and frequented the bars where the reward had been offered.

**ANSWER:**    Paragraph #21 is not directed towards this Defendant, and Defendant Edgar County has insufficient information,  therefore Defendant Edgar County denies the allegation.

22.    Herrington first told Defendant Ray, Parrish, Eckerty and McFatridge that he was present at the scene of the Rhoads murder, and that two men, Jim and Ed, committed the crimes.

**ANSWER:**    This paragraph is not directed at Defendant Edgar County, Defendant lacks sufficient knowledge; therefore, denies the same.  Defendant Edgar County states further that Herrington stated that Herbert Whitlock and Plaintiff committed the murders.

23.    Herrington also told these Defendants he had been drinking hard liquor nearly nonstop since noon on July 5, and that by the time the bar closed, he was stumbling drunk and lapsing into unconsciousness.

**ANSWER:**    To the extent that this paragraph is directed at Defendant Edgar County, Defendant lacks sufficient knowledge to admit or deny this paragraph; therefore, denies the same.

24.    After three days of interrogation, during which Defendants subjected Herrington to suggestion, coercion, manipulation, and plied him with liquor and promises, Herrington falsely identified Plaintiff and Whitlock as the person whom he had accompanied to the scene of the murders, and falsely asserted that he saw Plaintiff Steidl leaving the scene, bloody, with a knife in his hand.

**ANSWER:**    To the extent that this paragraph is directed at Defendant Edgar County, Defendant lacks sufficient knowledge to admit or deny this paragraph; therefore, denies the same.

25.    On the basis of this coerced, manipulated, manufactured, and suggested false statement, Defendants Ray, Parrish, Eckerty and McFatridge then obtained, without probable cause, a warrant to electronically overhear conversations of the Plaintiff and Whitlock, land utilize Herrington as a wired informant in the unsuccessful attempt to entrap Steidl and Whitlock to make false inculpatory statements.

**ANSWER:**    To the extent that this paragraph is directed at Defendant Edgar County, Defendant Edgar County admits that Defendant Eckerty petitioned the Court for an order authorizing the use of an electronic eavesdropping device for the purpose of overhearing and/or recording conversations between Darryl Herrington, a consenting party, Plaintiff, Herbert Whitlock, and unknown third-parties, and that based on a finding of cause, Judge Ralph S. Pearman authorized the use of said device.    Defendant Edgar County denies the remaining allegations in this paragraph.

26.    Defendants Ray, Parrish, Eckerty and McFatridge then subjected Herrington to a polygraph examination on September 29, 1986.    Concerning direct questions asked by the examiner about whether Herrington was truthful when he accused Steidl and Whitlock, the examiner found that Herrington engaged in "purposeful non-cooperation... (consistent with) not telling the truth" as to "one or more" of these questions.

**ANSWER:**    Paragraph #26 is not directed at Defendant Edgar County, Defendant lacks sufficient knowledge to admit or deny this paragraph; therefore, denies the same.

27.    Knowing that Herrington's coerced, manipulated, suggested and manufactured story was now exposed as completely false and incredible, and therefore bereft of probable cause, Defendants Ray, Parish, Eckerty and McFatridge failed to follow the examiner's recommendation that Herrington be subjected to another polygraph

examination, and decided at that time not to falsely charge Plaintiff and Whitlock with the murders.

**ANSWER:**    Paragraph #27 is not directed at Defendant Edgar County, Defendant lacks sufficient knowledge to admit or deny this paragraph; therefore, denies the same.

28.    Additionally, Defendants Parrish and Eckerty, with the knowledge and approval of Defendants Ray and McFatridge, reduced Herrington's coerced, manipulated, suggested and manufactured false and incredible story to official police reports, while suppressing from those reports the highly exculpatory evidence concerning "Jim and Ed," the lie detector test and its results and that Herrington's story was false, incredible, and the product of coercion, fabrication, manipulation, suggestion, promises, financial reward, and alcohol.

**ANSWER:**    Paragraph #28 is not directed at Defendant Edgar County, Defendant lacks sufficient knowledge to admit or deny this paragraph; therefore, denies the same.

29.    For the next several months, Defendants Parrish, Eckerty, Ray, and McFatridge continued to meet with Herrington and to use coercive, suggestive and manipulative tactics, promises, rewards, liquor and, on at least one occasion, hypnosis, in order to further manufacture and fabricate false evidence against Plaintiff and Whitlock.

**ANSWER:**    Paragraph #29 is not directed at Defendant Edgar County, Defendant lacks sufficient knowledge to admit or deny this paragraph; therefore, denies the same.

30.    Defendants Parrish and Eckerty, with the knowledge and approval of Defendants Ray and McFatridge, suppressed from their official report this continued coercion, manipulation, suggestion, fabrication, promises and rewards, as well as the content of the statement taken under hypnosis.

**ANSWER:**    Paragraph #30 is not directed at Defendant Edgar County, Defendant lacks

sufficient knowledge to admit or deny this paragraph; therefore, denies the same.

31.    On February 16, 1987, seven months after the yet unsolved murders, knowing that they had no credible evidence to charge Plaintiff and Whitlock, Defendants Parrish, Eckerty, Ray and McFatridge pursued another completely unstable individual, a known alcoholic and drug addict named Deborah Rienbolt, who was on felony probation and whom Parrish had previously pressured to be his informant.

**ANSWER:**    To the extent that this paragraph is directed at Defendant Edgar County, Defendant lacks sufficient knowledge to admit or deny this paragraph; therefore, denies the same.

32.    Defendant Parish accused Rienbolt of involvement in the murders, and, despite her denials, Defendants Parrish and Eckerty, under the supervision and with the participation and/or knowledge of Defendants Ray and McFatridge, interrogated Rienbolt about the crimes.

**ANSWER:**    Paragraph #32 is not directed at Defendant Edgar County, Defendant lacks sufficient knowledge to admit or deny this paragraph; therefore, denies the same.

33.    During the initial interrogation, Defendants Eckerty and Parrish, under the supervision and with the participation and/or knowledge of Defendants Ray and McFatridge, repeatedly coerced, manipulated and suggested to Rienbolt that she was present at the crime scene, and participated in the murders with Steidl and Whitlock, which were committed because Dyke Rhodes backed out of a drug deal.

**ANSWER:**    Paragraph #33 is not directed at Defendant Edgar County, Defendant lacks sufficient knowledge to admit or deny this paragraph; therefore, denies the same.

34.    During this interrogation, Rienbolt falsely stated, as a direct result of the Defendants' coercion, suggestion, and manipulation, that a knife which Rienbolt had

previously produced, and which in fact belonged to her husband and had no involvement in the murders, belonged to Whitlock, and that he had given it to her shortly after the crime, with blood on it.

**ANSWER:**    Paragraph #34 is not directed at Defendant Edgar County, Defendant lacks sufficient knowledge to admit or deny this paragraph; therefore, denies the same.

35.    Although Defendants knew that Rienbolt had gone to work and later consumed vast quantities of drugs and alcohol the night before the murders, they created, through coercion, suggestion, and manipulation, a false statement that Rienbolt saw Plaintiff, Whitlock and Herrington together the night before the murders; that Whitlock had made threats to harm Dyke and Karen Rhoads; that later than night, she saw Plaintiff's car near the scene of the crime and saw Whitlock come around the corner of the victims house; that the next morning Whitlock came by her house, she saw blood on his neck, and Whitlock said he would pay her to remain quiet; and that Whitlock subsequently made additional admissions to her.

