IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | | |
|---|---|---|
| Gordon Randy Steidl, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 05 CV 2127 |
| | ) | Honorable Harold A. Baker |
| City of Paris, et al., | ) | Judge Presiding |
| | ) | |
| Defendants. | ) | |

### CURRENT ISP OFFICIALS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR PROTECTIVE ORDER

By way of their Rule 26(c) Motion for Protective Order, the Current ISP Officials are invoking the law enforcement investigatory privilege. Critically, the privilege is being invoked because Plaintiff, as a subject of an ongoing murder investigation, is prohibited from having access to the documents sought, which relate to the very murders for which he is being investigated. In support of this motion and the invocation of the privilege, the Current ISP Officials state the following:

1.  In late 2005, Plaintiff served a subpoena upon the Illinois State Police, casting a large net to obtain documents relating to the current, ongoing murder investigation of Dyke and Karen Rhoads. The undersigned counsel, who also represents the Current ISP Officials, was retained to respond to that subpoena. As a result, portions of the Illinois State Police investigative file were produced to the undersigned for review to determine if the documents could be produced or were protected by a privilege. On December 5, 2006, counsel for the Illinois State Police served its objection to the subpoena on Plaintiff's counsel, asserting, among other things, the law enforcement investigative privilege. (Exhibit #1.)

1

2.      Three months later, on March 31, 2006, this Court entered an order setting a Rule 16 scheduling conference for May 4, 2006. On April 11, 2006, the Current ISP Officials filed a notice of appeal. As a result of the pending appeal, this Court vacated the May 4, 2006, conference.

2.      Plaintiff's counsel then moved to open discovery. On August 4, 2006, this Court denied the motion to re-open discovery.

3.      On November 8, 2006, Plaintiff's counsel filed a motion for a protective order to postpone the deposition of Darrell Herrington. On November 9, 2006, this Court ordered the following defendants to file a response to Plaintiff's motion: the City of Paris, Chief Gene Ray, Detective James Parrish, and Jack Eckerty. This Court did not order the Current ISP Officials to respond to the motion. (See Exhibit #2.)

4.      Following the response by these Defendants, on November 14, 2006, this Court granted in part and denied in part, Plaintiff's motion for protective order. In doing so, this Court ordered that "the defendants must first provide all answers to all of the plaintiff's propounded discovery requests." (See Exhibit #3.)

5.      The Plaintiff's propounded discovery requests include interrogatories and document requests. Generally, the interrogatories are not problematic. The interrogatories seek to learn of any communications between Defendants and Darrell Herrington. (See Exhibit #4.) With the exception of two conversations between Kenneth Kaupas and Darrell Herrington, no communications occurred between any of the other Current ISP Officials and Darrell Herrington. (See Exhibits #5 - # 9.) One conversation, which was happenstance and described in Kaupas' attached declaration, was never reduced to writing. But the other conversation between Kenneth Kaupas and Darrell Herrington occurred during an on-going criminal investigation. This

conversation was reduced to writing and is contained in an investigative summary contained in the Illinois State Police investigative file. (See Exhibit #5.) Additionally, the document request is problematic because it seeks, among other things, "all documents concerning Darrell Herrington," in the possession of "the defendants, their attorneys and agents." (See Exhibit #4.) Responsive documents exist in the Illinois State Police investigative file and some of those documents are in the possession of the Current ISP Officials' counsel.

6. Currently, the Illinois Office of the State's Attorneys Appellate Prosecutor ("Appellate Prosecutor") is investigating this matter with the support of the Illinois State Police. (See Exhibits #10 and #11.) This ongoing investigation continues through the present. (See Exhibits # 10 - #14.)

7. The requested documents, which are part of the ongoing investigation and which are identified in Exhibit #15 as documents that cannot be disclosed, are protected from disclosure by the law enforcement investigatory privilege. The communication between Kenneth Kaupas and Darrell Herrington, which is reduced to an investigative summary is similarly protected from disclosure.

