E-FILED
Tuesday, 29 May, 2007  04:45:33 PM
Clerk, U.S. District Court, ILCD

IN THE UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | |
|---|---|
| GORDON RANDY STEIDL, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 05 CV 2127 |
| v. ) | |
| ) | Hon. Harold A. Baker |
| CITY OF PARIS, et al., ) | |
| ) | |
| Defendants. ) | |

**PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION FOR**
<u>**PARTIAL JUDGMENT ON THE PLEADINGS**</u>[1]

Plaintiff Randy Steidl, by his counsel, as his response to Defendants' Motion for Partial Judgment on the Pleadings, states as follows:

## INTRODUCTION

The defendants have moved for partial judgment on the pleadings on Counts I and V of Plaintiff Randy Steidl's complaint based on new Supreme Court case law, *Wallace v. Kato*, 127 S. Ct. 1091, 166 L. Ed. 2d 973 (2007). As set forth below, *Wallace* does not foreclose Plaintiff's Fourth Amendment theory of liability which extends from the time of his arrest pursuant to a warrant until his indictment, where his custody resulted directly from the defendants' fabrication and suppression of evidence. *Wallace* on its face is limited to warrantless arrests, and since Plaintiff's claims regarding Defendants' pre-warrant misconduct imply the invalidity of Plaintiff's conviction, his Fourth Amendment claim as alleged in Count I is tolled by the rule of *Heck v. Humphrey*, 512 U.S. 477 (1994).

---

[1] The motion was filed by Defendant Edgar County and subsequently joined by Defendants City of Paris, Ray, Parrish, Eckerty and McFatridge. Plaintiff will refer to these parties collectively as "Defendants."

1

## BACKGROUND

As alleged in his complaint, Plaintiff Randy Steidl spent 17 years in prison, 12 of which were on death row, for a double murder and arson he did not commit. His wrongful arrest, conviction, and imprisonment were the result of a pattern of intentional misconduct by the defendants, who repeatedly fabricated evidence, coerced and manipulated witnesses to provide false statements against him, and failed to disclose exculpatory evidence including the truth about their investigative misconduct.

The investigation which led to the wrongful arrest, conviction, and imprisonment of Plaintiff Steidl was conducted by Paris police chief Defendant Gene Ray, and Paris lead detective Defendant James Parrish; Edgar County State's Attorney Defendant Michael McFatridge; and lead Illinois State Police [ISP] investigator Defendant Jack Eckerty. [Compl. ¶¶4, 5, 6, 7, 15]. Rather than pursue other credible leads, the Defendants interrogated Darrell Herrington, who was the town drunk and a petty criminal, and Deborah Rienbolt, a completely unstable alcoholic and drug addict on felony probation. [Id. ¶¶21, 31]. With respect to Herrington, the Defendants used coercive, suggestive and manipulative tactics, promises, rewards, liquor, and, on at least one occasion, subjected Herrington to hypnosis, in order to manufacture and fabricate false evidence. [Id. ¶29]. With McFatridge's knowledge and approval, Parrish and Eckerty's reports failed to document the ongoing coercion, manipulation, suggestion, fabrication, promises and rewards, as well as the content of the statement taken under hypnosis. [Id. ¶30].

With respect to Rienbolt, Defendants repeatedly coerced and manipulated her, suggesting that she was present at the crime scene and participated with Steidl and Whitlock in the murders. [Compl. ¶¶32-33]. As a result of their coercion, suggestion, and manipulation, Rienbolt gave a false statement that she saw Plaintiff, Whitlock and Herrington together the night before the murders; and further implicated Whitlock. [Id. ¶35]. With McFatridge's knowledge and approval, Parrish and Eckerty prepared police reports documenting Rienbolt's false story, in which they failed to document that her story was false, incredible, and the product of their coercion and other misconduct. [Id. ¶38].

Even though they had not yet succeeded in coercing and manipulating Rienbolt to say she actually saw Steidl and/or Whitlock commit the crimes, the Defendants nevertheless obtained

arrest warrants on February 19, 1987, based on Rienbolt and Herrington's false statements and arrested Steidl and Whitlock for murder and arson. [Compl. ¶¶36-37].

