IN THE UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | | |
|---|---|---|
| GORDON RANDY STEIDL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 05 CV 2127 |
| | ) | |
| CITY OF PARIS, et al., | ) | Judge Harold A. Baker |
| | ) | Magistrate Judge David G. Bernthal |
| Defendants. | ) | |

**DEFENDANTS' REPLY TO PLAINTIFF'S RESPONSE TO MOTION
TO QUASH AND FOR PROTECTIVE ORDER**

Defendants, City of Paris, Gene Ray, Jim Parrish and Jack Eckerty, by their attorneys James G. Sotos and Elizabeth A. Ekl of James G. Sotos & Associates, Ltd., and Michael McFatridge, by his attorney Terry Ekl of Ekl Williams, PLLC, (collectively "Defendants") for their reply brief in support of their Motion to Quash Subpoena and for Protective Order, state:

**Introduction**

In response to Defendants' motion to quash and for protective order, Plaintiff does not dispute that the investigative documents in the possession of Delorto, Mazzola & Associates ("DMA") regarding the Rhoads' murders fall within the parameters of protected work product. Rather, Plaintiff has argued only that Defendants have waived the privilege by disclosing the information to a third party, and by failing to provide an adequate description of the withheld documents. Plaintiff subsequently filed a Supplemental Response to Defendants' Motion stating that he has already received some of the documents in question, an assertion he contends further supports his arguments that Defendants waived the privilege.

I.  **Work Product Protection Was Not Waived by Two Disclosures to Non-adversarial Third Parties**

   A.  **Glowski's Conversation with ISP Officer Marlow Was Not a Disclosure to an Adversary**

Plaintiff alleges that Defendants waived their work product protections over DMA's investigative documents two years ago, in March, 2006, when DMA investigator, Ken Glowski, told Illinois State Police (ISP) officer Jeff Marlow that he had interviewed fifty people regarding Michale Callahan's investigation of the Rhoads' murders and that four individuals told him that Callahan's case memo was inaccurate.  Plaintiff does not contend that Glowski disclosed any investigative reports or other documents to Marlow, or that Glowski said anything specific about what any witnesses said.

Plaintiff's contention that Glowski's single conversation with Agent Marlow waived their work product protection for all the DMA investigative reports is a non-starter.   The work product privilege can only be waived by "disclosures that are 'inconsistent with the adversary system.'" *Eagle Compressors, Inc. v. HEC Liquidating Corp.*, 206 F.R.D. 474, 479 (N.D. Ill. 2002).  As a result, work product waiver applies only to "voluntary" disclosures to adversaries. *Id.* at 479-480[1].  Indeed, both of the cases relied upon by Plaintiff emphasized that, in contrast to the attorney-client privilege, which can be waived by disclosure to any third party, the work product doctrine is only waived upon voluntary disclosure to an adversary.  *See In Re: Qwest Communications International, Inc.*, 450 F.3d 1179, 1186  (10th Cir. 2006), citing *Foster v. Hill*

---

[1] Though the *Eagle* court did find a waiver of the work product privilege, the waiver was based on counsel's voluntary disclosure to his adversary of his "mental impressions and conclusions for the purpose of advancing his settlement posture." *Id.* at 480.  Waiver thus occurred because counsel's disclosure was intended to influence his adversary and thus was motivated by "self-interest, not inadvertence . . .[without] any expectation of confidentiality." *Id.*

*(In re Foster),* 188 F.3d 1259,1272 (10th Cir. 1999) (indicating that the work product doctrine is affected when a disclosure is to an adversary); *In re Columbia/HCA Healthcare Corp. Billing Practices Litigation*, 293 F.3d 289, 306 (6th Cir. 2002) (stating that " [o]ther than the fact that the initial waiver must be to an "adversary," there is no compelling reason for differentiating waiver of work product from waiver of attorney-client privilege").

