UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| GORDON RANDY STEIDL, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   05-2127 |
| | ) |
| CITY OF PARIS, GENE RAY, | ) |
| JAMES PARRISH, JACK ECKERTY, | ) |
| MICHAEL McFATRIDGE, EDGAR | ) |
| COUNTY, STEVEN M. FERMON, | ) |
| DIANE CARPER, CHARLES E. | ) |
| BRUEGGEMANN, ANDRE PARKER | ) |
| and KENNETH KAUPUS, | ) |
| | ) |
| Defendants. | ) |

## ORDER

The court held a motion hearing in this case on April 15, 2008. The plaintiff appeared through Janis Susler, Esq., Erica Thompson, Esq., and Michael Metnick, Esq. Defendants City of Paris, Gene Ray, James Parrish and Jack Eckerty appeared through James Sotos, Esq., and Elizabeth Ekl, Esq. Defendant Michael McFatridge appeared through Vincent Mancini, Esq. Defendant Edgar County appeared through Michael Raub, Esq., and Brian Smith, Esq. Defendants Steven M. Fermon, Diane Carper, Charles E. Brueggemann, Andre Parker and Kenneth Kaupus appeared through Iain Johnston, Esq.

There are several motions pending. There is a motion for protective order to bar the defendants from proceeding with depositions during the week of January 21, 2008 [155], and an emergency motion to compel depositions during the week of January 21, 2008 [157]. At motion hearings on January 18, 2008, and February 13, 2008, the court discussed the motions and ordered the parties to file an agreed plan for deposing parties and witnesses. They have done so, with depositions to begin on May 1, 2008. The parties are still deciding how many witnesses will be deposed. At this time, the motion to bar depositions [155] and motion to compel depositions [157], as originally filed, are moot.

Also pending is a motion for an order to show cause and a motion to compel production of documents from Michale Callahan [161]. The court denied the motion, as Mr. Callahan is located more than 100 miles away from the location indicated in the subpoena for return of the documents. Ms. Ekl stated that the defendants had conferred with Mr. Callahan's counsel and the defendants have agreed to travel to Mr. Callahan's location to retrieve the documents. She stated that Mr. Callahan had not yet produced the documents and asked that the motion remain

pending until the documents were produced.  The court declined, noting that it had no power to enforce the subpoena as written.

Also pending is a motion to quash subpoena and for entry of a protective order [153].  The court heard oral argument at the April 15, 2008, hearing.  The plaintiff's subpoena seeks documents that the defendants claim are privileged as work product.  The plaintiff argues that the defendants have waived the privilege.

As described in the motion, response, reply, supporting documents, and exhibits filed under seal, the facts do not appear to be in dispute.  The movants hired a private investigative firm to assist them with the case.  On December 28, 2007, plaintiff's counsel issued a subpoena to the defendants' investigative firm for any and all materials and documents related to the Rhoads murders, Randy Steidl, Herbert Whitlock, or other suspects.  The defendants filed the motion to quash subpoena and for entry of a protective order, claiming work product privilege.  The plaintiff argues that the defendants waived the privilege by disclosing the documents to others. The movants replied that Terry Ekl, Esq. (counsel for defendant Michael McFatridge) disclosed the documents to Dan Curry.  Mr. Curry is an advisor to Robert Morgan, who has been referred to as a "person of interest" and potential suspect in the Rhoads murders.[1]  Mr. Curry states that he was told to treat the documents confidentially.[2]  Mr. Curry, in turn, gave the documents to Jim Dey, a news reporter with the Champaign-Urbana newspaper, *The News-Gazette*.  Mr. Dey agreed that he would not share the information with anyone.  Mr. Dey, in turn, however, shared the documents with Michale Callahan.  He "believes" he told Mr. Callahan that the information should not be shared with others.  According to Mr. Dey, Mr. Callahan gave the documents to Steidl's counsel.

The defendants argue that they have not waived the work product privilege because they did not disclose the documents to an adversary.  The plaintiff argues that disclosing work product to any third party amounts to waiver of the privilege.  "[D]isclosure to an adversary, *real or potential*, forfeits work product protection." *In re Qwest Comm. Int'l, Inc.*, 450 F.3d 1179, 1190 (10th Cir. 2006) (emphasis added) (*citing United States v. Mass. Inst. Of Tech.*, 129 F.3d 681, 687 (1st Cir. 1997)).[3]  It is not difficult to speculate as to what Mr. Curry's interest in the documents might be, and while that interest might be aligned with the defendants if the evidence is unfavorable to Steidl, there is a potential adversarial interest if the evidence is favorable to Steidl and unfavorable to Mr. Morgan.  Thus, disclosure of any evidence to Mr. Curry waived work product protection.

---

[1] The defendants do not argue that disclosing sensitive documents to Mr. Morgan's advisor served a legitimate work purpose.

[2] The defendants do not state whether Mr. Curry signed a written confidentiality agreement or produce such a document.

[3] The court finds the policy statements in *Qwest* to be highly persuasive.

*Eagle Compressors, Inc. v. HEC Liquidating Corp.*, 206 F.R.D. 474, 479 (N.D. Ill. 2002), does not support a different outcome. The defendants argue that work product privilege can only be waived by "disclosures that are 'inconsistent with the adversary system.'" *Eagle Compressors*, 206 F.R.D. at 479. However, when a defendant makes a voluntary disclosure "motivated by self-interest [rather than] inadvertence" . . . "the defendant must live with the consequences." *Eagle Compressors*, 206 F.R.D. at 480. That the documents were eventually disclosed to a news reporter and, finally, the plaintiff, is not merely coincidental.

Finally, the court disagrees with the defendants' contention that because the plaintiff now possesses sixty-six pages of investigative memos describing the investors' interviews, they cannot continue to contend that Steidl lacks sufficient detail about the nature of the investigation. The documents' circuitous journey from counsel to Mr. Curry to Mr. Dey to Mr. Callahan to plaintiff's counsel was, at the very least, reasonably foreseeable, if not downright predictable. It is also reasonable to believe that Mr. Curry would turn over to a newspaper reporter only a subset of documents favorable to Mr. Morgan. The sixty-six pages represent just a small part of the whole (the tip of an iceberg) over which the defendants may not claim work product privilege.[4]

## CONCLUSION

The motion to quash subpoena and for entry of a protective order [153] is denied. The motion for protective order to bar the defendants from proceeding with depositions during the week of January 21, 2008 [155] is moot, as is the emergency motion to compel depositions during the week of January 21, 2008 [157]. The motion for Michale Callahan to show cause and produce documents [161] is denied.

Entered this 16th day of April, 2008.

**s\Harold A. Baker**
_____
HAROLD A. BAKER
UNITED STATES DISTRICT JUDGE

---

[4] Whether there is a privilege to redact attorneys' opinions is an additional question not touched upon here.