**IN THE UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION**

| | | |
|---|---|---|
| GORDON RANDY STEIDL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 05 CV 2127 |
| | ) | |
| CITY OF PARIS, et al. | ) | Judge Harold A. Baker |
| | ) | Magistrate Judge David G. Bernthal |
| Defendants. | ) | |

**DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION FOR SANCTIONS AGAINST
DEFENDANTS CITY OF PARIS, RAY, PARRISH, ECKERTY AND McFATRIDGE
FOR FAILING TO COMPLY WITH THIS COURT'S ORDER OF APRIL 16, 2008**

Defendants, City of Paris, Gene Ray, Jim Parrish and Jack Eckerty, by their attorneys,

James G. Sotos and Elizabeth A. Ekl of James G. Sotos and Associates, Ltd., and Michael

McFatridge, by his attorney Terry A. Ekl of Ekl Williams, PLLC, (collectively, "Defendants")

respond to Plaintiff's motion for sanctions against Defendants City of Paris, Ray, Parrish,

Eckerty and McFatridge for failing to comply with this Court's order or April 16, 2008 as

follows:

**Introduction**

Plaintiff moves this Court for sanctions against Defendants pursuant to Rule 37(b)(2) of

the Federal Rules of Civil Procedure based on Defendants' counsels' failure to turn over

hundreds of pages of confidential attorney-work product.  The documents at issue have not been

provided to any third parties and consist of investigative memos, which document Defendants'

litigation strategy, and summaries of witness interviews, which highlight portions of the

witnesses' testimony relevant to that strategy.  All of the documents at issue were indisputably

created by investigators hired by Defendants' counsel after Plaintiff's claims against Defendants

were filed.  Additionally, any factual information contained therein has been or will otherwise

will be provided during the course of discovery.  Accordingly, the harsh sanctions sought by

Plaintiff are not warranted.

**Background**

Plaintiff filed his lawsuit on May 27, 2005. On or about September 21, 2005, Defendants hired the investigative firm, Delorto & Mazzola & Associates ("DMA"), to assist them in preparation of their defense. DMA's assistance has included the review of the tens of thousands of pages of discovery in this case, strategy meetings with Defendants' counsel and interviews of a number of witnesses. Throughout the course of DMA's investigation, they have provided Defendants' counsel with memos summarizing pertinent aspects of their witness interviews and laying out theories, mental impressions and opinions relevant to Defendants' litigation strategy. DMA's work on the case is ongoing and expected to continue until the conclusion of this litigation.

On December 28, 2007, Plaintiff issued a subpoena to DMA. (*See* attached Exhibit A, Subpoena.) The subpoena demanded the production of "any and all documentation produced or generated by your agency or any of its members or produced, generated, or tendered by another agency or any of its members or any private contractor to your agency or any of its members that is associated with or related to the investigation, re-investigation, or agency review of any kind conducted for any purpose which is related to the homicides of Karen and Dyke Rhoads in Paris, Illinois on July 6, 1986, the arson of the Rhoads' home on Court Street in Paris, Illinois on that same date, Gordon Randy Steidl, Herbert Whitlock, or Robert Morgan."

Defendants filed a motion to quash that subpoena and sought entry of a protective order on January 11, 2008. (Dkt 153.) The basis for the motion was the privileged and non-discoverable nature of the documents being sought. Specifically, Defendants argued that the materials are protected by the work-product doctrine because they contain the mental impressions, conclusions, opinions and legal theories of Defendants' counsel and their investigators. Defendants' motion was accompanied by affidavits, including those of two of their investigators, which described the nature of the documents not produced in order to allow Plaintiff to assess the claim of privilege.

In response to Defendants' motion, Plaintiff argued that Defendants had waived any assertion of privilege based on the disclosure of sixty-six pages of investigative summaries to a third party, Dan Curry, in 2006 that had since come to be in Plaintiff's possession. (Dkt. 168.) Plaintiff further argued that Defendants should have produced a privilege log. (*Id.*)

On April 16, 2008, this Court entered an Order denying Defendants' motion to quash and motion for entry of a protective order. (Dkt. 192.) This Court agreed with Plaintiff that "disclosure of any evidence to Mr. Curry waived work product protection" and this Court opined that, "[i]t is also reasonable to believe Mr. Curry would turn over to a newspaper reporter only a small subset of documents favorable to Mr. Morgan. The sixty-six pages represent just a small part of the whole (the tip of the iceberg) over which defendants may not claim work product privilege." (*Id.* at 2.) This Court specifically noted that it did not address the issue of whether there is a privilege to redact attorneys' opinions. (*Id*. at FN4.) Finally, this Court stated that it "disagrees with the defendants' contention that because the Plaintiff now possesses sixty-six pages of investigative memos describing the investigators' interviews, they cannot contend that Steidl lacks sufficient detail about the nature of the investigation." (*Id.* at 3.)

