UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

GORDON RANDY STEIDL,

    Plaintiff,                 05-2127

    v.

CITY OF PARIS, et al.,

    Defendants.
_____

HERBERT WHITLOCK,

    Plaintiff,                 08-2055

    v.

CITY OF PARIS, et al.,

    Defendants.

ORDER ON ALL PENDING MOTIONS
FOR SUMMARY JUDGMENT

      These combined cases are before the court after remand from the Seventh Circuit to facilitate the parties' desire to attempt mediation and for a reasoned decision on all nine pending motions for summary judgment; there are five in Whitlock and four in Steidl.[1] In each motion the respective defendants claim judgment as a matter of law mainly on the questions of absolute immunity or qualified immunity. The defendant Marlow, and the others, also raise the question of insufficient evidence to find them liable. The court heretofore granted Marlow's summary judgment motion [Whitlock 169] in part and denied it in part in the order [Whitlock 367] that was vacated to facilitate mediation proceedings before Magistrate Judge David G. Bernthal. The court will reinstate that vacated order in this order. In the same vein, the court denied Edgar County's motion for summary judgment [Steidl 363,Whitlock 170] in the order [Steidl 460, Whitlock 366] that was vacated to facilitate mediation. The court adheres to that ruling and will reinstate the vacated order in this order.

---

[1] Whitlock: [169] Marlow; [170] Edgar County; [176] Edgar County, Michael McFatridge; [183] ISP Defendants; and [185] City of Paris, Parrish, Eckerty, Ray.
     Steidl: [363] Edgar County; [373] Edgar County, Michael McFatridge; [378] City of Paris, Eckerty, Parrish, Ray; and [379] ISP Defendants. The orders vacating the denials of these motions have been reissued following remand, pursuant to the direction of the Seventh Circuit.

There is no need to rehearse the underlying claims in these cases. They are succinctly and clearly summarized in the first paragraph of the Court of Appeals decision on the questions of immunity in the early stages of the litigation. *See Steidl v. Fermon*, 494 F.3d 623 (7th Cir. 2007).[2]

As an initial matter the court will address the question of the parties' submission of agreed and disputed facts in the cases. The hundreds of pages on file in support and opposition to the motions are rife with the conflicting contentions of the parties about the interpretations to be placed upon the actions, statements and motivations of the actors in this tragedy. The agreed facts are not case dispositive. Far from it. The disputed material is voluminous, to understate the quantity. The court's jury deliberation room is filled with the deposition transcripts, exhibits, and documents provided by the parties in support of and opposition to the motions. The submissions contain thousands of pages of conflicting testimony and statements and would require credibility and weight decisions by the court in deciding what and whom to believe, a territory forbidden to the court.

For brief example, Herrington and Rienbolt were the State's primary witnesses to the crime. At the time, Herrington was a full-fledged alcoholic who rode around town on a bicycle because he had lost his driver's license. Did Ray, Parrish, and Eckerty isolate Herrington, provide him with alcohol, coerce him, and tell him what to say in his testimony? They deny it but Herrington has said they did all these things. Moreover, McFatridge allegedly helped Herrington get back his driver's license in exchange for Herrington's testimony. Was the witness Rienbolt -- an alcoholic and drug addict who experienced blackouts -- so easily manipulated and suggestible that she caved in to threats that she herself would be prosecuted for the murders? There is all sorts of evidence that Rienbolt was an unbelievable witness who would say anything and that Ray, Parrish, and Eckerty knew it and made use of her condition to secure her testimony. There is evidence that McFatridge was involved with Ray, Parrish and Eckerty in their investigation to fabricate the evidence against Steidl and Whitlock in their cases. To what extent is clearly at issue. Did McFatridge aid, abet, direct and encourage Ray, Parrish and Eckerty in their work? There is evidence that at one point he was in the hallway outside the room where Rienbolt was being questioned, and told Ray, Parrish, and Eckerty how to coerce Rienbolt into fabricating her story. The court is unable to conclude one way or the other without making credibility judgments and is left to wonder about a possible motive for McFatridge to silence Steidl for his telling the FBI shortly before the murders about McFatridge's alleged activities that, at best, were incompatible with his position as Edgar County State's Attorney.