**ANSWER:**    To the extent that this paragraph is directed at Defendant Edgar County, Defendant denies this paragraph.

36.    Despite their failure to coerce and manipulate Rienbolt into falsely stating that she witnesses Steidl and/or Whitlock commit the murders and arson, Defendants Parrish, Eckerty, Ray and McFatridge, on February 19, 1987, obtained arrest warrants for Plaintiff and Whitlock for the murders of Karen and Dyke Rhoads and for arson, and, on that basis, caused to be arrested and/or did arrest Plaintiff and Whitlock.

**ANSWER:**    To the extent that this paragraph is directed at Defendant Edgar County, Defendant admits that arrest warrants were obtained for Plaintiff and Whitlock for the murders of Dyke and Karen Rhoads, but denies the remaining allegations of this paragraph.

37.    These arrest warrants and the resultant arrests were based on the knowingly false statements of Herrington and Rienbolt which the defendants had coerced, fabricated, manipulated, and suggested, and were without probable cause. When questioned at the jail, both Plaintiff and Whitlock denied involvement in the crimes.

**ANSWER:**    To the extent that this paragraph is directed at Defendant Edgar County, Defendant denies this paragraph.

38.    Additionally, Defendants Parrish and Eckerty, with the knowledge and approval of Defendants Ray and McFatridge, reduced Rienbolt's coerced, manipulated, suggested and manufactured story to official police reports, while suppressing from those reports the highly exculpatory information that these statements were false and incredible, contrary to physical and other evidence, and based on fabrication, coercion, suggestion, threats, promises, alcohol and drugs.

**ANSWER:**    Paragraph #38 is not directed at Defendant Edgar County, Defendant denies this paragraph.

39.    On the basis of these coerced, manipulated, manufactured, and suggested false statements, Defendants Ray, Parrish, Eckerty and McFatridge also obtained, without probable cause, a warrant to electronically overhear conversations of the Plaintiff and Whitlock, and utilized Rienbolt as a wired informant in an unsuccessful attempt to entrap Steidl and Whitlock to make false inculpatory statements.

**ANSWER:**    Defendant Edgar County admits that Defendant Eckerty petitioned the Court for an order authorizing the use of an electronic eavesdropping device for the purpose of overhearing and/or recording conversations between Debra Rienbolt, a consenting party, Plaintiff, Herbert Whitlock, and unknown third-parties, and that based on a finding of reasonable cause, Judge Richard Scott authorized the use of said device. Defendant Edgar County denies the remaining

allegations in this paragraph.

40.    On the basis of these coerced, manipulated, manufactured, and suggested

false statements, Defendants Ray, Parrish, Eckerty and McFatridge also obtained, without

probable cause, a warrant to seize hair, saliva, and blood from the persons of the Plaintiff

and Whitlock; however, these searches did not lead to any inculpatory evidence against

them.

**ANSWER:**    Defendant Edgar County admits that a warrant was obtained from a judge,
who after finding probable cause, granted a warrant.  Defendant denies the
remaining allegations in this paragraph.

41.    As part of their concerted effort to manufacture further false inculpatory

evidence against Plaintiff, Defendants planted a completely unreliable jailhouse "snitch"

in a cell next to the Plaintiff, and, as a direct result of their promises of an extremely

lenient sentence and other rewards, manipulation, and suggestion, this jailhouse "snitch"

provided knowingly false and incredible inculpatory statements which he falsely

attributed to Plaintiff.

**ANSWER:**    To the extent that this paragraph is directed at Defendant Edgar County,
Defendant denies this paragraph.

42.    On the basis of Rienbolt and Herrington's false statements which had been

coerced, manipulated, manufactured, and suggested by Defendants Parrish, Eckerty, Ray

and McFatridge, Plaintiff and Whitlock were subsequently charged by information with

murder and arson; then, on March 10, 1987, Plaintiff and Whitlock were indicted for

these crimes by the Edgar Count Grand Jury after Defendant Parrish presented these

statements to the grand jury in false and perjured testimony.

**ANSWER:**    Paragraph #42 is not directed at Defendant Edgar County, Defendant lacks sufficient knowledge to admit or deny this paragraph; therefore, denies the same.

43.    Defendants Parrish, Ray and Eckerty specifically suppressed from the Grand Jury all the exculpatory evidence which demonstrated that these statements were false, coerced, manipulated, manufactured and suggested; that the Plaintiff and Whitlock were innocent, and that the Defendants had identified other likely suspects unrelated to Plaintiff and Whitlock.

**ANSWER:**    To the extent that this paragraph is directed at Defendant Edgar County, Defendant lacks sufficient knowledge to admit or deny this paragraph; therefore, denies the same.

44.    Defendant Parrish, Eckerty, McFatridge, and Ray continued to use coercion, manipulation, and suggestion on Deborah Rienbolt, using, *inter alia*, threats and physical force, threats of prosecution, promises of leniency, money, and drug treatment, until Rienbolt, who was under the influence of alcohol and drugs, relented under their pressure and made further fabrications concerning the murder to with:

a.    On March 29, 1987, Defendant Parrish, under the supervision and with the participation and/or knowledge of Defendants McFatridge, Eckerty and Ray, interrogated Rienbolt and compelled her to falsely state that the night of the murders, Whitlock made statements to her that he, Plaintiff, and Herrington were going to the Rhoads house to deal with Dyke concerning drugs, that she gave the knife to Whitlock, that she was present at the scene of the crime, heard screaming, saw the bodies, and later got the knife back from Whitlock with blood on it;

b.    In early April 1987, Defendants Parrish and Eckerty, under the supervision and with the participation and/or knowledge of Defendants McFatridge and

Ray, again interrogated Rienbolt on several occasions and compelled her to falsely state that she was present at the crime and held Karen Rienbolt while plaintiff and Whitlock stabbed her and Dyke Rhoads, and that Plaintiff and Whitlock later paid her money not to talk.

**ANSWER:**    To the extent that this paragraph is directed at Defendant Edgar County, Defendant lacks sufficient knowledge to admit or deny this paragraph; therefore, denies the same, and all subparagraphs contained therein.

45.    In March and April of 1987, Defendants Eckerty and Parrish, with the participation and/or knowledge and approval of Defendants McFatridge and Ray, similarly coerced, manipulated and suggested false statement from other witnesses, including Curtis Smith and Carol Robinson, which purportedly corroborated portions of Rienbolt's testimony, knowing such testimony to be false.

**ANSWER:**    Paragraph #45 is not directed at Defendant Edgar County, Defendant denies this paragraph.

46.    Additionally, Defendants Parrish and Eckerty, which the knowledge and approval of Defendants Ray and McFatridge, reduced these coerced, manipulated, suggested and manufactured false stories and statements of Rienbolt, Smith, and Robinson to official police reports, while suppressing from those reports, the highly exculpatory information that these statements were false and incredible, contrary to physical and other evidence, and based on fabrication, coercion, suggestion, threats and promises.

**ANSWER:**    Paragraph #46 is not directed at Defendant Edgar County, Defendant lacks sufficient knowledge to admit or deny this paragraph; therefore, denies the same.