8. The law enforcement investigatory privilege is "a qualified common law privilege protecting civil as well as criminal law enforcement investigatory files from civil discovery." *Jones v. Indianapolis*, 216 F.R.D. 440, 443 (S.D. Ind. 2003).

9. The privilege:

> preserves the integrity of law enforcement techniques and confidential sources, protects witnesses and law enforcement personnel, safeguards the privacy of individuals under investigation, and prevents interference with the investigation. [citation omitted] Law enforcement operations have little hope of being effective if conducted in full public view.

*Doe v. Hudgins*, 175 F.R.D. 511, 514 (N.D.Ill. 1997) (citation omitted).

3

10. Through competent declarations, the party asserting the privilege should explain with particularity the reason why the class of documents is privileged and how and to what extent law enforcement interests would be harmed if the information is disclosed. *Id.* at 514-15.

11. The prosecutor and the investigators have personally considered the requested Documents and are hereby lodging a formal claim of privilege. Further, both the Director of the Appellate Prosecutor and the Director of the Illinois State Police are also asserting the privilege. (See Exhibits # 10 - #14, #16.)

12. The identified documents sought by the production are privileged because they all pertain to the Illinois State Police's ongoing criminal investigation into the murders of Dyke and Karen Rhoads. The Current ISP Officials are not seeking a blanket protection of all documents relating to Darrell Herrington. Instead, they are seeking protection from disclosure (1) documents created during the current, ongoing investigation, and (2) the communication between Kenneth Kaupas and Darrell Herrington. But the documents relating to the initial investigation will be produced.

13. Once a formal claim of privilege is asserted, the next step is for the party asserting the privilege to explain with particularity the reasons the information sought is privileged. *Jones*, 216 F.R.D. at 444.

14. The requested information and documents are privileged because they are sought by a potential criminal defendant to the murders and relate to an ongoing criminal investigation, during which confidential sources and informants have been used. Some of the witnesses identified in the documents are fearful of their safety if their identities are revealed. Additionally, the documents evaluate interviews, facts and data regarding the murders and the investigation. (See Exhibits #12 - # 14.)

15.     Courts balance the need of the litigant who is seeking privileged law enforcement materials against the harm to the government if the privilege is lifted. *Dellwood Farms, Inc. v. Cargill, Inc.*, 128 F.3d 1122, 1125 (7th Cir. 1997).

16.     In balancing the public interest in protecting police investigations against the needs of civil rights plaintiffs, the Court will consider ten factors first announced in *Frankenhauser v. Rizzo*, 59 F.R.D. 339, 344 (E.D. Pa. 1973), which "although not exhaustive, are useful in making this determination". *Tuite v. Henry*, 181 F.R.D. 175, 177 (D.C. 1998). These factors are: (1) the extent to which disclosure will thwart governmental processes by discouraging citizens from giving the government information; (2) the impact upon persons who have given information of having their identities disclosed; (3) the degree to which governmental self-evaluation and consequent program improvement will be chilled by disclosure; (4) whether the information sought is factual data or evaluative summary; (5) whether the party seeking discovery is an actual or potential defendant in any criminal proceeding either pending or reasonably likely to follow from the incident in question; (6) whether the investigation has been completed; (7) whether any interdepartmental disciplinary proceedings have arisen or may arise from the investigation; (8) whether the plaintiff's suit is non-frivolous and brought in good faith; (9) whether the information sought is available through other discovery or from other sources; and (10) the importance of the information sought to the plaintiff's case.

*Jones,* 216 F.R.D. at 444.

17.     There should be a strong presumption against lifting the privilege. Otherwise, the courts will be thrust too deeply into the criminal investigative process. *Dellwood Farms*, 128 F.3d at 1125. The control of criminal investigations rests firmly in the executive branch, subject only to such limited judicial intervention as may be necessary to secure constitutional and other recognized legal rights of suspects and defendants. *Id.* Indeed, this very Court demonstrated its familiarity with the privilege by its refusal to lift this privilege during the jury trial in *Callahan v. Brueggemann, et al.*, 03 CV 2167. (See Exhibit #17.)