After the arrest, the Defendants continued to manufacture additional evidence, employing a "jailhouse snitch" and electronic surveillance. [Compl. ¶¶39-41] On March 10, 1987, on the basis of their manufactured evidence, the Defendants obtained indictments for murder and arson against Plaintiff and Whitlock. [Id. ¶42.] After indictment, but before trial, the Defendants, using coercion, manipulation and suggestion on Reinbolt, got her to falsely state that she was present at the crime and witnessed Plaintiff and Whitlock commit the murders. [Id. ¶44]. They additionally obtained through coercion and manipulation, the statements of several other witnesses in which they falsely corroborated portions of Rienbolt's story. [Id. ¶45]. In June of 1987 Plaintiff was wrongfully convicted of murder and arson on the basis of all of this manufactured and coerced false evidence and sentenced to death. [Id. ¶50].

On June 17, 2003, the U.S. District Court for the Central District of Illinois granted Plaintiff Steidl's petition for writ of habeas corpus, finding that "acquittal was reasonably probable if the jury had heard all of the evidence." [Compl. ¶94]. Nine months later the Illinois Attorney General, Lisa Madigan, announced she would not appeal this order because her extensive investigation revealed that exculpatory evidence was never disclosed, and that Steidl was thus entitled to a new trial. [Id. ¶95]. On May 28, 2004, the charges against Steidl were *nolle prossed* [Id. ¶97], and Steidl was released that day. [Id. ¶98].

On May 27, 2005, Plaintiff Steidl filed this federal 42 U.S.C. § 1983 action, *inter alia*, against the Defendants who are parties to this motion, for violations of his Fourth, Fifth and Fourteenth Amendment rights. On March 31, 2006, the District Court denied these defendants' motions to dismiss in their entirety. On April 19, 2007, Defendant Edgar County filed a motion for partial judgment on the pleadings in light of the United States Supreme Court's February 21, 2007 decision in *Wallace v. Kato*, which for the first time addressed a gap left by its decision in *Heck v. Humphrey*, 512 U.S. 477 (1994), namely, when the statute of limitations accrues on 42 U.S.C. §1983 claims arising under the Fourth Amendment *for detention without legal process* (i.e., for warrantless arrest), where the claims do not implicate the validity of an extant conviction.

As set forth below, *Wallace* did not overrule *Heck*, and has no bearing on claims arising from arrests with a warrant under the Fourth Amendment where, as here, the misconduct alleged undermines the validity of the conviction. Hence, *Heck* is still good law, and establishes that the statute of limitations accrued on Plaintiff's Fourth Amendment claim when he was exonerated and released from prison.

## ARGUMENT

I. *WALLACE* HAS NO BEARING ON PLAINTIFF'S §1983 FOURTH AMENDMENT CLAIM BECAUSE HIS ARREST WAS PURSUANT TO A WARRANT, IMPLIES THE INVALIDITY OF HIS CONVICTION AND WAS THEREFORE TOLLED BY *HECK*.

In *Heck v. Humphrey*, 512 U.S. 477 (1994), the Supreme Court adopted a species of tolling for §1983 claims arising out of criminal convictions:

> We hold that, in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a §1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. §2254. A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under §1983.

*Id.* at 486-87 (footnote omitted). In other words, "[j]ust as a cause of action for malicious prosecution does not accrue until the criminal proceedings have terminated in plaintiff's favor . . . so also a §1983 cause of action for damages attributable to an unconstitutional conviction or sentence does not accrue until the conviction or sentence has been invalidated." *Id.* at 489-90.

*Heck* tolling survives *Wallace* and is still the law for claims, including certain Fourth Amendment claims, that imply the invalidity of the conviction. Indeed, Justice Scalia, who authored *Heck*, also wrote the opinion for the *Wallace* majority. In contrast to *Heck*, where the claim arose out of the plaintiff's conviction, the grant of certiorari in *Wallace* was "expressly limited . . . to the Fourth Amendment false-arrest claim" premised upon a warrantless arrest. 127 S.Ct. at 1094, n.1. Reasoning that the warrantless Fourth Amendment injury was complete when

the plaintiff "appeared before the examining magistrate and was bound over for trial," *id.* at 1097, the Supreme Court in *Wallace* held "that the statute of limitations upon a §1983 claim seeking damages for a false arrest in violation of the Fourth Amendment, where the arrest is followed by criminal proceedings, begins to run at the time the claimant becomes detained pursuant to legal process." *Id.* at 1100.