Against that backdrop, Plaintiff's analogy to the disclosure of materials to the Department of Justice (DOJ) by the companies under federal investigation in both *Qwest* and *In re Columbia/HCA Healthcare Corp.* is misplaced. In both of those cases, the companies the DOJ was investigating voluntarily disclosed work product materials to the DOJ for tactical reasons, and then later sought to withhold those same materials from their adversaries in related civil litigation. Not surprisingly, in finding waivers, the courts in those cases did not allow the involved companies to pick and choose which adversaries they would disclose materials to and which they would seek to keep in the dark.

In the present matter, by contrast, neither Defendants nor their investigators disclosed any work product materials to their adversaries. Plaintiff does not claim, nor could he claim, that the ISP investigation into the Rhoads' murders made the ISP an adversary of Defendants. Thus, investigator Glowski's single conversation with ISP agent Marlow about his investigation did not waive Defendants' work product protections over DMA's investigative reports[2].

---

[2] Glowski's limited conversation with a non-adversarial third party dispenses with any need to address Plaintiff's straw man argument that "selective waiver" will not apply in cases "where the government agency was free to further disclose or disseminate the information." (Pl.'s Resp. at 3.) The doctrine of selective waiver, when properly invoked, allows the production of work product to one party, "without waiver of further protection for those materials." *In re Qwest*, 450 F.3d at 1180. Here, Defendants have not argued for selective waiver because they did not voluntarily disclose any work product information to any adversary.

3

## B. Defendants' Disclosure to Dan Curry Was Not a Disclosure to an Adversary

On February 11, 2008, Plaintiff filed a Supplemental Response to Defendants' Motion to Quash and for Protective Order. In his response, Plaintiff stated that he had received documents which would impact the Court's decision on whether the Defendants had waived the work product privilege they asserted in the Motion to Quash. (Pl.'s Supp. Resp. at 2.) Plaintiff declined to identify the documents he had received to Defendants until being ordered to do so during a hearing before this Honorable Court on February 13, 2008. Immediately after that hearing, Plaintiff provided defense counsel with sixty-six pages of Defendants' investigators' memos. These documents are a subset of the very memos that Plaintiff has subpoenaed from DMA.

Plaintiff apparently believes that the mere receipt of these documents by any third party, under any circumstance, demonstrates a waiver of Defendants' work product protections. As explained above, that is certainly not the case. The burden is on the party asserting waiver to establish that a waiver of work product protections has occurred. *See S.E.C. v. Buntrock,* 217 F.R.D. 441 (N.D. Ill. 2003). To carry that burden, Plaintiff must establish that Defendants voluntarily disclosed protected information to an adversary. *See Eagle Compressors*, 206 F.R.D. at 479-480.

Here, Plaintiff has not even attempted to make such a showing. To the contrary, Plaintiff has relied solely on the fact that he somehow obtained sixty-six pages of DMA's investigative memos. Moreover, Plaintiff has declined to disclose the circumstances of his receipt of the documents. However, Defendants have been able to resolve the question through their own inquiry.

4

Specifically, after leaving the hearing before this Honorable Court on February 13th, 2008, defense counsel James G. Sotos asked Plaintiff's counsel Jan Susler how Plaintiff obtained the documents. Ms. Susler told Mr. Sotos to ask Dan Curry, whose handwritten name appeared on one of the documents. Mr. Sotos called Mr. Curry, who is an advisor to a third party whose name has surfaced in connection with the various police investigations into the Rhoads' murders. (Ex. A, Affidavit of James G. Sotos, ¶¶ 2,3.) Mr. Curry explained that he had received several pages of documents from Terry Ekl, defense counsel to Defendant Michael McFatridge, who advised him to treat the documents confidentially. (Ex. B, Affidavit of Dan Curry, ¶ 3; Ex. C, Affidavit of Terry Ekl, ¶ 3.) Nonetheless, Mr. Curry confirmed that he later provided the memos to a newspaper reporter, Jim Dey, but that he emphasized to Mr. Dey that the documents were to be treated confidentially. (Ex. B, Affidavit of Curry, ¶ 4.) On Thursday, February 28, 2008, Mr. Dey confirmed that he provided the documents to Michale Callahan, who, according to Dey, then provided the documents to Plaintiff's counsel.[3] (Ex. A, Affidavit of Sotos, ¶5; Ex. D, Affidavit of Dey, ¶¶ 5,6.)