Based on this Court's ruling, Plaintiff demanded compliance with this Court's Order. Further investigation by Defendants determined that seventy-one (71) pages of investigative memos were disclosed to Mr. Curry. (Ex. B, Curry Affidavit.) To the extent the Court's ruling is premised on additional documents in Mr. Curry's possession that were not turned over to the newspaper reporter, Jim Dey, and ultimately to Plaintiff, those additional five (5) pages of documents have now been provided to Plaintiff. The seventy-one (71) pages of documents represent the entirety of documents disclosed to any third party, including Mr. Curry. (*Id.*)

Without waiving their argument that the remaining documents at issue are protected from disclosure by the work-product doctrine, Defendants' counsel have provided Plaintiff with a privilege log, which further details the documents withheld on the basis of attorney work-product. (Ex. C, Privilege Log of Documents Responsive to Subpoena to DMA .) Defendants' counsels' continued assertion of privilege as to the remaining documents is premised on the fact

3

that all of the information contained in the documents relates to specific areas of inquiry that were made of witnesses' previously disclosed in discovery. DMA's choice of what information to include in the documents, is a product of the investigators' mental impressions and opinions as well as Defendants' counsel's strategic decisions and legal theories.

**Argument**

## I.    ALL DOCUMENTS THAT WERE PREVIOUSLY DISCLOSED TO ANY THIRD PARTY ARE IN PLAINTIFF'S POSSESSION

Plaintiff is in possession of all of the documents, responsive to the DMA subpoena, that were disclosed to third parties. On April 16, 2008, this Court found that the work product privilege was waived as to the sixty-six pages of documents that were provided to a third party, Dan Curry, who in turn provided them to a newspaper reporter before they eventually ended up in the hands of the Plaintiff. (Dkt. 192.) This Court noted that it was "reasonable to believe Mr. Curry would turn over to a newspaper reporter only a small subset of documents favorable to Mr. Morgan" and accordingly found that "the sixty-six pages represent just a small part of the whole (the tip of the iceberg) over which defendants may not claim work product privilege." (*Id.*) Subsequent investigation has determined that Mr. Curry was provided with seventy-one pages of investigative memos. All seventy-one (71) pages of documents have been produced to Plaintiff. All remaining documents have been held in confidence by Defendants' attorneys and agents.

## II.    NON-DISCLOSED DOCUMENTS RESPONSIVE TO THE DMA SUBPOENA ARE PROTECTED BY RULE 26(b)(3)(B)

All of the remaining documents responsive to the DMA subpoena ("DMA documents") are a direct product of the mental impressions, conclusions and opinions of DMA and the legal theories of Defendants' counsel. Rule 26(b)(3)(B) provides that if the court orders discovery of materials prepared in anticipation of litigation, "it must protect against disclosure of the mental impressions, conclusion, opinions, or legal theories of a party's attorney or other representative concerning the litigation." FRCP 26(b)(3)(B). It is unclear to Defendants whether this Court intended to find waiver of the attorney work-product privilege in regard to the remaining DMA documents, which were not provided to any third parties. However, the Court explicitly noted

4

that it's opinion did not touch upon the question of whether there is a privilege to redact attorneys' opinions from any of the non-disclosed documents. (Dkt. 192 at FN 4.)

Defendants cannot disclose the remaining subset of documents responsive to the DMA subpoena without disclosing attorney opinions, strategy and theories and severely prejudicing their case. Discovery in the case has included the disclosure of tens of thousands of pages of interviews by law enforcement officials and Plaintiff's investigators alike. The re-interviews of witnesses and resulting investigative summaries and memos by DMA reflect Defendants' attorneys' opinions regarding specific issues that go to the core of Defendants' defense. When taken as a whole, those documents provide a road map for Defendants' counsels' legal strategy and theory. As the United States Supreme Court noted in *Hickman*, "[p]roper preparation of a client's case demands that [counsel] assemble information, sift what he considers to be the relevant from the irrelevant facts, prepare his legal theories and plan his strategy without undue and needless interference." *Hickman v. Taylor*, 329 U.S. 495, 509 (1947). The Court further held that, "[i]n performing his various duties ... it is essential that a lawyer work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel ... This work is reflected, of course, in interviews, statements, memoranda, correspondence, briefs, mental impressions, personal briefs, and countless other tangible and intangible ways aptly though roughly termed ... the "work product" ... of the lawyer." *Hickman v. Taylor*, 329 U.S. 495, 510-11 (1947). As a result, the mere redaction of certain portions of the DMA summaries and memos will not adequately protect Defendants' counsel from the undue and needless interference suggested by Plaintiffs.