Further, as to the ISP officials Brueggemann, Parker, Carper, Fermon and Kaupas, were they aware of the way the case against Steidl and Whitlock was prepared and prosecuted by

---

[2] In *Steidl v. Fermon*, the ISP defendants appealed the denial of their motion to dismiss. The Seventh Circuit opinion has provided the court with a solid legal framework applicable specifically to these two cases.

McFatridge, Ray, Parrish and Eckerty? When were they aware and to what extent? Did they wittingly suppress any further investigation and, because it was "too politically sensitive" regarding the suspect Morgan (a campaign contributor to then-Governor George Ryan's campaign); fail to disclose evidence of the plaintiffs' innocence that had never before been disclosed? According to witness Callahan, a former Illinois State Police investigator, he presented to the current ISP defendants numerous documents and investigatory files filled with evidence of wrongdoing. There is evidence which, if it is believed, could lead a trier of fact to conclude that the ISP officials were witting participants in the conduct that led to Steidl's and Whitlock's continued imprisonment following their wrongful conviction.

On the flip side of this coin, the defendants contend that the Rhoads murder case is still open and that Steidl and Whitlock are still suspects. One person interviewed is alleged to have stated that Whitlock and another man came to her house early that morning; Whitlock smelled of smoke, was covered in blood, and seemed disoriented. The other man explained that they'd been hunting rabbits. Steidl allegedly told someone several days before the murders that something big was going down soon. At around the time of the murders, which occurred in the predawn hours on a Sunday morning, Steidl brought a woman back to his apartment. At one point, Steidl left her at the apartment to mail unemployment paperwork. These are just two examples of evidence that does not depend on the compromised testimony of the two primary witnesses.

Consequently, the court finds that there are material issues of fact present that preclude judgment as a matter of law for any of the parties in these cases.

### JOINT MOTIONS BY EDGAR COUNTY AND MCFATRIDGE
### STEIDL [373] WHITLOCK [176]

From the Supreme Court's decisions in *Imbler v. Pachtman*, 424 U. S. 409 (1976) to *Van de Kamp v. Goldstein*, 129 S. Ct. 855 (2009), it is clear that a state prosecutor acting in his capacity as an advocate for the state enjoys absolute immunity for his conduct even if what he does is an outright denial of a person's constitutional rights. So the defendant McFatridge from the time he went before a judge on February 19, 1987 to secure warrants for Steidl's and Whitlock's arrest until he stepped down as State's Attorney on December 31, 2001, was absolutely immune from liability under 42 U.S.C. § 1983. However, before February 19, 1987, McFatridge, acting in an investigative capacity, enjoyed only qualified immunity, as long as his conduct did not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

The movants rely on *Spiegel v. Rabinovitz,* 121 F.3d 251 (7th Cir. 1997), for the proposition that McFatridge prior to February 19, 1987 was acting in a quasi-judicial role and evaluating evidence to use against Steidl and Whitlock. The reliance is misplaced. As *Spiegel* observed about *Imbler*:

> When determining which type of immunity a [prosecutor] enjoys, we look to the
> nature of the function that the [prosecutor] was performing in the particular case. If

3

> a [prosecutor's] function was quasi-judicial, the [prosecutor] enjoys absolute
> immunity. If the function was administrative or investigatory, the [prosecutor] enjoys
> only qualified immunity.

*Spiegel*, 121 F.3d at 256 (*quoting Henderson v. Lopez*, 790 F.2d 44, 46 (7th Cir. 1986)).

There is evidence about McFatridge's involvement with the police during the investigation phase of the cases that could support the conclusion that he was acting in an investigative mode. If the plaintiffs are successful in persuading a jury that prior to February 19, 1987, McFatridge wasn't evaluating evidence as the prosecutor was in *Spiegel* but was manufacturing it and directing the police officers, Ray, Parrish and Eckerty, in their treatment and pursuit of the witnesses Herrington and Rienbolt; and directing the police to abandon any inquiry about other suspects, including Morgan and Burba, then McFatridge was clearly entitled, like the police officers, only to qualified immunity.