47.    Defendant McFatridge made numerous false pre-trial public statements to

the media concerning the Plaintiff, Whitlock, and the evidence against them, which statements were widely reported in the past.

**ANSWER:**    This paragraph is not directed towards Defendant Edgar County, Defendant Edgar County lacks sufficient knowledge to admit or deny this paragraph; and therefore, denies the same.

48.    In order to insure that Rienbolt would continue to tell her false story at Whitlock and Plaintiff's trial, the Defendants first forced her into a drug treatment center, then placed her under house arrest and coerced and enticed her into pleading guilty to the charge of concealing a homicidal death, in exchange for a lenient sentence, relocation expenses, and other rewards. As part of this coercive agreement, the Defendant obtained Rienbolt's signature on a six page statement of "facts" which recited her prior coerced, suggested, fabricated, manipulated, false and incredible statements about the crime. This "agreement" further provided that she could be charged with, and tried for, additional crimes if she did not testify consistently with her statement, and the Defendants made it clear to her that these additional crimes included murder, with a sentence of death.

**ANSWER:**    To the extent that this paragraph is directed at Defendant Edgar County, Defendant , Defendant Edgar County lacks sufficient knowledge to admit or deny this paragraph; therefore, denies the same.

49.    Whitlock was tried in May of 1987 and convicted on the basis of the evidence which was manufactured, coerced and suggested by Defendant Parrish, Eckerty, Ray and McFatridge. This evidence and the guilty verdict was widely reported in the media, and together with McFatridge's false public statements, prejudiced the judge and jury against Plaintiff.

**ANSWER:**    Defendant Edgar County admits that Whitlock was tried and convicted of the murders of Karen Rhoads in May of 1987. Defendant denies the remaining

allegations in this paragraph.

50.    Subsequent to Whitlock's conviction, in June of 1987, Plaintiff was tried and convicted of murder and arson, and on June 16, 1987, sentenced to death on the basis of the false evidence fabricated, coerced, suggested, and manipulated by Defendants Parrish, Eckerty, Ray and McFatridge.

**ANSWER:**    Defendant Edgar County admits that Plaintiff was tried and convicted of the murders of Dyke and Karen Rhoads in June of 1987. Defendant denies the remaining allegations in this paragraph.

51.    The Defendants suppressed from the Plaintiff and his lawyers, the Judge who presided over this case, and the jury that convicted him of all the highly exculpatory evidence set forth above, as well as evidence of other potential suspects, and promises of leniency and payments that the Defendant made to Deborah Rienbolt.

**ANSWER:**    To the extent that this paragraph is directed at Defendant Edgar County, Defendant denies this paragraph.

52.    Despite their exhaustive attempts to do so, the Defendants neither developed nor presented at trial any physical evidence - - such as hair samples, fingerprints, bloodstains, footwear patterns or other scientific evidence - - which linked Plaintiff or Whitlock to the crime scene.

**ANSWER:**    To the extent that this paragraph is directed at Defendant Edgar County, Defendant lacks sufficient knowledge to admit or deny this paragraph; therefore, denies the same.

53.    Directly after his conviction and sentencing, Plaintiff filed a notice of appeal, and a post conviction petition, challenging his conviction. The Attorney General's Office represented the State in these post trial proceedings.

**ANSWER:**   Defendant Edgar County admits that Plaintiff filed a notice of appeal and post-conviction petition, but lacks sufficient knowledge to admit or deny the remaining allegations of this paragraph; therefore, denies the same.

54.    After the trial, and during the post-trial proceedings, Defendants Parrish, Eckerty, Ray, and McFatridge, continued to suppress the fact that they had coerced, suggested, manipulated and manufactured the false and incredible evidence upon which Plaintiff and Whitlock were wrongfully convicted for crimes they did not commit, and that there were, and continued to be, more likely suspects.

**ANSWER:**   Paragraph #54 is not directed at Defendant Edgar County, Defendant lacks sufficient knowledge to admit or deny this paragraph; therefore, denies the same.

55.    Shortly after Plaintiff's conviction and sentencing, in August of 1987, Darrell Herrington and his wife told Defendants Parrish, Ray and other Paris police officers that Herrington had lied in his testimony at trial; that he saw John Doe at the bottom of the stairs at the crime scene just after the murders and before he saw Plaintiff and Whitlock; that Plaintiff and Whitlock had walked in after the crime, rather than having committed it; that John Doe said "you didn't see me," and later offered him $25,000 in cash, $25,000 in property, and a job with the promise he would not have to work, to keep his mouth shut; and that John Doe was shipping narcotics in bags of dog food produced by one of his companies.

**ANSWER:**   Defendant Edgar County lacks sufficient knowledge to admit or deny the allegations of this paragraph; therefore, denies the same.

56.    Defendants Ray and Parish recorded these highly exculpatory statements in notes and a police report which they suppressed, with the knowledge and/or at the direction and with the approval, of Defendant McFatridge, from the Plaintiff and

Whitlock, their lawyers, and the Courts who were considering his appeal and post-conviction proceedings. These notes and reports remained suppressed until 1998 when Plaintiff's investigator discovered them in a police storage garage.

**ANSWER:** To the extent that this paragraph is directed at Defendant Edgar County, Defendant lacks sufficient knowledge to admit or deny this paragraph; therefore, denies the same.

57.    In November of 1988, Herrington gave a statement to Plaintiff's lawyers in which he stated that his trial testimony had been suggested, manufactured, coerced and procured with alcohol and other promises by Defendants Parish, Ray, Eckerty and McFatridge, that it was false and incomplete in important respects, that he did not see Plaintiff with a knife, and that he "wouldn't be surprised" if Plaintiff was not involved in the murders.

**ANSWER:** Defendant Edgar County lacks sufficient knowledge to admit or deny the allegations of this paragraph; therefore, denies the same.

58.    The Defendants became aware of Herrington's recantation shortly thereafter, and in response, Defendant Parrish and McFatridge further coerced Harrington, intervened with the Secretary of State to get Herrington's drivers' license restored, despite five DUI convictions, and waived payment of fines related to the convictions, in order to obtain his false repudiation of his recantation.

**ANSWER:** To the extent that this paragraph is directed at Defendant Edgar County, Defendant denies the same.

59.    During 1988 and 1989, McFatridge and Parrish stayed in contact with Rienbolt, who had been sentenced to prison for concealment of a homicidal death, making further promises and accommodations in order to keep her from recanting her

testimony and exposing how they had obtained false testimony from her though coercion, manipulation, promises, and suggestion.

**ANSWER:**    Defendant Edgar County lacks sufficient knowledge to admit or deny the allegations of this paragraph; therefore, denies the same.

60.    In June of 1988, McFatridge, together with Rienbolt, authorized a false letter to the editor, signed by Rienbolt, and obtained its publication in the local Paris newspaper in which she painted herself to be a courageous witness who had come forward against her own interest to give truthful eyewitness testimony which resulted in the conviction of Plaintiff and Whitlock. This letter was designed to further prejudice Plaintiff's and Whitlock's appeal and post trial proceedings, create public sympathy for Rienbolt, and further to Defendants' suppression of the truth about their frame up of the Plaintiff and Whitlock.

**ANSWER:**    To the extent that this paragraph is directed at Defendant Edgar County, Defendant lacks sufficient knowledge to admit or deny this paragraph; therefore, denies the same.