18.     The relevant factors weigh in favor of maintaining the investigatory privilege.

19.     First, disclosure of the documents would thwart governmental processes because it would discourage citizens from assisting law enforcement in criminal investigations. The privilege preserves the confidentiality of sources and protects witnesses. *In re Department of Investigation of New York*, 856 F.2d 481, 484 (2nd Cir. 1988). If witnesses can no longer depend on the confidentiality of the testimony they provide law enforcement, there will be a chilling effect on other witnesses coming forward and also the potential to negatively impact the public's safety. *Jones*, 216 F.R.D. at 444. Witnesses identified in the ISP Case File have expressed their fears for their safety if their identities became generally known. (See Exhibit #12.)

20.     Second, the impact on persons who have given information of having their identities disclosed would have a chilling effect on other witnesses coming forward. Indeed, those witnesses who are fearful would be reluctant to provide information to the investigators. (See Exhibit #12.) The disclosure could also jeopardize the protection of law enforcement personnel involved in the investigation.

21.     Third, governmental self-evaluation and consequent program improvement would be chilled by disclosure. If the Illinois State Police were required to disclose its law enforcement techniques, "it may compromise its ability to build upon previous successful investigatory methods, or revise or eliminate the ones that fail." *Jones*, 216 F.R.D. at 444. Release of such information "is akin to a team providing its opponent with its playbook" and "could compromise the public's safety." *Id.*

22.     Fourth, the information sought is both factual data and evaluative summary. (See Exhibits #13 - #14.) Further, because the murder investigation includes reviewing aspects of previous parts of the investigation and other agencies' work, the factual data is inherently intertwined with the evaluative summaries.

23.     Fifth, the party seeking discovery in this case (namely, Plaintiff) is a subject of the investigation and a potential defendant in a criminal proceeding regarding the murders of Dyke and Karen Rhoads. (See Exhibit #16.)

24.     Sixth, the investigation has not been completed. The investigation is ongoing. (See Exhibits #10 - #14.) The fifth and sixth factors, when combined, are crucial and weigh heavily against disclosure. *See Doe v. Hudgins*, 175 F.R.D. 511, 517 (N.D. Ill. 1997) ("Plaintiffs have pointed to no case, and this Court has found none, where a court ordered disclosure of investigatory files while criminal proceedings were pending.")

25.     The seventh factor is not applicable.

26.     Eighth, the suit against the Current ISP Officials is without merit. There are two (2) fundamental allegations in Plaintiff's Complaint, upon which his whole case rests against the Current ISP Officials. But those allegations are demonstrably false and can have only been pleaded without an adequate investigation into the facts. The first allegation is that during a briefing in early January 2003 at which Michale Callahan stated his opinions regarding the murder of Dyke and Karen Rhoads, including his opinion that Plaintiff was innocent, three of the Current ISP Officials "opposed Callahan's evidence and took the position that he should not be permitted to inform the Governor's representative that Plaintiff . . . [was] innocent." (See Complaint at ¶¶89- 92.) However, Michale Callahan's testimony at his deposition and trial is to the contrary. (See Exhibit #18.) In his deposition, Callahan was asked the following question and gave the following answer:

Q:     Did you feel that the group that met at the academy was generally receptive to your comments?

7

> A: Yes. . . But I think that everybody that was there was very – you know, they listened and nobody said I was, you know, off base or wrong. I mean I presented my opinions. Captain Fermon presented his opinions. And I think everybody listened and they were all very neutral. (See Exhibit #18.)