The *Wallace* Court explicitly observed the continued vitality of the *Heck* tolling rule, while noting that it did not apply to the plaintiff's Fourth Amendment warrantless arrest claim because the misconduct alleged there was independent of the conviction:

> [T]he *Heck* rule for deferred accrual [of the statute of limitations] . . . delays what would otherwise be the accrual date of a tort action until the setting aside of an extant conviction which success in that tort action would impugn.

*Id.* at 1097-98 (quoting *Heck*), *see also id.* at 1099 n.4.

*Wallace* does not address the Fourth Amendment theory presented here based on the fabrication and/or omission of evidence that would vitiate a judicial finding of probable cause. *See Malley v. Briggs*, 475 U.S. 335, 344 n.7 (1986) (recognizing viability of Fourth Amendment claim where officers responsible for bringing about an unlawful arrest knew that the arrest warrant had issued without probable cause, particularly true of officers who knew that those who obtained the warrant had deceived the authorizing body); *Juriss v. McGowan*, 957 F.2d 345, 350-51 (7th Cir. 1992) (same).

Further, the *Wallace* Court recognized that, while the Fourth Amendment applies to pretrial seizures, pretrial detention falls into two distinct periods - - detention before and detention after "legal process" issues. *Wallace* at 1096. The rule in *Wallace* was explicitly limited to "false arrest" claims, explicitly defined to cover the period of "detention without legal process," but not including the period beginning "once the victim becomes held *pursuant to such process* - when, for example, he is bound over by a magistrate or arraigned on charges." *Id.* at 1096. (emphasis in original). Hence, if "legal process" is construed to mean arrest by warrant for purposes of determining tolling, then *Wallace*, on its own terms, does not apply, and Plaintiff consequently has a Fourteenth Amendment claim for his entire time in custody. Moreover, if "legal process" is construed to be the indictment for purposes of defining the contours of the Fourth Amendment

claim itself, Plaintiff has such a claim for his pre-indictment time in custody which is protected by *Heck* for the reasons stated above. Hence, under *Wallace* and *Heck*, Plaintiff has pleaded a Fourth Amendment claim for his pre-indictment custody, and an overlapping Fourteenth Amendment claim for his entire time in custody.[2]

Research has revealed no cases applying *Wallace* to a situation similar to Plaintiff's, including those cited by Defendants. In *Watts v. Epps*, 475 F.Supp.2d 1367 (N.D. Ga. 2007), the plaintiff, who plead guilty and served a sentence of probation, brought his civil rights action alleging a warrantless false arrest some three years after the arrest. Unlike the case at bar, in *Watts*, there were no claims that implied the invalidity of his guilty plea. Thus, the court's granting defendants' motion for summary judgment based on *Wallace*, is not instructive here. Similarly, in *Gilley v. State of Oregon*, 2007 U.S. Dist. LEXIS 18523 (D.Ore.), and *Gibson v. Superintendent*, 2007 U.S. Dist. LEXIS 22871 (D. N.J.), the plaintiffs' arrests were warrantless, and those Courts made overly broad applications of *Wallace*. In any event, these decisions are not binding on this Court, and Defendants cite no binding authority for their incorrect interpretation of *Wallace*.

II.     **THIS COURT SHOULD ALSO REJECT THE DEFENDANTS' ARGUMENTS REGARDING PLAINTIFF'S STATE LAW CLAIM FOR FALSE IMPRISONMENT.**

The defendants have tacked on to their motion the argument that Plaintiff's *state law* false imprisonment claim is barred by the statute of limitations. This contention can in no way be derived from the Supreme Court's decision in *Wallace*. Defendants even concede that *Wallace* has no bearing on state court claims, yet they nevertheless try to use *Wallace* as a pretext to raise in this motion an argument they could have raised in their original motions to dismiss. Since they failed to do so, this Court should therefore summarily reject their tardy argument regarding Plaintiff's state law false imprisonment claim. To the extent this Court is inclined to address this argument, there is ample grounds to deny it on the merits.

Defendants misstate the nature of Plaintiff's false imprisonment claim, ignoring Plaintiff's

---

[2] The Court, in its Order of March 31, 2006, denying these defendants' motions to dismiss, upheld this Fourteenth Amendment claim as plead in Count II. Defendants do not now argue, nor can they argue, that *Wallace* in any way impacts that prior decision.

well pled allegations that, in conspiracy with the current Illinois State Police Defendants, the moving Defendants acted on an ongoing basis to extend Plaintiff's imprisonment by continuing to suppress a wealth of exculpatory evidence throughout his appellate and post-conviction proceedings and making public statements to try to influence prosecutors to continue to hold Plaintiff in custody and retry him after 2003 when his conviction had been overturned. [e.g., Compl. ¶¶ 96, 119].