Against a backdrop of that explanation, Plaintiff cannot possibly show that Defendants waived their work product protection by voluntarily providing the documents to an adversary. Indeed, during the course of Defense counsel's investigation into the circumstances of Plaintiff's receipt of the disputed documents, Plaintiff's counsel confirmed, in declining to explain how

---

[3] Curiously, currently pending before this Honorable Court is Defendants' Petition for a Rule to Show Cause against Mr. Callahan based on Callahan's refusal to comply with Defendants' subpoena for the production of documents in his possession. While Callahan has flatly refused to produce documents to Defendants required by lawful court processes, he has taken it upon himself to freely share privileged documents in his possession which are clearly covered by that same subpoena with Plaintiff's counsel.

they received the documents, that "[w]e are not asserting waiver based upon your disclosure of the documents to the adversary, Plaintiff. We are asserting waiver based upon Defendants' disclosure of the documents to a third party." (*See* Exhibit E, E-mail exchange among counsel.) As explained above, disclosure to a non-adversarial third-party is wholly insufficient to establish a waiver of work product protection.

**II.    Defendants Have Not Waived Their Claim of Work Product Privilege by Failing to Provide Explicit Descriptions of the Materials They Seek to Withhold**

Plaintiff asserts that Defendants have failed to adequately describe the information in DMA's files and thus have waived any privilege that they may have asserted. Plaintiff's argument is based on Federal Rule of Civil Procedure 45(d) which states that a party asserting a privilege must support its claim "by a description of the nature of the withheld documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim." Fed.R.Civ.P. 45(d). Defendants, in their Motion to Quash, complied with this requirement by attaching affidavits of Mr. Mazzola and Mr. Glowski. The affidavits state that the contents of DMA's files include, *inter alia*, non-verbatim summaries of witness interviews conducted at the direction of Defendants' counsel with highlighted materials to further litigation strategy and memoranda that discuss litigation strategy as well as analysis of evidence. Further, Defendant's motion itself described the contents of the investigative files, and explained that any further disclosure would compromise their litigation strategy. (*See* Def.'s Mot. to Quash.)

Plaintiff cites a string of cases purportedly in support of their proposition that the affidavits to Defendants' motion provide inadequate descriptions of the withheld documents.

(Pl.'s Resp. at 4.) However, none of those cases support Plaintiff's position that the descriptions in Defendants' affidavits are inadequate. Instead, the cases focus on the fact that when asserting privilege under the work product doctrine, a party must describe whether the information includes "opinions, mental impressions or strategy of the attorneys," or at least a description "sufficient to determine the content of documents." *See Christman v. Brauvin Realty Advisors, Inc.*, 185 F.R.D. 252 (N.D. Ill. 2001); *Yorke v. Kaminsky (In re Stern Walters Partners)*, 1996 U.S. Dist. LEXIS 3041 (N.D. Ill. 1996). Further, the description of withheld documents can also be described within a brief. *See Conagra, Inc. v. Arkwright Mut. Ins. Co.*, 32 F. Supp. 2d 1015, 1017 (N.D. Ill. 1999). As explained above, Defendants' Motion to Quash and for Protective Order, along with the accompanying affidavits, sufficiently described the fact that DMA's files included investigative memoranda which, if disclosed would reveal defense strategy. Any further description of the withheld documents is not only unnecessary, as it is "sufficient to determine the content of the documents," but would, in fact, disclose work product.

Moreover, in light of the fact that Plaintiff actually possesses sixty-six pages of DMA's investigative memos describing their interviews, Plaintiff surely cannot continue to contend that he lacks sufficient detail about the nature of the investigative documents at issue to permit an assessment of whether the documents should be accorded work product protection.