## III.     SANCTIONS AGAINST DEFENDANTS ARE NOT MERITED

Plaintiff requests that this Court impose harsh sanctions against Defendants pursuant to Federal Rule of Civil Procedure 37(b)(2) for Defendants' counsel's failure to turn over the work-product documents at issue. Federal Rule 37(b)(2) provides that if a party or a party's officer, director or managing agent – or a witness designated under Rule 30(b)(6) or 31(a)(4) – fails to

obey a court order to provide or permit discovery, including an order under Rule 26(f), 35, or 37(a), the court where the action is pending may issue further just orders. Yet, Plaintiff seeks sanctions against Defendants for their counsel's failure to produce documents requested pursuant to a subpoena issued to Defendants' counsel's agent, DMA, in accordance with Rule 45. Rule 45 provides a specific remedy for persons who fail to obey a subpoena without adequate excuse. FRCP 45(e)("The issuing court may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena"). Further, the right to assert the work product barrier to disclosure belongs at least in part, if not solely to the attorney and not the client. *Donovan v. Fitzsimmons*, 90 F.R.D. 583, 587 (D.C. Ill. 1981)(internal citations omitted). Therefore, to the extent that any sanction is merited, and Defendants contend it is not, it should be in the form of a contempt citation to Defendants' counsel.

Defendants' counsel is mindful of the risk inherent in failing to disclose documents and the fact that refusal to obey an order compelling such production may lead to him being held in criminal contempt. However, it has been the rule in the federal courts for many years that one to whom a subpoena is directed may not appeal the denial of a motion to quash that subpoena but must either obey its commands or refuse to do so and contest the validity of the subpoena if he is subsequently cited for contempt on account of his failure to obey. *New York Times Co. v. Jascalevich*, 439 U.S. 1304, 1305 (1978)(internal citations omitted). Defendants' counsel's refusal to turn over the work-product material is not based on bad faith or an abuse of the judicial process, as suggested by Plaintiff, but rather, it is the result of the crippling effect such a disclosure would have on their ability to defend the case and their need to appeal any such ruling in accordance with the Supreme Court's dictate. See *Id*; *United States v. Ryan*, 402 U.S. 530, 532 (1971) citing *Cobbledick v. United States*, 309 U.S. 323 (1940).

Finally, to the extent this Court intended any of the DMA documents that have never been shared with any third party (and in some cases, not even with the Defendants' attorneys) to be disclosed pursuant to its April 16, 2008 Order, the Rule 37 sanctions requested by Plaintiff, are unduly harsh given the facts present here. This Court has broad discretion over discovery

6

matters, such as discovery sanctions, so long as it exercises that discretion reasonably. *Ropak Corp. v. Plastican*, 04-5422, 2006 WL 2385297, at *2 (N.D. Ill. 2006). Additionally, the method of arriving at the sanction must be fair and just. *Id*. (internal citations omitted). Plaintiff asks this Court to bar Defendants from presenting at trial any evidence contesting Plaintiff's actual innocence; strike Defendant's affirmative defenses regarding probable cause and bar them from presenting evidence at trial on the issue of probable cause; and bar Defendants from deposing and from calling at trial each and every witness for whom interview notes and memoranda are not produced. However, unlike the cases cited by Plaintiff wherein such sanctions were imposed, Defendants have answered Plaintiff's discovery requests and have provided Plaintiff with tens of thousands of pages of reports (and have likewise received from Plaintiff thousands of pages of his own reports) which document the anticipated testimony of the witnesses that were re-interviewed by DMA; including those to be called at trial in support of a finding of probable cause and Defendants' other claims and defenses. Additionally, Plaintiff has had an equal opportunity to question witnesses regarding any facts relevant to these proceedings and will be afforded the opportunity during discovery to fully explore their testimony during depositions, which have not yet convened. Any factual information contained in the DMA reports has been or will be available to Plaintiff through discovery. As a result, even if the Court finds that the attorney work-product doctrine was also waived as to the previously undisclosed DMA documents,  the circumstances present here are not so extreme as to warrant the harsh sanctions sought by Plaintiff.