Was the constitutional right to due process that the plaintiffs claim clearly established prior to February 19, 1987, and would a reasonable person have known of it? The Supreme Court recognized the right. In *Mooney v. Holohan*, 294 U.S. 103, 112-113 (1935), the Court wrote:

> That requirement [of due process], in safeguarding the liberty of the citizen
> against deprivation through the action of the state, embodies the fundamental
> conceptions of justice which lie at the base of our civil and political institutions.
> It is a requirement that cannot be deemed to be satisfied by mere notice and
> hearing if a state has contrived a conviction through the pretense of a trial which
> in truth is but used as a means of depriving a defendant of liberty through a
> deliberate deception of court and jury by the presentation of testimony known to
> be perjured. Such a contrivance by a state to procure the conviction and
> imprisonment of a defendant is as inconsistent with the rudimentary demands of
> justice as is the obtaining of a like result by intimidation. And the action of
> prosecuting officers on behalf of the state, like that of administrative officers in
> the execution of its laws, may constitute state action within the purview of the
> Fourteenth Amendment.

Certainly the defendant McFatridge, as a State's Attorney, must be held to have known such a basic concept. But McFatridge disputes any alleged wrongdoing at any phase of the investigation, conviction and sentencing. These factual disputes must be resolved by the trier of fact.

McFatridge and Edgar County, like the City of Paris, Parrish, Eckerty and Ray, *infra,* argue that the state law counts are barred by limitation and there is insufficient evidence to

4

support a trial on those Counts. There is no merit in those contentions. The claims in those Counts are continuing torts and the claims become ripe when the last injurious act occurs or the conduct is abated. *See Feltmeier v. Feltmeier*, 798 N.E.2d 75 (Ill. 2003). The same is true of the existence of probable cause. It must exist throughout all the proceedings against the plaintiffs in their criminal case. *See Swick v. Liautaud*, 662 N.E.2d 1238, 1242 (Ill. 1996).

<u>MOTIONS BY ISP DEFENDANTS</u>
STEIDL [379] WHITLOCK [183]

The main thrust of the ISP officials' claim that they are entitled to summary judgment is that *District Attorney's Office for the Third Judicial District v. Osborne*, 129 S. Ct. 2308 (2009) "flatly rejected the application of *Brady* after conviction." (ISP Argument [183], p. 127, fn 3.) That is a flawed conclusion unsupported by a reading of *Osborne*. In *Osborne*, the plaintiff in a § 1983 suit sought DNA testing that had been non-existent at trial to provide possible newly-discovered evidence in a postconviction proceeding provided by Alaska statute. "When Osborne *did* request DNA testing in state court, he sought RFLP testing that had been available at trial, not the STR testing he now seeks, and the state court relied on that fact in denying him testing under Alaska law." *Osborne*, 129 S. Ct. at 2321. What Osborne sought was something completely new, rather than information that had been in possession of and available to the state in his trial and that the state had suppressed or withheld. That was the basis of the Court's ruling in *Osborne* that *Brady* analysis was not appropriate. *Osborne* presented a wholly new question.

> [T]he question is whether consideration of Osborne's claim within the framework of the State's procedures for postconviction relief "offends some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental," or "transgresses any recognized principle of fundamental fairness in operation."

*Osborne*, 129 S. Ct. at 2320.

Through their misinterpretation of *Osborne* the ISP defendants seek to circumvent the clear and controlling application of *Brady* as set forth in the opinion in their earlier appeal in Steidl's case.

> Steidl's [and therefore Whitlock's] case is different. Here, just as in *Brady* itself, and in the later decision in *Kyles v. Whitley*, the evidence at issue was known to the police before Steidl was brought to trial. . . . We thus have no need here to decide whether disclosure of exculpatory evidence discovered post-trial is required under *Brady*; this case presents only the same question as the Court addressed in *Brady*, namely, whether exculpatory evidence discovered before or during trial must be disclosed during post-conviction proceedings.

*Steidl*, 494 F.3d at 629.