61.    Later in 1988, Rienbolt, while in prison, and acting as an informant for the Federal Marshall who was looking for a federal fugitive named James "Jim" Slifer, informed him that Slifer had ordered and was present for the Rhoads murders.

**ANSWER:**    Defendant Edgar County lacks sufficient knowledge to admit or deny the allegations of this paragraph; therefore, denies the same.

62.    Rienbolt became the subject of a Federal investigation for allegedly making false statements to federal authorities, and in January of 1989, McFatridge intervened with the U.S. attorney on her behalf.

**ANSWER:**    Defendant Edgar County lacks sufficient knowledge to admit or deny the

allegations of this paragraph; therefore, denies the same.

63.    In January of 1989, Rienbolt told Steidl's appellate lawyer that Plaintiff" did not take part in the killings of Dyke and Karen Rhoads and was not present when the murders took place," that James Slifer "was personally present in the Rhoads bedroom at the time of the murders," that Cheryl Costa "had some involvement with Slifer and the murders," and that Darrell Herrington was not present at the scene of the murders. Additionally, she signed an affidavit which stated that she knew "Randy Steidl did not stab either Dyke or Karen Rhoads but the police and the prosecutor ignored my statements."

**ANSWER:**    Defendant Edgar County lacks sufficient knowledge to admit or deny the allegations of this paragraph; therefore, denies the same.

64.    Later in January of 1989, Defendants McFatridge and Parrish, upon learning of her recantations which implicated them and their fellow Defendants, used further coercion, threats and promises to obtain Rienbolt's false repudiation of these statements; in April of 1989 Defendant McFatridge attempted to get the Federal Marshal to sign a false and incomplete affidavit which stated that "at no time did Deborah I. Rienbolt indicate that James Slifer or anyone else was also present at the murder scene of Dyke and Karen Rhoads," whole omitting that Rienbolt had said that Slifer had ordered the murders.

**ANSWER:**    Defendant Edgar County lacks sufficient knowledge to admit or deny the allegations of this paragraph; therefore, denies the same.

65.    In February of 1989, Plaintiff filed a post conviction petition which raised, *inter alia*, the false testimony of Harrington and Rienbolt, and their recantations.

**ANSWER:**    Defendant Edgar County admits that Plaintiff filed a post-conviction petition, but lacks sufficient knowledge to admit or deny the remaining allegations; therefore, denies the same.

66.    In response to this filing, Defendant McFatridge, continuing his false publicity campaign, again made false and prejudicial public statements in response to Plaintiff's evidence, discrediting the recantations, and again falsely claiming that "one fact will never change - - - that Herbert R. Whitlock and Gordon R. Steidl are responsible for the deaths of Dyke and Karen Rhoads."

**ANSWER:**    This paragraph is not directed at Defendant Edgar County, and therefore Defendant makes no answer to this paragraph.

67.    On the basis of Herrington and Rienbolt's original false, manufactured and coerced testimony and their reputations of their recantations, all of which were coerced, suggested, fabricated and manipulated by Defendants Parrish, Ray, McFatridge and Eckerty; the Defendants' continued suppression of highly exculpatory evidence which demonstrated that this testimony was false, coerced, fabricated, suggested and manipulated, that Plaintiff and Whitlock were innocent and the crimes, and that other persons were more likely suspects; Parish and Eckerty's false and perjurious testimony at the hearing; and the continued highly prejudicial atmosphere engendered by the false evidence and Defendant McFatridge's public campaign, the trial Judge denied Plaintiff's post conviction petition on Mach 20, 1990.

**ANSWER:**    To the extent that this paragraph is directed at Defendant Edgar County, Defendant denies this paragraph.

68.    In late 1990 or early 1991, Defendant McFatridge stepped down as State's Attorney of Edgar County.

**ANSWER:**    Defendant Edgar County does not recall the specific date McFatridge resigned, but upon information and believe that it on or about was December 31, 1991.

69.    On January 24, 1991, the Illinois Supreme Court, relying on the same coerced, suggested, fabricated an manipulated evidence, and unaware f the highly exculpatory evidence which had been suppressed, affirmed the Plaintiff's conviction and death sentence and the denial of his post conviction petition.

**ANSWER:**    Defendant Edgar County admits that on January 24, 1991, the Illinois Supreme Court affirmed Plaintiff's conviction and sentence and denial of his post-conviction petition, but denies the remaining allegations in this paragraph.

70.    In 1992, Plaintiff filed a post conviction petition, which was amended in 1995, and this petition was denied without an evidentiary hearing on October 25, 1995. This denial was a direct result of all the false testimony, statement and repudiations of recantations which were coerced, suggested, fabricated, manipulated, and brought and paid for by Defendants Parrish, Ray, McFatridge and Eckerty; by the Defendant's continued suppression of highly exculpatory evidence which demonstrated that this testimony was false, coerced, fabricated, suggested and manipulated, that Plaintiff and Whitlock were innocent of the crimes, and that there were other suspects who were more likely involved in the crimes; and the continued highly prejudicial atmosphere engendered by this false evidence and Defendant McFatridge's publicity campaign.

**ANSWER:**    Defendant Edgar County admits that Plaintiff filed a post-conviction petition in 1992, which was amended in 1995, and that said petition was dismissed without an evidentiary hearing on October 25, 1995. Defendant denies the remaining allegations of this paragraph.

71.    In February of 1996, Rienbolt gave a sworn court reported and videotaped

statement to Plaintiff's lawyers in which she swore that her prior statements and testimony were false. She further swore she had not been present at the scene of the murders, that the knife she provided had not been the murder weapon, and that she had no knowledge of Plaintiff having been involved in the crime. She also averred that Defendants Parrish, Eckerty, Ray and McFatridge coerced, manipulated and suggested her statements and trial testimony which falsely inculpated Plaintiff and Whitlock.

**ANSWER:** This paragraph is not directed towards Edgar County and Defendant lacks sufficient knowledge to admit or deny the remaining allegations of this paragraph; therefore, denies the same.

72. Less than a week after her 1996 recantation, Rienbolt, at the behest of Defendants Parrish, McFatridge and Eckerty, retracted her recantation of the previous week.

**ANSWER:** This paragraph is not directed at Defendant Edgar County and therefore, Defendant makes no answer to this paragraph.

73. The Illinois Supreme Court reversed the dismissal of Plaintiff's amended post conviction petition on September 18, 1997, holding that Plaintiff was entitled to an evidentiary hearing, *inter alia*, on the basis of newly discovered evidence.

**ANSWER:** Defendant Edgar County admits that the Illinois Supreme Court reversed the dismissal of Plaintiff's amended post-conviction petition on September 18, 1997, and remanded the matter for an evidentiary hearing, but denies all remaining allegations.

74. In 1998, the trial court conducted a post conviction evidentiary hearing at which the false evidence which was coerced, fabricated, manipulated and suggested by the Defendants was again introduced in support of denial of relief. Defendant McFatridge gave false and perjured testimony at this hearing, in which he denied any

misconduct by himself or any other of the Defendants, and Defendant McFatridge, Parrish, Ray and Eckerty continued to withhold and suppress from this hearing all of the exculpatory evidence of which they were aware.

**ANSWER:**    Defendant Edgar County admits that a post-conviction hearing took place in 1998.  To the extent that the remaining allegations of this paragraph are directed at Defendant Edgar County, Defendant denies these allegations.