Moreover, Callahan also testified that when he made his statements at this January 2003 briefing, he informed those present that Plaintiff's attorneys possessed all the information at that time. (See Exhibit #18.) The second allegation is that the Current ISP Officials did not disclose the information in Callahan's memorandum to the prosecutors handling Plaintiff's post-conviction proceedings. This allegation is completely false. Three (3) pieces of irrefutable evidence in the public domain prove this fact. First, Diane Carper faxed Callahan's memorandum to the attorneys handling the post-conviction proceedings. In fact, one of the exhibits in the *Callahan* trial was this facsimile from Diane Carper to Rick Stock at the Illinois Attorney General's Office, attaching Callahan's memorandum. (See Exhibit #19.) Second, even one of Plaintiff's current attorneys (Michael Metnick) was notified that the Attorney General's Office received the information from the Illinois State Police. (See Exhibit #20.) Third, Callahan testified at his trial that he released the information in his memoranda to the Attorney General's Office. (See Exhibit #21.) The fact that Plaintiff persists in continuing to press his allegations in the face of known, indisputable evidence is deeply troubling.

27. Ninth, the factual non-privileged information sought is available through other discovery or from other sources. Nothing prevents Plaintiff and his counsel and investigator from obtaining witness statements, including statements from Darrell Herrington. Indeed, Plaintiff's counsel and investigator have been able to obtain numerous witness interviews, facts and evidence, even during Plaintiff's incarceration. Plaintiff's ability to obtain such information

is demonstrated by the evidence his agents gathered and presented at his Post-Conviction Hearing Act proceeding, which was subsequently used by Judge McCuskey to grant Plaintiff's habeas corpus petition. *See Steidl v. Walls*, 267 F.Supp.2d 919 (C.D. Ill. 2003). Plaintiff is not prevented from continuing that process.

28.     Tenth, the information sought by Plaintiff is not crucial to his civil case against the Current ISP Officials. As demonstrated by the affidavits, none of the Current ISP Officials had any contact with Darrell Herrington, other than Kenneth Kaupas' brief conversations. If Plaintiff disbelieves these affidavits, his counsel can ask Darrell Herrington if he had conversations with these individuals, and any other foundation questions necessary. (If Plaintiff were to ask about the substance of the conversation with Kenneth Kaupas, then an objection would be raised.) Accordingly, the production of the documents and information is not critical to this deposition.

29.     Thus, all relevant factors weigh in favor of maintaining investigatory privilege, and any doubt should be resolved in favor of the privilege due to the strong presumption awarded by courts. *See Dellwood Farms, Inc. v. Cargill, Inc.*, 128 F.3d 1122, 1125 (7th Cir. 1997).

30.     Additionally, there is no basis to require the Current ISP Officials or their attorney to obtain and produce the recent interview of Darrell Herrington. For all the reasons stated above, that document is privileged. Moreover, counsel for the Current ISP Officials has not seen the interview or any reports relating to that interview. In fact, the only information counsel for the Current ISP Officials has about that interview is that the interview occurred. (See Exhibit #12.) Because documents relating to that interview are not, and have never been, in the possession of the Current ISP Officials' counsel, the protective order should be granted to prohibit their disclosure to Plaintiff's counsel.

WHEREFORE, the Current ISP Officials respectfully request that this Court grant their motion for a protective order pursuant to Federal Rule of Civil Procedure 26(c) as the discovery requests are barred by the law enforcement privilege. The Current ISP Officials are willing to disclose those documents identified that they believe are not privileged. Alternatively, the Current ISP Officials request that if this Court were to deny this motion for a protective order, then the deposition should proceed without the Current ISP Official's counsel's participation and without disclosure of the documents, but they should be entitled to depose Darrell Herrington at a later date, assuming he is still available.

Respectfully submitted,

The Current ISP Officials


  s/ Iain D. Johnston

Iain D. Johnston
Bar Number: 6204667
Attorney for Current ISP Officials
Holland & Knight LLP
131 S. Dearborn 30th Floor
Chicago, IL  60603
Telephone: (312) 263-3600
Fax: (312) 578-6666
E-mail: iain.johnston@hklaw.com

# 4257286_v1