Such ongoing tortious conduct is precisely that envisioned in *Feltmier v. Feltimer*: "a continuing tort does not involve tolling the statute of limitations because of delayed or continuing injuries, but instead involves viewing the defendant's conduct as a continuous whole for prescriptive purposes." 207 Ill.2d 263, 285 (2003). Plaintiff alleges numerous wrongful actions and failures to act which extend well beyond his initial arrest and directly contribute to his continued false imprisonment. An independent false imprisonment claim exists, despite a lawful arrest, where the defendant later acted or failed to act in a manner which dissipated the reasonableness of the original arrest. *Hyatt v. United States*, 968 F. Supp. 96, 109-110 (E.D.N.Y. 1997); *Carey v. K-Way, Inc.*, 312 Ill. App.3d 666 (1st Dist. 2000); *see also*, *Bevier v. Hucal*, 806 F.2d 123, 126 (7th Cir. 1986).

The law also strongly supports the conclusion that a false imprisonment claim accrues at the time a plaintiff is released from confinement, irrespective of whether there is continuing misconduct alleged. *See*, *Cooper v. Butler*, 1995 WL 399009 at *5 (N.D. Ill.), *aff'd*, 172 F.3d 52 (7th Cir. 1999) (noting that state law claim for false imprisonment does not accrue until plaintiff's exoneration and release); *Hernandez v. Sheahan*, 1993 WL 257486 (N.D. Ill.) (state law false imprisonment claim did not accrue until the plaintiff was released from electronic monitoring); *Von Dardel v. Union of Soviet Socialist Republic*, 623 F. Supp. 246, 259-60 (D.D.C. 1985) (false imprisonment claim brought on behalf of diplomat imprisoned in 1945 not barred by statute of limitations); 32 Am. Jur. 2d, *False Imprisonment*, 116, pp. 152-53 ("it is generally held that the limitation begins to run from the termination of the imprisonment or confinement and not from the time of termination of the proceedings under which the plaintiff's arrest occurred."); 35 C.J.S. *False Imprisonment* § 49, p. 714 ("a right of action for false imprisonment accrues at the beginning of the imprisonment but does not become complete until the termination thereof.");

*See also*, Annot., 49 A.L.R. 2d 922.[3]

Further, the rationale of *Heck* equally applies to state false imprisonment claims as was implicitly recognized, prior to *Heck*, in *Jones v. City of Chicago*, 639 F. Supp. 146 (N.D. Ill. 1986), *aff'd*, 856 F.2d 985 (7th Cir. 1988), where the Court held that plaintiff's pendent state claims of false arrest, false imprisonment, malicious prosecution and intentional infliction of emotional distress accrued on the date that the state dismissed the charges. *Id.* at 153. Hence, for all the reasons articulated above, Plaintiff's state law false imprisonment claim accrued on the date he was exonerated and released from custody, and its filing was therefore timely.

The Court should thus deny Defendants' motion as to this argument.

## CONCLUSION

For the foregoing reasons, the defendants' motion for partial judgment on the pleadings should be denied.

Dated: May 29, 2007                     Respectfully submitted,

/s/ G. Flint Taylor
G. Flint Taylor
Jan Susler
Ben H. Elson
People's Law Office
1180 N. Milwaukee Ave.
Chicago, Il. 60622
(773) 235-0070
gftaylorjr@aol.com
jsusler@aol.com
elsonben@aol.com

---

[3] *See also*, *Kirwin v. Connecticut*, 320 A.2d 837, 840 (1974) ("the authorities are in agreement that the Statute of Limitations does not begin to run on a cause of action for false imprisonment until termination of the imprisonment"); *Collier v. Evans*, 406 S.E.2d 90, 92 (1991) (a false imprisonment action must be brought within two years of accrual, "which is from the release from imprisonment"); *Jackson v. Police Department of the City of New York,* 500 N.Y.S. 2d 553, 554 (1986) ("cause of action for the tort of false imprisonment accrues as of the date of the prisoner's release from confinement").

Michael Bruce Metnick
Metnick, Cherry, Frazier, and Sabin, L.L.P.
Second Floor - Myers Bldg.
P. O. Box 12140
Springfield, IL 62791-2140
(217) 753-4242
metnick@springfieldlawfirm.com

Attorneys for Plaintiff