### **Conclusion**

DMA's investigative memos, prepared at defense counsel's direction, describing their interviews with witnesses in connection with the Rhoads' murders, is classic work product material. Defendant never disclosed any of those materials to an adversary so there has been no waiver of work product protections over the investigative documents. Accordingly, Defendants

7

respectfully request that this Honorable Court grant their motion to quash Plaintiff's subpoena to DMA and enter a protective order precluding any further production of documents in the possession of DMA. Further, Defendants request that Plaintiff be ordered to immediately return all inadvertently disclosed documents and be prohibited from any further disclosure or use of the same.

Date:   February 29, 2008                    RESPECTFULLY SUBMITTED,

<div style="text-align: right">

s/ James G. Sotos
James G. Sotos, Attorney No. 06191975
JAMES G. SOTOS & ASSOCIATES, LTD.
550 East Devon Avenue, Suite 150
Itasca, IL  60143-2632
Telephone:  (630) 735-3300
Fax:  (630) 773-0980
jsotos@jsotoslaw.com

*Attorney for Defendants, City of Paris, Gene Ray, James Parrish, and Jack Eckerty*

</div>

## CERTIFICATE OF SERVICE

The undersigned having first been duly sworn under oath, states that he electronically filed a complete copy of the foregoing **Defendants' Reply in Support of Their Motion to Quash Subpoena and for the Entry of Protective Order** with the Clerk of the Court on **February 29, 2008** using the CM/ECF system, which will send notification of such filing to the following counsel of record: See Attached Service List.

s/ James G. Sotos
James G. Sotos, Attorney No. 06191975
JAMES G. SOTOS & ASSOCIATES, LTD.
550 East Devon Avenue, Suite 150
Itasca, IL 60143-2632
Telephone: (630) 735-3300
Fax: (630) 773-0980
jsotos@jsotoslaw.com

*Attorney for Defendants, City of Paris, Gene Ray, James Parrish, and Jack Eckerty*

**SERVICE LIST**
**GORDON RANDY STEIDL v. CITY OF PARIS, ET AL - 05 C 2127**

**Attorneys for Gordon Randy Steidl:**

Michael Bruce Metnick
METNICK CHERRY & FRAZIER
Suite 200 Myers Building
One West Old State Capitol Plaza
P.O. Box 12140
Springfield, IL 62791-2140
Tel: (217) 753-4242
Fax: (217) 753-4642
E-mail: metnick@springfieldlawfirm.com

G. Flint Taylor; Jan Susler; Ben Elson
PEOPLE'S LAW OFFICE
1180 N. Milwaukee Ave.
Chicago, IL 60622
Tel: (773) 235-0070
Fax: (773) 235-6699
E-mail: gftaylorjr@aol.com
jsusler@aol.com
elsonben@aol.com

**Attorneys for Charles E. Brueggemann, Diane Carper, Steven M. Fermon, Kevin Kaupus, and Andre Parker:**

Karen L. McNaught
(also counsel for Jack Eckerty)
Illinois Attorney General
500 S. Second Street
Springfield, IL 62706
Tel: (217) 782-1841
Fax: (217) 524-5091
E-mail: kmcnaught@atg.state.il.us

Iain D. Johnston
HOLLAND & KNIGHT, LLP
131 South Dearborn Street, 30th Floor
Chicago, IL 60603
Tel: (312) 578-6577
Fax: (312) 578-6666
E-mail: iain.johnston@hklaw.com

**Attorneys for Edgar County:**

Michael E. Raub; James C. Kearns;
Brian Michael Smith
HEYL, ROYSTER, VOELKER & ALLEN
102 East Main Street
Suite 3000
P.O. Box 129
Urbana, Illinois 61801-0129
Tel: (217) 344-0060
Fax: (217) 344-9295
E-mail: mraub@hrva.com
jkearns@hrva.com
bsmith@hrva.com

**Attorneys for Michael McFatridge:**

Terry A. Ekl; Patrick L. Provenzale;
Vincent C. Mancini
EKL & WILLIAMS, PLLC
115 West 55th Street, Suite 400
Clarendon Hills, IL 60514
Tel: (630) 654-0045
Fax: (630) 654-0150
E-mail: tekl@cewpc.com
vmancini@cewpc.com
pprovenzale@cewpc.com