WHEREFORE, Defendants respectfully request that this Honorable Court deny Plaintiff's Motion for Sanctions Against Defendants City of Paris, Ray, Parrrish, Eckerty and McFatridge for Failing to Comply with This Court's Order of April 16, 2008.

Date:  May 26, 2008                    RESPECTFULLY SUBMITTED,


                                       s/ James G. Sotos
                                       James G. Sotos
                                       Attorney for Defendants, City of Paris, Gene Ray,
                                       James Parrish, and Jack Eckerty
                                       JAMES G. SOTOS & ASSOCIATES, LTD.
                                       550 East Devon Avenue, Suite 150
                                       Itasca, IL  60143-2632
                                       Telephone:  (630) 735-3300
                                       Fax:  (630) 773-0980
                                       E-mail: jsotos@jsotoslaw.com


                                       s/ Terry A. Ekl
                                       Terry A. Ekl
                                       Attorney for Defendant Michael McFatridge
                                       EKL & WILLIAMS, PLLC
                                       Two Arboretum Lakes
                                       901 Warrenville Road, Suite 175
                                       Lisle, Illinois 60532
                                       Tel:     (630) 654-0045
                                       Fax:     (630) 654-0150
                                       E-mail:       tekl@cewpc.com

8

## <u>CERTIFICATE OF SERVICE</u>

       The undersigned having first been duly sworn under oath, states that he electronically filed a complete copy of the foregoing **Defendants' Response to Plaintiff's Motion for Sanctions Against Defendants City of Paris, Ray, Parrish, Eckerty and McFatridge for Failing to Comply with this Court's Order of April 16, 2008** with the Clerk of the Court on **May 29, 2008** using the CM/ECF system, which will send notification of such filing to the following counsel of record: See Attached Service List.

 

                               s/ James G. Sotos
                               James G. Sotos
                               Attorney for Defendants, City of Paris, Gene Ray, James Parrish, and Jack Eckerty
                               JAMES G. SOTOS & ASSOCIATES, LTD.
                               550 East Devon Avenue, Suite 150
                               Itasca, IL  60143-2632
                               Tel:    (630) 735-3300
                               Fax:    (630) 773-0980
                               E-mail: jsotos@jsotoslaw.com

9

## SERVICE LIST

## GORDON RANDY STEIDL v. CITY OF PARIS, ET AL - 05 C 2127

**Attorneys for Gordon Randy Steidl:**

Michael Bruce Metnick
METNICK CHERRY & FRAZIER
Suite 200 Myers Building
One West Old State Capitol Plaza
P.O. Box 12140
Springfield, IL 62791-2140
Tel:       (217) 753-4242
Fax:      (217) 753-4642
E-mail:   metnick@springfieldlawfirm.com

G. Flint Taylor; Jan Susler; Ben Elson
PEOPLE'S LAW OFFICE
1180 N. Milwaukee Ave.
Chicago, IL  60622
Tel:       (773) 235-0070
Fax:      (773) 235-6699
E-mail:   gftaylorjr@aol.com
              jsusler@aol.com
              elsonben@aol.com

**Attorneys for Charles E. Brueggemann, Diane Carper, Steven M. Fermon, Kevin Kaupus, and Andre Parker:**

Karen L. McNaught
(also counsel for Jack Eckerty)
Illinois Attorney General
500 S. Second Street
Springfield, IL  62706
Tel:       (217) 782-1841
Fax:      (217) 524-5091
E-mail:  kmcnaught@atg.state.il.us

Iain D. Johnston
JOHNSTON GREENE LLC
542 South Dearborn Street, Suite 1310
Chicago, IL 60605
Tel:       (312) 341-3900
Fax:      (312) 341-0700
E-mail:   ijohnston@johnstongreene.com

**Attorneys for Edgar County**:

Michael E. Raub; James C. Kearns;
Brian Michael Smith
HEYL, ROYSTER, VOELKER & ALLEN
102 East Main Street
Suite 3000
P.O. Box 129
Urbana, Illinois 61801-0129
Tel:       (217) 344-0060
Fax:      (217) 344-9295
E-mail:   mraub@hrva.com
              jkearns@hrva.com
              bsmith@hrva.com

**Attorneys for Michael McFatridge:**

Terry A. Ekl; Patrick L. Provenzale;
Vincent C. Mancini
EKL & WILLIAMS, PLLC
Two Arboretum Lakes
901 Warrenville Road, Suite 175
Lisle, Illinois 60532
Tel:       (630) 654-0045
Fax:      (630) 654-0150
E-mail:   tekl@cewpc.com
              vmancini@cewpc.com
              pprovenzale@cewpc.com

10