It is clear, therefore, that the ISP defendants in this case were under an obligation to disclose and that they cannot claim qualified immunity for their failure to discharge that obligation if the trier of fact is persuaded that they are liable. The ISP motions require the court to sift through the voluminous and conflicting materials offered in support of and opposition to the motions, and make credibility and weight decisions on material issues of fact.[3] As stated above, that is forbidden territory for the court. It is apparent from the submissions that there are genuine issues of material facts.

### MOTIONS BY CITY OF PARIS, PARRISH, ECKERTY AND RAY STEIDL [378] WHITLOCK [185]

These motions have no merit. As to the three police officers, Parrish, Eckerty and Ray, a quote from the opinion in the earlier appeal in *Steidl* makes that clear.

> In *Newsome,* we had this to say: we take the normal immunity inquiry: was it clearly established in 1979 and 1980 that the police could not withhold from prosecutors exculpatory information about fingerprints and the conduct of a lineup? The answer is yes: The *Brady* principle was announced in 1963, and we applied it in *Jones v. Chicago*, 856 F.2d 985 (7th Cir. 1988) to affirm a hefty award of damages against officers who withheld exculpatory information in 1981.

*Steidl*, 494 F.3d at 631.

As to the three policemen here, if the jury believes the plaintiffs' contentions about the evidence, that evidence would support a finding not only that the police officers withheld evidence but that they suborned perjury and followed the instructions of the prosecutor not to follow any leads that might suggest Morgan, Burba, and/or others were suspect.

The City of Paris is held in the case by *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978) and its progeny. A city may be liable under § 1983 if a policy of the city either by way of custom and practice or by the actions of a policy maker causes a constitutional deprivation. Here, if believed, the evidence could support a finding that Ray as police chief was a policy maker and that his conduct and other conduct of the City in its customs and practices were a cause of the claimed constitutional deprivations.

Paris also claims that the state law counts for Intentional Infliction of Emotional Distress (IIED), False Imprisonment, and Conspiracy are time-barred by limitation. That argument is destroyed by the defendants' own citation. "In Illinois, IIED is considered a 'continuing tort' which 'accrues and the statute of limitations begins to run, at the time the last injurious act occurs or the conduct is abated.' *Feltmeier v. Feltmeier*, 207 Ill.2d 23." (City of Paris motion

---

[3] The disputes involve, among other things, whether certain evidence existed at trial or was developed during subsequent review and/or investigation.

[378] p. 23.) The same is true of the limitation claims against the other state law counts. The claim of probable cause to proceed against the plaintiffs as a defense to malicious prosecution is also without foundation. The test is whether there was continuing probable cause for the initiation and continuation of the criminal charges. Initiation alone is not the test. *Swick*, 662 N.E.2d 1242 (Ill. 1996). In sum, the Paris motions rely on the City's selective view of the evidence and cannot carry the day on a motion for summary judgment.

IT IS THEREFORE ORDERED THAT:

1) In Whitlock, Case No. 08-2055:
   a) Marlow's motion for summary judgment [169] is allowed in part and denied in part. The order at [367] is reinstated;
   b) Edgar County's motion for summary judgment [170] is denied. The order at [366] is reinstated;
   c) Edgar County's and McFatridge's joint motion for summary judgment [176] is denied for the reasons given herein;
   d) The ISP defendants' motion for summary judgment [183] is denied for the reasons given herein; and
   e) City of Paris', Parrish's, Eckerty's and Ray's motion for summary judgment [185] is denied for the reasons given herein.

2) In Steidl, Case No. 05-2127:
   a) Edgar County's motion for summary judgment [363] is denied. The order at [460] is reinstated;
   b) Edgar County's and McFatridge's joint motion for summary judgment [373] is denied for the reasons stated herein;
   c) The ISP defendants' motion for summary judgment [379] is denied for the reasons given herein; and
   d) City of Paris', Parrish's, Eckerty's and Ray's motion for summary judgment [378] is denied for the reasons given herein.

Enter this 8th day of December, 2010.

\s\**Harold A. Baker**
_____
Harold A. Baker
United States District Judge