75.    On December 11, 1998, the trial court again denied Plaintiff post conviction relief on his conviction.  This denial was based on the false, manufactured, coerced, and suggested evidence detailed above, McFatridge's false and perjured testimony, and the continued suppression of exculpatory evidence.  The court did grant Plaintiff a new sentencing hearing.

**ANSWER:**    Defendant Edgar County admits that on December 11, 1998, the court denied Plaintiff's request for a new trial, but did grant him a new sentencing hearing. Defendant denies the remaining allegations of this paragraph.

76.    The state declined to pursue the death penalty, and on February 19, 1999, Plaintiff was resentenced to natural life imprisonment.  The Illinois Appellate Court denied leave to appeal on April 4, 2001.

**ANSWER:**    To the extent the allegations reflect the official court docket records, Defendant admits this paragraph.

77.    In mid-April of 2000, Illinois State Police (ISP) Lieutenant Michael Callahan, who was District 10 Investigations Commander, was assigned to review the Rhoads murders in response to a letter from Plaintiff's attorney documenting newly discovered evidence.

**ANSWER:**    Defendant Edgar County lacks sufficient knowledge to admit or deny this paragraph; therefore, denies the same.

78.    In a memorandum to ISP Captain John Strohl, dated May 17, 2000, which was circulated up the ISP chain of command to Defendants Diane Carper and André Parker, and later to Defendant Steven Fermon, Callahan document a wealth of evidence gathered during his review which supported his conclusion that Plaintiff and Whitlock "had not been proven guilty beyond a reasonable doubt," and that John Doe "was at one time and should still be the focus of the investigation."

**ANSWER:**    This paragraph is not directed towards Edgar County, Defendant Edgar County lacks sufficient knowledge to admit or deny this paragraph; therefore, denies the same.

79.    Among the facts findings and conclusions included in this memorandum of May 17, 2000, were thirty-eight separate contradictions and material falsehoods found in Rienbolt and Herrington's testimony, including the following:

- Defendants Parrish and McFatridge had witness Carol  Robinson lie on the stand as to whether she saw Herington and Plaintiff together on July 5th,

- Herrington's time line did not fir with the crime;

- A polygraph examiner found purposeful non cooperation of Herrington, and the examiner's recommendation that Herrington by re-examined was ignored by the Defendant's;

- Rienbolt's testimony that she skipped work on the night of July 5th and was with Plaintiff and Whitlock was refuted by numerous witnesses;

- Rienbolt's testimony that  broken lamp was used in the homicides was refuted by the testimony of the fire examiners;

- Rein bolt later recanted her testimony that she was present at the murders and that Plaintiff was involved;

- Rienbolt lied about the knife;

- Rienbolt admitted that Parrish led her into her false testimony.

ANSWER:    The allegations of this paragraph are not directed to Defendant Edgar County and Defendant lacks sufficient knowledge to admit or deny this paragraph; therefore, denies the same.


80.    In this May 17, 2000 memorandum, Callahan further set forth evidence which supported the determination that John Doe and several of his employees were, and continued to be, suspects in the Rhoads murders, in other related homicides; and in organized crime and narcotics trafficking, as well as Defendant Parrish's connection to John Doe. Much of this highly exculpatory evidence was know to defendants Parrish, Eckerty, Ray and McFatridge, was suppressed from Plaintiff and Whitlock by them, and included.

*Karen Rhodes worked as  Paris businessman John Doe's secretary and he frequently visited her apartment;

*John Does was a suspect in two prior homicides including the murder of a former secretary;

*Karen Rhoads said that she had seen Doe and an employee load a large sum of cash and a machine gun in Doe's care and head for Chicago;

*Karen Rhoades had told Doe the Friday prior to the murders that she was quitting her job, he forbade her from doing so, and a big argument ensured;

* Two of Doe employees, who were know as his "right hand men," were implicated in the Rhoads murders;

* Doe was first on the scene after the crimes were discovered , and he offered policy investigators detailed scenarios as to how the murders might have occurred;

*Doe offered a $25,000 reward in the bars for information on the murders and Herrington later stated that Doe offered him $25,000 and a job to keep his mouth shut.

* Herrington also told Parrish and Ray that Doe was the at the scene of the murders at the time they occurred;

*Parrish worked for Doe prior to the murders, observed what appeared to be illicit drug activates, and suspected him of being involved in drug distribution,

*Doe was a suspect in the Rhoads murders, and later stated that he knew he was a suspect because he "had his sourced"

**ANSWER:**     The allegations of this paragraph are not directed to Defendant Edgar County and Defendant lacks sufficient knowledge to admit or deny this paragraph; therefore, denies the same.

81.     Lt. Callahan continued his investigation, and in July of 2000 and August of 2001, he wrote further memos to his superiors, which were also disseminated to Defendants Carper and Parker, and later to Defendant Fermon.   In these memos he further articulated a wealth of evidence exculpatory to Plaintiff and Whitlock which he had developed during his investigation of the murders, and John Doe's alleged involvement as a suspect in the murders, in narcotics trafficking, and other organized criminal activity.   Much of this evidence was know to Defendants Parrish, Eckerty, Ray and McFatridge, and was suppressed from Plaintiff and Whitlock. These memos included the following exculpatory evidence and investigative findings and conclusions;

- a number of John Doe's employees, including those named as suspects in the Rhoads murders, allegedly made drug runs for John Doe.

- John Doe was a target in a narcotics investigation;

- The FBI was looking at John Doe for narcotics, money laundering, corruption, tires to organized crime, and in connection with several unsolved homicides;

- A former Paris official said the Defendant McFatridge was "in the Mafia's Pocket" and that hi slaw school loans "were paid off by organized crime figures."

- Defendants Eckerty and Parrish both admitted that John Doe was one of the main suspects in the Rhoads murders before Herrington and Rienbolt's statements were obtained;

- Callahan concluded that the Rhoads investigation was "not only incomplete, but that important leads were not followed up on;

- Negative information or evidence leaning to the innocence of Plaintiff and Whitlock was not disclosed because, as Eckerty admitted to Callahan, "McFatridge did not want any negative reports."

- "besides the obvious weakness in the case and poor investigative efforts, there remains questions of corruption and payoffs orchestrating the conviction of Steidl and Whitlock;"

- The Assistant Attorney General litigating Plaintiff's case admitted that if they lost the pending appeal, they wouldn't try again because they would not be able to get a conviction in a section trial'

- Other Edward County Police Chiefs told Callahan that "they used the town drunk and a lying bitch to railroad those boy," and that "we all know [John Doe] was behind it but hell, he owns half the town."

- Herrington told the Rhoades family a hear after the trial that he was sorry, that what happened that night did not happen the way he testified in Court, and that when he dies, there is a letter in a safe deposit box which till tell them what really happened;

- Herrington now does all of John Doe's dry walling, and is an affluent businessman with a fleet of cars;

- One of the suspects in the Rhoads murders stated that he had pictures of Defendant McFatridge doing cocaine with another John Doe employee;

- An admitted drug trafficker told Callahan that the "State's Attorney and the investigators: were "paid off" in the Rhoads case, and that Plaintiff and Whitlock were innocent;

- Karen Rhoads told a witness that she had seen John Doe and his right hand man loading a large sum of money and a machine gun into John Doe's car and heat to Chicago; that she questioned why there was such a  large cash flow through John Doe's business when it was accounts only; that two weeks before she was murdered, she told her mother that she had seen something at work she wished she didn't see, and that she had to "get out of there;" and two other witnesses overheard a very upset Karen Rhoads tell someone the Friday before her murder that she had quit working for John Doe, that she told John

Doe that if he tried to stop her she would "open her mouth," and that John Doe said she could not quit;

- A gas station attendant informed that Parrish/Eckerty investigation that tall blonde man with a pony tail bought 21 gallons of gas in sever 3 gallon containers the night of the murders;

- After the 48 Hours show on the Rhoads murders was aired, a John Doe associate and suspect in the murders stated that John Doe "orchestrated the murder;"

- John Doe and his right hand man were offering the $25,000 reward for information concerning the Rhoads murders before it was know that they were murdered.

**ANSWER:**   The allegations of this paragraph are not directed to Defendant Edgar County and Defendant lacks sufficient knowledge to admit or deny this paragraph; therefore, denies the same.

82.    Lt. Callahan also documented that Eckerty, other law enforcement agents, and Eckerty's wife contacted Callahan to state that Eckerty was a good cop and that Callahan should no ruin his reputation. Eckerty also offered to sell Callahan a houseboat at his cost.

**ANSWER:**   The allegations of this paragraph are not directed to Defendant Edgar County and Defendant lacks sufficient knowledge to admit or deny this paragraph; therefore, denies the same.

83.    Additional evidence demonstrated that John Doe had contributed large sums of money to height ranking Republican office holders and Callahan made this fact known to Defendants Carper, and Parker.

**ANSWER:**    The allegations of this paragraph are not directed to Defendant Edgar County and Defendant lacks sufficient knowledge to admit or deny this paragraph; therefore, denies the same.

84.    Despite all the evidence and investigative findings tendered by Lt. Callahan, Defendants Fermon, Carper, Brueggeman, and Parker blocked a full investigation of the Rhoads case, because it was "too politically sensitive," limited the John Doe investigation to intelligence gathering, ordered Callahan to focus on assignments other than the Rhoads murders and john Doe, transferred Callahan from his investigative post, and, with Defendant Kapuas, launched an effort to discredit Callahan's evidence, findings and recommendations.

**ANSWER:**    The allegations of this paragraph are not directed to Defendant Edgar County and Defendant lacks sufficient knowledge to admit or deny this paragraph; therefore, denies the same.

85.    Because of this obstruction by Defendants Fermon, Carper, Brueggemann, Kaupus and Parker, the investigation into the Rhoads murders and John Doe and his associates' role therein, and the development of further evidence exculpatory to Plaintiff and Whitlock which would have resulted there from, was thwarted.

**ANSWER:**    This paragraph is not directed at Defendant Edgar County, Defendant makes no answer to this paragraph.

86.    Additionally, these same defendants, by their above described obstruction, suppressed from the Plaintiff and Whitlock; as well as from the courts which were considering their cases, this wealth of exculpatory evidence which, together with the evidence previously and continuously suppressed by Defendants Eckerty, Parrish, Ray and McFatridge, would have resulted in their exoneration and release.

32

**ANSWER:**    This paragraph is not directed at Defendant Edgar County, Defendant makes no answer to this paragraph.

87.    In late 2002, Plaintiff filed a petition for executive clemency with the Governor of the State of Illinois in which he asked for a pardon on the basis of innocence.

**ANSWER:**    Defendant Edgar County lacks sufficient knowledge to admit or deny this paragraph; therefore, denies the same.

88.    Defendant McFatridge launched a public campaign opposing the freeing of Plaintiff by pardon, clemency, or collateral relief. In so doing, he again made false public statements which prejudiced plaintiff and his legitimate claims of innocence, for a new trial, and for release, which he was seeking in post conviction, habeas, and clemency and pardon proceedings.

**ANSWER:**    This paragraph is not directed at Defendant Edgar County, Defendant makes no answer to this paragraph.

89.    In early January, 2003, a representative of the Governor called Callahan, informing him that the Governor was prepared to pardon Plaintiff and Whitlock if Callahan represented to him that, based on his investigation, they were innocent.

**ANSWER:**    Defendant Edgar County lacks sufficient knowledge to admit or deny this paragraph; therefore, denies the same.

90.    Callahan, who could no provide any information or opinions without first receiving approval from the defendants who were his superiors in the chain of command, immediately sought such approval.

**ANSWER:**    This paragraph is not directed at Defendant Edgar County, Defendant makes no answer to this paragraph.

91.    Callahan provided a detailed briefing at a lengthily meeting attended by

Defendants Fermon, Carper, Brueggeman, and others, were he presented all the evidence and findings set forth above, and articulated his opinion, supported by all this evidence, that Plaintiff and Whitlock had not only not been proven guilty beyond a reasonable doubt, but that they were innocent, and that the jury never heard the truth. Callahan also told these Defendant that there was not credible evidence against Plaintiff and Whitlock, and that the two so-called eye witnesses had been completely discredited, that he strongly suspected wrongdoing by McFatridge, Eckerty and Parrish, and that John Doe should continue to be the focus of the investigation.

**ANSWER:**    This paragraph is not directed at Defendant Edgar County, Defendant makes no answer to this paragraph.

92.    At the briefing, Defendants Fermon, Carper, and Brueggemann opposed Callahan's evidence and took the position that he should not be permitted to inform the Governor's representatives that Plaintiff and Whitlock were innocent; as a direct result, Callahan was ordered to offer no opinion and supply no exculpatory evidence to the Governor or his representative.

**ANSWER:**    This paragraph is not directed at Defendant Edgar County, Defendant lacks sufficient knowledge and therefore makes no answer to this paragraph.

93.    As a direct result of this obstruction and suppression by Defendants Fermon, Carper, and Brueggeman, as well as the previous and continuing suppression by Defendants Fermon, Carper, Brueggemann, Parker, Parrish, Eckerty, Ray and McFatridge, and McFatridge's campaign to defeat the granting of the innocence pardons, the Governor declined to make a determination on Plaintiff and Whitlock's request before leaving office, and their requests remain pending to this date.

**ANSWER:**    This paragraph is not directed at Defendant Edgar County, Defendant lacks sufficient knowledge and therefore makes no answer to this paragraph.

94.    On June 17, 2003, the Federal District Court granted Plaintiff's petition for write off habeas corpus, which had been filed on October 5, 2001, vacating Plaintiff's conviction and allowing the state 120 days to release or retry him, and finding that "acquittal was reasonably probable if the jury had heard all of the evidence."

**ANSWER:**    Admit.

95.    On March 25, 2004, Attorney General Lisa Madigan announced that she would not appeal this order, stating that after carefully reviewing the evidence, her office found that information favoring the defense was never disclosed, and that Plaintiff was thus entitled to a new trial.

**ANSWER:**    This paragraph is not directed at Defendant Edgar County, Defendant makes no answer to this paragraph.

96.  In a last ditch effort to influence the prosecutors to continue to hold Plaintiff in custody and retry him, Defendant McFatridge made additional false public statements, including one to the Paris Beacon News in which he attached Attorney General Lisa Madigan for her decision not to appeal the District court's decision, recited again the false evidence which he and his co-defendants had manufactured and coerced, falsely denied that he and his co-defendants suppressed exculpatory evidence, and falsely claimed that Plaintiff was guilty of the brutal murders.

**ANSWER:**    This paragraph is not directed at Defendant Edgar County, Defendant lacks sufficient knowledge and therefore makes no answer to this paragraph.

97.    In part as a result of McFatridge's public statements, Plaintiff was continued in custody until May 28, 2004, when the circuit court granted the motion of the Office of the State Appellate Prosecutors, appointed by the court to prosecute Plaintiff, to nolle prosse the charges against Plaintiff.

**ANSWER:**     Defendant Edgar County lacks sufficient knowledge to admit or deny this paragraph; therefore, denies the same.

98.     On May 28, 2004, Plaintiff was released from Danville Correctional Center, after serving seventeen years in prison, twelve of them on Death Row, for two murders the Defendants knew he did not commit.

**ANSWER:**     Defendant Edgar County admits that Plaintiff was released from Danville Correctional Center after having been incarcerated for seventeen years. Defendant denies the remaining allegations.

99.     Herb Whitlock continues to actively challenge his conviction, from behind bars, as he serves his sentence of life without possibility of parole.

**ANSWER:**     Defendant Edgar County lacks sufficient knowledge to admit or deny this paragraph; therefore, denies the same.

100.     As  a direct result of the egregious misconduct of the Defendants in obtaining and continuing Plaintiff's malicious prosecution, wrongful conviction and false imprisonment, Plaintiff has suffered, and continues to suffer, extreme physical and mental pain and suffering, and serious and continuing psychological damage.  He was forced to spend much of his adult life in cruel and inhumane conditions, falsely branded as a murder, estranged from his children, daily contemplating his own execution, and the subject of physical attack.

**ANSWER:**     Defendant Edgar County denies this paragraph.

101.     Defendants Parrish, Eckerty, Ray and McFatridge, later joined by Carper, Brueggerman, Fermon, Parker and Kaupus, acting jointly and with outer unsued persons, including Paris businessman John Doe, Deborah Rienbolt, Darrell Herrington, and other police and prosecutorial investigative, supervisory, and command personnel, together and under color of law, reached an understanding, engaged in a course of conduct, engaged in

a joint action, and otherwise conspired among and between themselves to deprive Plaintiff of said rights, including his rights to be free from unreasonable arrest and seizure, from wrongful confinement and imprisonment, and his rights to access to the Courts and to a fair and impartial trial, as protected by the First, Fourth, Fifth, Sixth, and Fourteenth Amendments to the United States Constitution.

**ANSWER:**    To the extent this paragraph is directed at Defendant Edgar County, Defendant denies this paragraph.

102.    In furtherance of this conspiracy or conspiracies, the Defendants, together with their co-conspirator, each committed one or more overt acts set forth above, including, but not limited to, the wrongful arrest, imprisonment, charging and prosecution and frame up of Plaintiff and Herb Whitlock; the fabrication, manipulation, alteration, suggestion, and coercion of false and totally unreliable exculpatory evidence against Plaintiff and Whitlock; the failure to expose and/or stop the malicious prosecution, false imprisonment, and wrongful conviction of Plaintiff and Whitlock; the repeated deception of prosecuting attorneys who represented the state in post trial proceedings, judges, juries, and the Governor, by *inter alia,* making knowing misstatements and the presentation of his knowingly coerced, fabricated, suggested, false and incomplete statement sand report; the suppression and destruction of favorable, exculpatory evidence; the failure to come forward with a truthful account of the events; the payment of money and other rewards to witnesses in order to obtain false testimony against Plaintiff and Whitlock; the obstruction of an investigation which was uncovering further exculpatory and exonerating evidence; the failure to investigate reliable leads that John Doe and his associates were suspects in the crime; the making of false public statement

sin order to influence prosecuting attorneys, judges, juries and the Governor and his staff in Plaintiff and Whitlock's cases, and the other acts set forth above.

**ANSWER:**    To the extent that this paragraph is directed at Defendant Edgar County, Defendant denies this paragraph.

103.    Said conspiracy or conspiracies, joint actions and overt acts continues to this date, have caused and continue to cause Plaintiff's constitutional rights to be violated and the injures, pain, suffering, fear, mental anguish, detention, imprisonment, humiliation, defamation of character and reputation, and loss of freedom and companionship, as set forth more fully above and below.

**ANSWER:**    Defendant Edgar County denies this paragraph.

## COUNT I
### (42 U.S.C. 1983 claim for False Imprisonment)

Defendant Edgar County makes no answer to the Averments of Count I of the Plaintiff's Complaint as Count I is not directed at Edgar County.

## COUNT II
### (42 U.S.C. §1983 Claim for Deprivation of
### Right to Fair Trial and for Wrongful Conviction)

Defendant Edgar County makes no answer to the Averments of Count II of the Plaintiff's Complaint as Count II is not directed at Edgar County.

## COUNT III
### (42 U.S.C. § Due Process Claim for Deprivation of Access to Courts)

Defendant Edgar County makes no answer to the Averments of Count III of the Plaintiff's Complaint as Count III is not directed at Edgar County.

## COUNT IV
### (42 U.S.C. §1983 *Monell* Policy claim against city of Paris)

Defendant Edgar County makes no answer to this Count IV of Plaintiff's Complaint as Count IV is not directed at Edgar County.

## COUNT V
### (State Law Claim for False Imprisonment)

Defendant Edgar County makes no answer to the Averments of Count V of the Plaintiff's Complaint as Count is not directed at Edgar County.

## COUNT VI
### (State Law Claim for Malicious Prosecution)

Defendant Edgar County makes no answer to the Averments of Count VI of the Plaintiff's Complaint as Count is not directed at Edgar County.

## COUNT VII
### (State Law Claim for Intentional Infliction of Emotional Distress)

Defendant Edgar County makes no answer to the Averments of Count VII of the Plaintiff's Complaint as Count is not directed at Edgar County.

## COUNT VIII
### (State Claim for Conspiracy)

Defendant Edgar County makes no answer to the Averments of Count VIII of the Plaintiff's Complaint as Count is not directed at Edgar County.

## COUNT IX
### (State Law Respondeat Superior Claim)

Defendant Edgar County makes no answer to this Count IX of Plaintiff's Complaint as Count IX is not directed at this Defendant.

## COUNT X
### (745 ILCS 10/9-102 and Common Law claims Against the City of Paris)

Defendant Edgar County makes no answer to this Count X of Plaintiff's Complaint as Count X is not directed at this Defendant.

## COUNT XI
### (Edgar County and its SAO)

137.    Plaintiff re-alleges paragraphs 1 through 136.

**ANSWER:**    Defendant Edgar County restates its answers to paragraphs 1-136 as if

fully stated herein.

138.    Defendant Edgar County and its State's Attorneys' Office was the employer of Defendant McFatridge, who was acting in the scope of his employment as an employee of Edgar County and its State's Attorneys' Office, said County is therefore responsible for any judgment entered against Defendant McFatridge and it therefore a necessary party hereto.

**ANSWER:**    Defendant denies.

WHEREFORE, Defendant Edgar County denies that Plaintiff is entitled to any judgment whatsoever against it, and prays this Honorable Court will enter judgment in its favor and allow for the costs of defending this lawsuit.

<strong>FIRST AFFIRMATIVE DEFENSE</strong>

NOW COMES Defendant Edgar County, by and through its attorneys, Bollinger Ruberry & Garvey, and for his first affirmative defense, states as follows:

Defendant Edgar County did not violate clearly established constitutional rights of which a reasonable person would have known, thus entitling it to qualified immunity.

WHEREFORE, Defendant Edgar County denies that Plaintiff is entitled to any judgment whatsoever against him, and prays this Honorable Court will enter judgment in his favor and allow for the costs of defending this lawsuit.

<strong>SECOND AFFIRMATIVE DEFENSE</strong>

NOW COMES Defendant Edgar County, by and through his attorneys, Bolliner Ruberry & Garvey and for his second affirmative defense, states as follows:

With respect to Plaintiff's State Law Claims, Defendant Edgar County is immune from liability for the conduct alleged in Plaintiff's Complaint based on the provisions of

the Illinois Tort Immunity Act.

WHEREFORE, Defendant Edgar County denies that Plaintiff is entitled to any judgment whatsoever against him, and prays this Honorable Court will enter judgment in his favor and allow for the costs of defending this lawsuit.

### THIRD AFFIRMATIVE DEFENSE

NOW COMES Defendant Edgar County, by and through his attorneys, Bollinger Ruberry & Garvey,  and for his third affirmative defense, states as follows:

Plaintiff's claims against Defendant Edgar County are barred in whole or in part by the applicable statute of limitations.

WHEREFORE, Defendant Edgar County denies that Plaintiff is entitled to any judgment whatsoever against him, and prays this Honorable Court will enter judgment in his favor and allow for the costs of defending this lawsuit.

### FOURTH AFFIRMATIVE DEFENSE

NOW COMES Defendant Edgar County, by and through his attorneys, BOLLINGER, RUBERRY & GARVEY, and for its fourth affirmative defense, states as follows:

Plaintiff's Complaint alleging a claim for malicious prosecution against Defendant Edgar County is barred because probable cause existed for Plaintiff's arrest.

WHEREFORE, Defendant Edgar County denies that Plaintiff is entitled to any judgment whatsoever against him, and prays this Honorable Court will enter judgment in his favor and allow for the costs of defending this lawsuit.

### FIFTH AFFIRMATIVE DEFENSE

NOW COMES Defendant Edgar County, by and through its attorneys, Bollinger

41

Ruberry & Garvey, and for its fifth affirmative defense, states as follows:

Plaintiff's Count XI claim against the County of Edgar is barred by law because a county cannot be held liable under *respondent superior* for the acts of an independently elected county officer. Illinois law is clear that a State's Attorney is a state official. An independently elected county officer is legally separate from a county itself. *See Moy v. County of Cook,* 203 Ill.Dec. 776, 640 N.E.2d at 929; *accord Franklin v. Zaruba,* 150 F.3d 682, 685 (7th Cir.1998); *Ryan v. County of DuPage*, 45 F.3d 1090, 10991 (7th Cir.1995).

WHEREFORE, Defendant Edgar County denies that Plaintiff is entitled to any judgment whatsoever against him, and prays this Honorable Court will enter judgment in his favor and allow for the costs of defending this lawsuit.

## SIXTH AFFIRMATIVE DEFENSE

NOW COMES Defendant Edgar County, by and through its attorneys, Bollinger Ruberry & Garvey, and for its sixth affirmative defense, states as follows:

Edgar County is immune from the imposition of punitive damages under both state and federal law. Moreover, Edgar County persists in its denial that Michael McFatridge was an employee of the county, but states that Edgar County cannot be required to indemnify any employee for punitive damages, nor may it pay a judgment for punitive damages.

WHEREFORE, Defendant Edgar County denies that Plaintiff is entitled to any judgment whatsoever against it, and prays this Honorable Court will enter judgment in his favor and allow for the costs of defending this lawsuit.

## **DEFENDANT EDGAR COUNTY'S JURY DEMAND**

Defendant, Edgar County, hereby demands a trial by jury pursuant to Federal Rules of Civil Procedure 38(b) on all issues so triable.

Respectfully submitted,

By: ___ s:/ Michael P. Latz _____
Attorneys for Defendant,
Edgar County

Michael P. Latz, Esq.
BOLLINGER, RUBERRY & GARVEY
500 West Madison Street, Suite 2300
Chicago, Illinois 60661-2511
Telephone: (312) 466-8000
Facsimile: (312) 466-8001

## **CERTIFICATE OF SERVICE**

Michael P. Latz, hereby certifies that on Friday, April 14, 2006, he caused Defendant, Edgar County's Answer and Affirmative Defenses in the above-captioned matter to be served on the parties of record listed below in the attached Service List, electronically by operation of the Court's electronic filing system, by filing the document electronically with the Clerk of this Court.

s:/Michael P. Latz

## SERVICE LIST

Re: Steidl v. City of Paris, et al.
Court Number: 05 CV 2127
Our File No.:  04401-074-GOST

G. Flint Taylor
Janis M. Susler
Peoples Law Office
1180 North Milwaukee
Chicago, Illinois 60622
(773) 235-0070
(773)235-6699 Fax
gftaylorjr@aol.com

Michael P. Latz
Bollinger, Ruberry & Garvey
500 W. Madison Street, Suite 2300
Chicago, Illinois 60606
(312) 466-8000
(312) 466-8001 Fax
Michael.latz@brg-law.net

Michael Metnick
Metnick, Cherry & Frazier
Suite 200, Myers Building
1 W. Old State Capitol Plaza
P.O. Box 12140
Springfield, IL 62791
(217) 753-4242
(217) 753-4642 Fax
Metnick@springfieldlawfirm.com
*Attorney for Plaintiff, Gordon Randy Steidl*

Terry A. Ekl
Patrick L. Provenzale
Vincent C. Mancini
Connolly, Ekl & Williams, P.C.
115 West 55th Street, Suite 400
Clarendon Hills, IL 60514
(630) 654-0045
(630) 654-0150 Fax
tekl@cewpc.com
pprovenzale@cewpc.com
vmancini@cewpc.com
Attorneys for Defendant, Michael McFatridge

1

## SERVICE LIST

Re: Steidl v. City of Paris, et al.
Court Number: 05 CV 2127
Our File No.: 04401-074-GOST

James Soto
Elizabeth A. Ekl
Sara M. Cliffe
550 East Devon Avenue, Suite 150
Itaska, Illinois 60143
(630) 735-3300
(630) 735-0980 Fax
jsoto@jsotoslaw.com
eekl@jsotoslaw.com
scliffe@jsotoslaw.com
Attorneys for City of Paris,
Chief Gene Ray, Detectives
James Parrish and Jack Eckerty

Karen L. McNaught
Illinois Attorney General
500 Second Street
Springfield, IL 62706
(217) 782-1841
(217) 524-5091 Fax
kmcnaught@atg.state.il.us

Ian D. Johnston
Holland & Knight, LLP
131 South Dearborn Street, 30th Floor
Chicago, Illinois 60603
(312) 578-6577
(312) 578-6666 Fax
Jain.johnson@hklaw.com
Attorneys for Steven M. Fermon, Diane Carper,
Charles E. Brueggeman, Andre Parker,
Kenneth Kaupus (Illinois State Police Officials)